# EXHIBIT 1

## ORIGINATION, FIELD SERVICING & MASTER PARTICIPATION AGREEMENT

This Origination, Field Servicing, & Master Participation Agreement (Agreement) is made and entered into on _April 15_ , 2015, between Corporate America Lending, Inc., License # _01068552_ , a Non-Bank Lender licensed under the laws of California, ("Financial Institution/Originator" ) Tax Identification Number 27-3992410; and Agri-Access®, a division and trademark of AgStar Financial Services, ACA, and its wholly owned subsidiary entities, AgStar Financial Services, PCA, and AgStar Financial Services, FLCA, (herein collectively referred to as "Agri-Access" or "Participant").

WHEREAS, Agri-Access is in the business of extending credit to borrowers and engaging in other business as authorized by its charter; and

WHEREAS, Financial Institution/Originator is in the business of extending credit to customers as authorized by its license; and

WHEREAS, Financial Institution/Originator may from time to time desire Agri-Access to participate in credit extended to Borrowers by Financial Institution/Originator; and

NOW, THEREFORE, the parties agree that all Participations entered into pursuant to this Agreement shall be governed by the following:

Article 1
Definitions

1.1    Definitions

In this Agreement, the following definitions shall apply:

a.    "Borrowers" means those borrowers eligible to obtain credit from Agri-Access in accordance with the Farm Credit Act and the regulations of the Farm Credit Administration, which persons are obligated to pay pursuant to the terms of the Loan Documents.

b.    "Collateral" means the real property and improvements and fixtures thereon, and/or personal property securing a Participation Loan, including proceeds thereof.

c.    "Eligible Purposes" means those purposes for which Borrowers are able to obtain credit in accordance with the Farm Credit Act and the regulations of the Farm Credit Administration.

d.    "Equity Interest" means the interest of the Financial Institution/Originator in the unpaid principal balance of a Participation Loan or, in the aggregate, the Participation Loans from time to time.

e.    Reserved.

f.      "Loan(s)" means an agricultural loan or an agricultural real estate loan made by Financial Institution/Originator to Borrowers.

g.      "Loan Documents" means any note, loan agreement, mortgage, deed of trust, and other documents executed by a Borrower to evidence a debt to the Financial Institution/Originator.

h.      "Participation(s)" means the selling of an interest in a loan.

i.      "Participation Interest" means the interest of the Participant in the unpaid principal balance of a Participation Loan or, in the aggregate, the Participation Loans from time to time.

j.      "Participation Loan" or, in the aggregate, "Participation Loans" means the agricultural loan or agricultural real estate loan originated by the Financial Institution/Originator in which the Participant accepts an offer of participation by the Financial Institution/Originator under this Agreement and acquires a Participation Interest.

k.      "Pro-rata Participation Loan" or, in the aggregate, "Pro-rata Participation Loans" shall have the meaning given in section 2.2 of this Agreement.

l.      "Acquired Property" means all real and personal property acquired by Originator or Agri-Access, as the case may be, in servicing a Participation Loan in full or partial satisfaction of a Participation Loan, whether upon foreclosure, trustee's deed in exercise of power of sale, bankruptcy trustee's deed, voluntary conveyance, or otherwise, excluding any regular loan payments.

## Article 2
### Offer and Acceptance of Participation

2.1    Offer

Financial Institution/Originator may, from time to time, offer to sell to Agri-Access Participations in agricultural loans and/or agricultural real estate loans made by Financial Institution/Originator to Borrowers for Eligible Purposes.

2.2    Method of Participation

Participations shall be on a pro-rata basis.  A Pro-rata Participation is one in which Participant's Participation Interest in a Participation Loan will remain in the same proportion to Financial Institution/Originator's Equity Interest in the loan from time to time as advances are made or payments received.

2.3        Interest

10/2014

Each Participation accepted by Participant constitutes a purchase of an interest in the principal amount of the loan and an ownership interest in the Loan Documents and their underlying debt. It shall not be construed as an extension of credit by Participant to Financial Institution/Originator or its Borrower.

2.4    Certificate of Participation

Upon Participant's acceptance of an offer of participation, Financial Institution/Originator agrees to prepare and deliver to Participant, on a timely basis, a written Offer and Certificate of Participation evidencing Participant's Participation Interest in the Participation Loan. The certificate shall be in the appropriate version of the attached forms, or such other form as Agri-Access may establish from time to time. Each certificate shall be a part of this Agreement.

Article 3
Funding

3.1    Funding

If Participant accepts an offer of participation and receives a Certificate of Participation, Participant agrees to advance funds to Financial Institution/Originator as shown on the Certificate of Participation.   Financial Institution/Originator shall make all advances to or on behalf of Borrower.

Article 4
Origination and Management of Participation Loans

4.1    Loan and Security Documents

a.    <u>Documentation</u>.    Documentation shall be prepared and retained in accordance with all applicable law and to the satisfaction of Participant.  Documents must be prepared by an attorney or be accompanied by an opinion of counsel

b.    <u>Security</u>.    Security for each Participation Loan shall be deemed to secure Financial Institution/Originator and Agri-Access in proportion to their respective Equity Interest and Participation Interest in the loan.

c.    <u>Subordination</u>. If Financial Institution/Originator has made or makes a non-participated loan to a Borrower who has a participated loan covered by this Agreement, and such non-participated loan is secured by some or all of the security used for a participated loan, then the participated loan shall have a senior lien position on all collateral designated as Primary Security on the Certificate of Participation.

d.    <u>Power of Attorney</u>.    Each Participation Loan transaction shall include, as part of the closing documentation package submitted to Agri-Access, an original power of attorney in recordable form on behalf of Financial Institution/Originator prepared by an attorney licensed in the applicable state(s) which is legally sufficient to permit Agri-Access to service the loan and enforce the loan documents (including without limitation foreclosure, claim and delivery and like proceedings). Agri-Access will not exercise such

10/2014

power of attorney except i) to act in its capacity as servicer, and/or ii) upon default by Borrower under the Loan Documents, and/or (iii) upon default by Financial Institution/Originator under this Agreement. If state law does not require that such power of attorney be transaction-specific, an executed original master power of attorney will meet the requirements of this section for such state.

4.2    Origination Procedures

a.    <u>Procedure for Lease Transactions.</u>    Agri-Access will accept applications for lease transactions from Financial Institution/Originator on behalf of its customers in accordance with the following procedure:

1.    Financial Institution/Originator may submit applications for leases via a completed Agri-Access® online lease application, using Agri-Access' extranet site, plus any other information deemed necessary by Agri-Access for Agri-Access to make a credit and an eligibility decision with respect to such transaction.    Agri-Access will notify Financial Institution/Originator in a timely manner of its decision via e-mail following receipt and analysis of the necessary information.

2.    Upon approval of the transaction by Agri-Access, Agri-Access shall cause the necessary lease documentation to be prepared, in the name of Agri-Access as Lessor, and shall provide such documents to Financial Institution/Originator for execution. Financial Institution/Originator shall obtain the necessary signatures on all documents and shall collect from the lessee the initial payment and the processing fee.

3.    Financial Institution/Originator shall submit the completed document package to Agri-Access.  Each lease document package shall include the following:

a.  Lease documents properly executed and signed;
b.  TRAC Addendum, if appropriate;
c.  Acceptance Certificate, if appropriate;
d.  Insurance Certificate listing Agri-Access as an additional named insured on the liability coverage and Property Casualty Insurance Binders listing Agri-Access as loss payee;
e.  Purchase Order;
f.  Bill of Sale (except with respect to certain non-tax leases);
g.  Initial lease payment plus processing fee; and
h.  Other documents as may be deemed by Agri-Access to be necessary for the transaction.

4.    For each lease transaction, Financial Institution shall verify that the leased items have been delivered and installed per the terms of the lease documents.  For additional information regarding the reconciliation procedure, please refer to the Reconciliation and Reporting Procedures Manual.

b.    Reserved.

c.    <u>Procedure for Origination of Agricultural Loan Transactions.</u>  The following procedure shall apply with respect to agricultural loan transactions:

1.    Financial Institution/Originator shall offer agricultural loans to customers in accordance with the product offerings, eligibility requirements and guidelines as generally set forth on Agri-Access' extranet site, provided, however, that final determinations regarding product offerings and eligibility regarding such customers shall be made using the analysis of potential borrower information and communication between Agri-Access and Financial Institution/Originator.

2.    Financial Institution/Originator shall take agricultural loan applications, obtain potential borrowers' financial information and shall submit such information to Agri-Access for initial analysis.    Agri-Access will communicate the results of its analysis to Financial Institution/Originator and, upon approval, the parties shall cooperate with one another in structuring the loan.  Financial Institution/Originator shall be responsible for negotiating terms and pricing with the potential borrower within the parameters agreed upon by Agri-Access and Financial Institution/Originator with respect to that particular loan.   In the event that an agreement is reached between Financial Institution/Originator and the potential borrower, Financial Institution/Originator shall notify Agri-Access by fax or e-mail, and Agri-Access will provide, if approved by Agri-Access, formal credit approval.   A commitment letter between Agri-Access and Financial Institution/Originator will be provided by Agri-Access in the event that formal credit approval is granted by Agri-Access.  For additional information regarding the approval procedure, please refer to the Agri-Access Partner Site.  Financial Institution/Originator shall be responsible for obtaining the borrower's signature on the commitment documents and collecting any commitment fees from the borrower.

3.    Financial Institution/Originator shall prepare and cause to be duly and validly executed all loan documents and such other documentation as Agri-Access and Financial Institution/Originator deem necessary or desirable with respect to each loan.   Financial Institution/Originator shall forward the loan documents and other documentation to Agri-Access for review prior to closing. Financial Institution/Originator shall submit to Agri-Access copies of all loan documents and other documents related to the transaction, and two original signed copies of the Offer and Certificate of Participation.

4.    Upon receipt, Agri-Access will review the documents for proper execution, notify Financial Institution/Originator of confirmation, and remit the appropriate funds to Financial Institution/Originator via ACH. For additional information regarding the reconciliation procedure, please refer to the Reconciliation and Reporting Procedures Manual.

d.    Procedure for Origination of Agricultural Real Estate Transactions.   The following procedure shall apply with respect to agricultural real estate transactions:

1.    Financial Institution/Originator shall offer agricultural real estate loans to customers in accordance with the product offerings, eligibility requirements and guidelines as generally set forth on Agri-Access' extranet site, provided, however, that final determinations regarding product offerings and eligibility regarding such customers shall be made using the analysis of potential borrower information and communication between Agri-Access and Financial Institution/Originator.  The minimum loan size for an agricultural land transaction is $50,000.00.

2.    Financial Institution/Originator shall take agricultural real estate loan applications, obtain potential borrowers' financial information and shall submit such information to Agri-Access for

initial analysis in accordance with the Agri-Access Partner Site. Agri-Access will communicate the results of its analysis to Financial Institution/Originator and, upon approval, the parties shall cooperate with one another in structuring the loan. Financial Institution/Originator shall be responsible for negotiating terms and pricing with the potential borrower within the parameters agreed upon by Agri-Access and Financial Institution/Originator with respect to that particular loan. For additional information regarding the approval procedure, please refer to the Agri-Access Partner Site. Financial Institution/Originator shall be responsible for collecting any applicable rate lock fees from the borrower.

3.      Financial Institution/Originator shall prepare and cause to be duly and validly executed all loan documents and such other documentation as Agri-Access and Financial Institution/Originator deem necessary or desirable with respect to each loan. Loan documentation shall include the following:

      a.     Loan Agreement (may be required depending on the size of the loan and the existence of existing loans between Financial Institution/Originator and the borrower;

      b.     Promissory Note;

      c.     Real Estate Mortgage or Deed of Trust, as applicable;

      d.     Security Agreement (if fixtures or facilities are a part of the property);

      e.     UCC Financing Statement (if fixtures exist on the real estate);

      f.     Evidence of insurance coverage naming Financial Institution as Mortgagee and Lender's Loss Payee;

      g.     Title insurance policy or title opinion;

      h.     Appraisal by a state certified appraiser and

      i.     Such other documentation as Agri-Access may deem appropriate.

Financial Institution/Originator shall forward the loan documents and other documentation to Agri-Access for review prior to closing. Financial Institution/Originator shall submit to Agri-Access copies of all loan documents and other documents related to the transaction, and two original signed copies of the Offer and Certificate of Participation.

4.      Upon receipt, Agri-Access will review the documents for proper execution, notify Financial Institution/Originator of confirmation, and remit the appropriate funds to Financial Institution/Originator via wire. For additional information regarding the reconciliation procedure, please refer to the Reconciliation and Reporting Procedures Manual.

4.3    Interest Rate Programs

Financial Institution/Originator shall establish variable, fixed or adjustable rates of interest for loans in accordance with pricing and guidelines set forth by Agri-Access.

4.4    Financial Institution/Originator as Trustee

Financial Institution/Originator shall retain legal title to all Participation Loans and the security for them. Financial Institution/Originator shall monitor the credit relationship with the Borrower relating to the Participation Loan as provided in this Agreement.

4.5    Indemnification

    a.  <u>Financial Institution/Originator Indemnification</u>. Financial Institution/Originator hereby indemnifies and agrees fully to protect, defend and hold harmless Participant and its directors, officers, and employees from and against any and all loss, costs, damages (including consequential damages), expenses (including attorney's fees), and liability of any kind or nature whatsoever arising out of, as a result of, or in connection with Financial Institution/Originator's willful misconduct or negligent actions in the origination or management of the Participation Loans (including any claims that the Participation Loans were not properly documented, or claims related to any oral or undocumented agreement relating to the Participation Loans), and/or their security, either directly or indirectly, including without limitation thereto any and all claims, valid or spurious, of parties obligated on the Participation Loans, and any and all claims, valid or spurious, for actual or alleged failure of Financial Institution/Originator to comply with any requirements of the Truth-in-Lending Act, Regulation Z, the Real Estate Settlement Procedures Act, Regulation X, the Federal Equal Credit Opportunity Act, Regulation B, or other federal or state law or regulation.

    b.  <u>Survival</u>. Notwithstanding any other provision of this Agreement, the provisions of this section shall survive termination of this Agreement for any reason with respect to acts or omissions occurring or alleged to have occurred prior to the date of termination.

4.6    Servicing

Participation Loans shall be serviced by Participant, except to the extent that Financial Institution/Originator is assigned the following field servicing duties or other servicing actions as directed by the Participant:

    a.  Perform periodic property inspections as directed by Participant;
    b.  Assist Participant in servicing and other activities as directed by Participant, including but not limited to loss mitigation activities and other activities which may require contact with the Borrower;
    c.  Assist Participant in the sale of acquired property as directed by Participant;
    d.  Verify real estate taxes are current;
    e.  Verify that appropriate insurance levels are being maintained, if applicable;
    f.  Gather updated financial statements annually, or as directed by Participant; and
    g.  Such other field servicing duties as directed on the Agri-Access Partner Site and in the Reconciliation and Reporting Procedures Manual.

Financial Institution/Originator hereby constitutes Agri-Access its true and lawful attorney-in-fact with full power on behalf of Financial Institution/Originator to ask for, require, demand, or receive any and all loan payments and claims for money due or to become due under any Participation Loan, to endorse checks or other instruments delivered to the lockbox or otherwise received by Agri-Access and constituting loan payments or sums legally due to a party under this Agreement.  Financial Institution/Originator further constitutes Agri-Access its true and lawful attorney-in-fact with full power on behalf of Financial Institution/Originator to execute any and all instruments and/or documents relating to and/or connected with any loan for which Agri-Access is the Servicing Party.  Agri-Access shall have the sole right to determine that an event of

default has occurred on a Participation Loan and that a declaration of default and liquidation of the loan is in its best interest. Agri-Access shall notify Financial Institution/Originator in writing before declaring the Participation Loan in default. Financial Institution/Originator and Participant agree to communicate to one another in a timely manner all material matters relating to each Participation Loan which come to the attention of the parties, including but not limited to loan payoff information.

4.7    Field Servicing Fees

Field Servicing Fees shall be paid to the Financial Institution/Originator, as Field Servicer, as set forth on the Certificate of Participation, provided, however, that no field servicing fee will be paid on account of defaulted Participation Loans unless or until the parties have been made whole according to their respective interests in the particular Participation Loan, except that the foregoing clause shall not prevent Financial Institution/Originator from being reimbursed by Participant for third party expenditures incurred in connection with field servicing actions performed by Financial Institution/Originator, provided that Financial Institution/Originator obtained the prior approval of Participant prior to incurring such expense. In addition, Agri-Access has the right to withhold or demand a refund of servicing fees from Financial Institution/Originator should Financial Institution/Originator fail to adequately and/or timely perform its servicing duties in accordance with the standards set forth in the Reconciliation and Reporting Procedures Manual, the Agri-Access Partner Site, and the Loan Documents, as reasonably determined by Agri-Access. Financial Institution/Originator shall remit funds to Agri-Access on account of any servicing fees to be refunded within 2 business days of Agri-Access' demand. Agri-Access will allow resumption of payment of servicing fees upon Agri-Access receiving evidence to its satisfaction that servicing quality deficits have been remedied and that procedures to maintain servicing standards have been implemented.

4.8    Manuals

Financial Institution/Originator shall comply with all applicable provisions contained on the Agri-Access Partner Site and in the Reconciliation and Reporting Procedures Manual, which shall be deemed to be incorporated herein by reference; provided, however, that Participant shall perform all servicing actions with respect to all Participation Loans other than field servicing actions described in Section 4.6, above.

4.9    Expenses of Financial Institution/Originator

Agri-Access shall not be liable for any expenses incurred by Financial Institution/Originator in connection with any transaction submitted by Financial Institution/Originator. Any and all such expenses shall be Financial Institution/Originator's sole responsibility.

4.10    Confidentiality

Agri-Access and Financial Institution/Originator agree that any information received by the parties during any furtherance of the obligations in accordance with this Agreement, which concerns the personnel, financial or other affairs of Agri-Access or Financial Institution/Originator or their borrowers, and/or applicants, will be treated in full confidence and will not be revealed to any other persons, firms or organizations, other than to directors, employees, agents, advisors, auditors, regulators, or other

10/2014

representatives for whom disclosure is necessary or advisable. Such information shall be protected in accordance with all applicable laws and regulations relating to disclosure of nonpublic information.

4.11    Disclosure of Information

Financial Institution/Originator shall, in connection with each transaction covered by this Agreement, fully inform Agri-Access as to all information known to Financial Institution/Originator concerning the transaction, including, but not limited to, information regarding the proposed borrower/lessee and the proposed borrower's credit worthiness and eligibility under the Farm Credit Act and Regulations, and the collateral. This duty also extends to any changes occurring or discovered after any transaction has been submitted.

4.12    Notices to Applicants

With respect to any transaction covered by this Agreement, in the event that applicable laws and regulations require that certain notices and/or disclosures be provided to proposed borrowers, including but not limited to, disclosure of the right to request specific reasons for credit denial and notice of actions taken and statement of reasons for such action, Financial Institution/Originator warrants and represents that all such notices will be provided to the proposed borrower in accordance with applicable law and regulation.

4.13    Limitation of Financial Institution/Originator's Actions

a.    Financial Institution/Originator shall not take any action with respect to any Participation Loan or any obligation of any Borrower or mortgagor thereunder which would or may adversely affect Participant's rights or interest under or in the Participation Loan.

b.    Financial Institution/Originator agrees to consult with Participant on all matters which may substantially affect collectibility of, or security for, a Participation Loan.

c.    Financial Institution/Originator agrees that it will not do any of the following unless directed to do so by Participant:

1.    Take any servicing action that alters the terms of the original agreement with the Borrower;
2.    Make or consent to any release, substitution, or exchange of Collateral the effect of which is to reduce by more than a nominal amount the aggregate value of security for the Participation Loan;
3.    Waive any claim against the Borrower or any co-maker, guarantor, surety, or other obligor in connection with the indebtedness;
4.    Modify or waive any term of the notes or related instruments evidencing or securing the indebtedness; or
5.    Renew the note or accept substitution therefore.

d.    Financial Institution/Originator shall, upon receipt of notice of any of the following matters affecting a Participation Loan or any Collateral, promptly notify Participant of the occurrence of any: a) event of default; b) bankruptcy filing or c) action or counterclaim brought by the Borrower or any third party affecting the Participation Loan or Collateral.

10/2014

e.        Financial Institution/Originator shall furnish to Participant in a timely fashion all financial and other information relating to any Participation Loan.  In addition, Participant shall have the right to review Financial Institution/Originator's loan files and records for all Participation Loans upon reasonable notice and during Financial Institution/Originator's business hours.

4.14    Misapplication of Payments.

The Financial Institution/Originator shall fully cooperate with the Participant and shall take any and all actions necessary or appropriate to correct any misapplication of payment.  The parties shall notify one another immediately upon discovery of the misapplied payment.  The party experiencing the shortage shall be reimbursed for any such shortage within 5 business days of the discovery of the misapplied payment.

4.15    Reporting

The parties shall provide to one another on a timely basis those reports that are required pursuant to the Reconciliation and Reporting Procedures Manual, as amended from time to time.

4.16    Acquired Property

In the event that Financial Institution/Originator obtains any Acquired Property in connection with a Participation Loan, Financial Institution/Originator shall, immediately upon the request of Agri-Access, transfer such Acquired Property to Agri-Access via a quit claim deed or its applicable equivalent as deemed acceptable to Agri-Access in the case of real property or bill of sale, assignment or its applicable equivalent as deemed acceptable to Agri-Access in the case of personal property.

With respect to any proceeds of Acquired Property which Financial Institution/Originator may receive, Financial Institution/Originator shall remit Agri-Access' share of such proceeds to Agri-Access via wire transfer within two (2) business days of Financial Institution/Originator's receipt of such proceeds.

Article 5
Representations and Warranties

5.1    By Financial Institution/Originator

Financial Institution/Originator represents and warrants to Participant as follows:

a.        Authority and Validity.        Financial Institution/Originator is duly organized and existing in good standing under the laws of the jurisdiction of its incorporation.  Financial Institution/Originator has taken all proper and necessary corporate actions to authorize it to enter into and perform this Agreement and to authorize its officers to execute and deliver this Agreement, including, but not limited to, obtaining approval to execute the Agreement from Financial Institution/Originator's board of directors or loan committee, such approval being reflected in the minutes of the Financial Institution/Originator's board of directors.  This Agreement, when executed and delivered to Participant, will be valid and binding upon Financial Institution/Originator according to its terms and provisions.  Financial Institution/Originator shall

10/2014

continuously retain this Agreement as an official record of the Financial Institution/Originator from the time of its execution accessible at all times to its regulators and examiners.

b.     Ownership.    Financial Institution/Originator is the sole owner and holder of each Participation Loan and has the authority to sell, transfer, and grant a Participation Interest to Participant in each Participation Loan.  Financial Institution/Originator has not made any prior sale, pledge, assignment, or hypothecation of any Participation Loan covered by this Agreement or any portion thereof, to any other person or entity.

c.     No Contingencies or Impediments.   The  payment  of  any  sums  owing  under  any Participation Loan is not contingent upon fulfillment of any conditions or warranties, expressed or  implied.   Financial Institution/Originator knows of no suit, action, arbitration, or legal, administrative or other proceeding pending or threatened against Financial Institution/Originator, Borrower, any mortgagor, or the collateral which would affect its ability to perform its obligations under this Agreement.

d.     Loan Documents.     Each item evidencing and securing the Participation Loans is genuine and valid; has been duly executed or endorsed or assigned by each person or entity whose execution, endorsement, or assignment is essential to the item's validity and enforceability in the hands of the Financial Institution/Originator; and constitutes, against all parties, a valid and legally enforceable debt or lien of the rank and character represented by Financial Institution/Originator.    All documents or instruments submitted by Financial Institution/Originator in connection with a Participation Loan are, in every respect, valid and genuine, being what on their face they purport to be, and all information (credit or otherwise) submitted in connection with such Participation Loan is true and accurate. All Loan Documents are prepared by an attorney in good standing that is reputable or documents are prepared internally and are accompanied by and opinion of counsel attesting to the validity and enforceability according to state laws.

e.     No Defenses.  No Borrower or mortgagor has any set-offs, counter-claims or defenses to the Loan Documents arising from the acts and/or omissions of Financial Institution/Originator in the origination of the Participation Loan.

f.     Compliance with Laws.     All actions by Financial Institution/Originator under this Agreement and in connection with each Participation Loan shall be performed with a degree of care and skill consistent with applicable banking standards and in compliance with all federal and state laws and regulations.  Financial Institution/Originator has complied with all applicable requirements under federal and state law and regulation with respect to each Participation Loan, including but not limited to, the Equal Credit Opportunity Act, Regulation B, Truth in Lending Act, Regulation Z, Real Estate Settlement Procedures Act, Regulation X, Flood Disaster Protection Act, the Fair Credit Reporting Act, the Home Mortgage Disclosure Act, and the Internal Revenue Code of 1986 (as amended).  Financial Institution/Originators in Texas hereby represent and warrant that all legal instruments affecting title to real property in Texas are prepared by a licensed Texas attorney in compliance with Section 83.001 of the Texas Government Code.

g.     Casualties.    The security is covered by a valid paid in full policy of hazard insurance, covering at least the full interest of the secured party, with Financial Institution/Originator named

10/2014

in its appropriate capacity and as an additional insured on each such policy. There is no proceeding pending for the total or partial condemnation of any security and the security is free of substantial damage (including but not limited to any damage by fire, windstorm or other casualty) and in good repair.

h.    Advances.    The full principal amount of the Participation Loan has been advanced to the Borrower, either by payment direct to the Borrower or by payment made on Borrower's request or approval; the unpaid principal balance is as stated; all costs, fees and expenses incurred in making, closing and recording the Participation Loan have been paid; no part of the security has been released from the lien; and the terms of the Loan Documents have in no way been changed or modified, cancelled, satisfied, subordinated or rescinded.

i.    Brokerage.    There are no brokers, consultants, finders or other parties that were consulted or contacted in connection with any Participation Loan for which there would be due a fee from Participant. Any and all fees to third parties in connection with a Participation Loan shall be the sole responsibility of Financial Institution/Originator.

j.    Borrower Information.    Financial Institution/Originator will provide Participant with copies of all relevant credit and other information used by Financial Institution/Originator as a basis of and for its decision to make the loan to the Borrower as Participant may reasonably determine and request. Financial Institution/Originator will also provide Participant with copies of the Loan Documents that were executed and/or will be executed by the Borrower as well as by other co-makers, guarantors and endorsers under the Participation Loan.

l.    Survival.    The representations and warranties set forth herein shall survive the termination of this Agreement, and shall inure to the benefit of Participant, its successors and assigns. All of the above representations and warranties are made directly by Financial Institution/Originator to Participant with respect to each Participation Loan. Financial Institution/Originator acknowledges that Participant has or will purchase a Participation Interest in Participation Loans in reliance upon the truth and accuracy of each of the above representations and warranties.

m.    Purpose.    All lease, agricultural loan transactions and agricultural real estate loan transactions to be submitted will be for business or commercial purposes only and not for personal, family, or household purposes.

n.    Acceptance.    That prior to funding, with respect to lease transactions, all items being leased have been delivered and installed according to the specifications of the original invoice and are acceptable to the lessee per the signed Acceptance Certificate or other appropriate lease documentation.

o.    Mortgage Provisions.    With respect to loans secured by real property, the mortgage or deed of trust, as applicable (the "Mortgage") contains customary and enforceable provisions that permit the holder of the Mortgage to obtain marketable title to the Mortgaged Property upon the Borrower's default under the loan. There is no exemption available to the Borrower that would interfere with the right to sell the mortgaged property or to foreclose the Mortgage, except for state statutes or regulations respecting rights of redemption or mediation or rights to cure defaults or require restructuring of loans, moratoria on foreclosures or payments, rights of first refusal or

homestead rights; provided that no homestead rights exempt from foreclosure any portion of the mortgaged property if the value of the remainder of such property would result in a loan-to-value ratio of more than 75%. The Mortgage contains a provision for the acceleration of the payment of the unpaid principal balance of the loan in the event that the mortgaged property is sold or transferred without the prior written consent of the mortgagee thereunder. The Mortgage provides that the holder may make advances under the Mortgage to protect the holder's interest in the mortgaged property and to protect the mortgaged property from loss. Repayment of such advances (including reasonable costs and attorney's fees) plus interest at a default rate of interest is an obligation of the Borrower, secured by the Mortgage.

p.    <u>No Modifications</u>.    The Mortgage has not been satisfied, canceled or subordinated. There have been no material modifications or amendments to the Mortgage or other principal mortgage or loan documents except as contained in the document package delivered to Participant.

q.    <u>No Defaults, Unpaid Charges</u>.    There are no defaults under the Mortgage, promissory note or other loan documents, and all taxes, governmental assessments, insurance premiums, water, sewer, and municipal charges relating to the mortgaged property or other collateral that previously became due and owing have been paid.

r.    <u>No Adverse Information</u>.    The Financial Institution/Originator knows of nothing involving the Mortgage, the mortgaged property, the other collateral, the Borrower or the Borrower's credit standing that can reasonably be expected to: a) cause private institutional investors to regard the Mortgage as an unacceptable investment; b) cause the Mortgage to become delinquent or; c) adversely affect the Mortgage's value or marketability.

s.    <u>Water Rights</u>. To the extent necessary to preserve the value of the mortgaged property, a security interest has been properly perfected in any water rights and entitlements associated with the mortgaged property and such documentation has been obtained, as may be necessary, to insure the delivery of water to the mortgaged property.

t.    <u>Access</u>.    The mortgaged property is contiguous to a public thoroughfare, or includes such rights-of-way or easements, so that a public thoroughfare provides for reasonable ingress and egress to such property.

u.    <u>Conflict of Interest</u>.    In the event that the Financial Institution/Originator has made or makes a non-participated loan to a Borrower who has a participated loan under the Agri-Access® Program, Financial Institution/Originator agrees that it shall take no action enhancing its position as the lender of the non-participated loan to the detriment of Participant, as holder of the participated loan.

v.    <u>Assignability</u>.    Financial Institution/Originator agrees that Agri-Access shall be entitled to assign the covenants, representations and warranties made to Agri-Access by Financial Institution/Originator and that such covenants, representations and warranties shall be equally enforceable by such assignee and Agri-Access.

w.    <u>No Reliance</u>.    Financial Institution/Originator will rely on its own judgment and/or the advice of its legal counsel in the use, completion, and execution of all transaction documents,

will perform its own underwriting and will rely on its own business judgment in deciding to enter into each transaction, and will in no way rely or be deemed to have relied upon Agri-Access in connection with such transactions.

x.   No Other Agreements.   The documents executed and submitted to Agri-Access with respect to each transaction shall constitute the entire agreement with regard to such transaction, there being no oral agreements between the Financial Institution/Originator and the Borrower with respect to any Loan, and there will be no other agreements in force as a result of any other representations or warranties made by Financial Institution/Originator in connection therewith. Financial Institution/Originator will not enter into any oral agreement with respect to any Loan, and Financial Institution/Originator will require that any modification to a Loan be in writing and be continuously retained as an official record of the Financial Institution/Originator from the time of its execution accessible at all times to its regulators and examiners.

y.   Licenses.   Financial Institution/Originator is engaged in the business of doing the work specified in this Agreement and Financial Institution/Originator and its employees and agents have any and all required licenses and/or permits, which are in good standing, issued by the federal, state, county, municipal and other jurisdictions in which the work under this Agreement is to be performed.

5.2        By Participant

a.   Authority and Validity.  Participant has taken all proper and necessary corporate actions to authorize it to enter into and perform this Agreement and to authorize its officers to execute and deliver this Agreement, and this Agreement, when executed and delivered to Financial Institution/Originator, will be valid and binding upon Financial Institution/Originator according to its terms and provisions.

b.   Participation Decision.  Participant represents and warrants to Financial Institution/Originator that it based its decision to purchase a Participation Interest in the loan solely upon its own independent evaluation of the Loan, the Borrower's credit-worthiness and the value of the collateral securing the loan.

Article 6
Opportunity to Cure, No Recourse

6.1   Opportunity to Cure

In the event that Financial Institution/Originator shall breach any warranty or representation contained in this Agreement, Participant will notify Financial Institution/Originator of such breach and demand that it be cured within 30 days.  If such breach is not of the type that can be cured within 30 days, but Financial Institution/Originator has commenced action within said 30 days to cause such breach to be cured, is diligently pursuing said cure, and the breach is reasonably expected to be cured as a result of such diligent pursuit by Financial Institution/Originator within 90 days of the notice of the breach, the cure period shall be extended from 30 days to 90 days.   Otherwise, if such breach is not cured within said 30 days (or 90 days, if such extended cure period is applicable), Participant may at its

option 1) undertake action to cause such breach to be cured, but Financial Institution/Originator shall reimburse Participant for any and all expenses incurred in connection with such action, including but not limited to out of pocket costs, outside attorney's and consultant's fees, and the cost of utilization of Participant's personnel, which reimbursement shall occur within 10 days of Financial Institution/Originator's receipt of Participant's invoice for such expenses, or 2) demand and collect from Financial Institution/Originator, within 5 business days of Participant's written demand, an amount equal to the diminution in the loan's value to Participant on account of the breach, to be determined solely by Participant, and such determination by Participant shall be deemed conclusive and binding upon Financial Institution/Originator absent manifest error, plus any and all expenses incurred in connection with any of the foregoing by Participant, including but not limited to out of pocket costs, outside attorney's and consultant's fees, and the cost of utilization of Participant's personnel.   Financial Institution/Originator expressly acknowledges and agrees that in the event that Participant must pursue an action, whether at law or in equity, to enforce this provision, Financial Institution/Originator shall be responsible for all of Participant's costs and attorney's fees in connection with such enforcement.

6.2    No Recourse

Except as provided in section 6.1 with respect to breach of warranty or representation, the Participant shall have no recourse against the Financial Institution/Originator for any payment of principal or interest on the Participation Loans or for any fees or other amounts payable by the Borrower under any of the Loan Documents.

Article 7
Arbitration

7.1    Arbitration

    a.    <u>Arbitration</u>.  In keeping with the spirit of cooperation of Financial Institution/Originator and Agri-Access and to reduce the chances of prolonged and destructive litigation, the parties both agree to submit disputes to binding arbitration on any issue or right created or affected by this Agreement which cannot be resolved satisfactorily between the parties themselves; provided, however, that no provision hereof shall limit the right of either party to exercise other remedies, whether provided by this Agreement or by state or federal law.

    b.    <u>Rules of Arbitration</u>.  Any Arbitration shall be conducted in accord with the Commercial Arbitration Rules of the American Arbitration Association unless otherwise mutually agreed to in advance of such arbitration. In no event shall a decision be rendered which would require Agri-Access' or Financial Institution/Originator's specific performance of any discretionary powers granted to it under the terms of this Agreement. Agri-Access and Financial Institution/Originator shall have the right to be represented in all such proceedings by legal counsel. The arbitrator shall take all reasonable steps to limit the inconvenience, delay, and expense of the discovery process by imposing such conditions as the arbitrator may deem appropriate. Each party shall bear its own costs in connection with any arbitration, except that this shall not prevent the arbitrator from awarding the payment of costs to a party if the arbitrator deems such to be appropriate.

    c.    <u>Binding Arbitration</u>. The parties agree that the decision of the arbitrator shall be final and binding. Each party shall comply promptly with any award, finding or ruling of the arbitrator made in proceedings governed by this section. The prevailing party in an arbitration under this section shall have the right to enter, without contest by the other party, an order reflecting the arbitrator's decision in any court of competent jurisdiction.

    d.    <u>Arbitration Panel</u>. Financial Institution/Originator and Agri-Access may agree upon one arbitrator; otherwise, there shall be a panel of three, one named in writing by Financial Institution/Originator and one named in writing by Agri-Access within 30 calendar days after notice of arbitration is served by either Financial Institution/Originator or Agri-Access upon the other, and a third arbitrator selected by these two arbitrators within 30 calendar days thereafter. If Financial Institution/Originator and Agri-Access agree to arbitration, but neither an arbitrator nor a panel of arbitrators can be selected pursuant to the preceding sentence or if, once selected, the arbitrator or panel fails or refuses, for any reason, to tender an award or decision, either Financial Institution/Originator or Agri-Access may then, and only then, take whatever recourse it deems appropriate under the circumstances.

Article 8
Suspension and Termination

8.1    <u>Ordinary Termination Provision</u>. Either party may terminate this Agreement at any time upon 30 days prior written notice to the other party, or immediately upon the mutual consent of both parties.

8.2    <u>Suspension</u>. In addition to the rights afforded to Agri-Access in Section 8.1, above, Agri-Access shall have the right to declare Financial Institution/Originator to be in default of this Agreement and elect to put Financial Institution/Originator under suspension upon the occurrence of any of the following with respect to Financial Institution/Originator (collectively, "Suspension Events"):

    a.    Financial Institution/Originator closes or significantly downsizes a department that is vital to the activities contemplated in this Agreement.

    b.    Commencement of any serious enforcement action by a regulator with authority over Financial Institution/Originator; provided that such information is not nonpublic supervisory information that Financial Institution/Originator is prohibited by its federal banking agency to disclose.

    c.    Financial Institution/Originator experiences a material adverse change in its business, as reasonably determined by Agri-Access, to include, but not be limited to: departure of key staff members from the institution; institution becomes a defending party in a legal proceeding which has a reasonable likelihood of having a detrimental effect on institution; pattern of material decline in quality of credit packages, appraisals, and/or closing packages submitted to Agri-Access; pattern of material decline in credit quality of the overall portfolio of loans participated to Agri-Access evidenced by high levels of delinquencies, charge-offs and/or non-accruals; pattern of institution failing to meet acceptable standards in performing ongoing servicing requirements (by way of illustration but not limitation, inconsistency in obtaining financials and failure to timely respond and/or assist with respect to servicing activities); or institution is found by Agri-Access to exhibit a different credit or closing philosophy from that represented to Agri-Access during its due diligence activities with respect to Financial Institution/Originator

10/2014

Financial Institution/Originator hereby covenants and agrees that it shall notify Agri-Access immediately (no later than the following business day) should Financial Institution/Originator experience any Suspension Event.

Financial Institution/Originator may seek reinstatement by submitting to Agri-Access evidence indicating that the occurrence(s) causing suspension have been remedied and that no further occurrences have arisen.  Agri-Access will review such evidence and make its decision, within its sole discretion, whether or not to reinstate Financial Institution/Originator.

8.3    Extraordinary Termination Provision.    Agri-Access shall, in its discretion, have the right to forego suspension of Financial Institution/Originator and may instead elect to immediately terminate this Agreement with written notice upon the occurrence of any Suspension Event with respect to Financial Institution/Originator.

8.4    Effect.
8.4.1.  In the event that Agri-Access has suspended Financial Institution pursuant to Section 8.2 or terminated this Agreement pursuant to Section 8.3, the cure period provided in Section 6.1 above shall be shortened to 10 days and the payment periods shall be shortened to 2 business days.
8.4.2  Immediately upon Financial Institution/Originator being placed under suspension, pursuant to Section 8.2, above, Financial Institution/Originator may not submit any further transactions for consideration to Agri-Access and may resume submission of transactions only upon receiving written acknowledgement from Agri-Access that Financial Institution/Originator's status has been reinstated.
8.4.3  Agri-Access may, in its discretion, request, and if so requested, Financial Institution/Originator shall immediately assign any interest or rights Financial Institution/Originator has in the Participated Loan or Loans, as the case may be, to Agri-Access.  Agri-Access and Financial Institution/Originator will agree on any compensation to be paid to Financial Institution/Originator for such assignment but the failure to agree will not cause a delay in the assignment.
8.4.4  In the event that Agri-Access has suspended Financial Institution/Originator pursuant to Section 8.2 or terminated this Agreement pursuant to Section 8.3, Agri-Access may terminate Financial Institution/Originator's field servicing assignment and no further field servicing fees will be paid to Financial Institution/Originator.
8.4.5. The parties' respective rights and obligations with respect to transactions which have been accepted prior to termination of this Agreement shall survive such termination.  Upon termination of this Agreement, the parties shall cooperate with one another and take any and all necessary actions to cause the transfer of all servicing rights to Participant, including but not limited to the following:

a.    At Financial Institution/Originator's sole expense, Financial Institution/Originator shall promptly provide to Participant all original documentation, information and/or data of any kind relating to Participation Loans, including but not limited to information created by Fianncial Institution/Originator relating to the field servicing of Participation Loans.

b.    Any funds received by Financial Institution/Originator shall be promptly remitted to Participant following receipt.  Upon Participant's receipt of any funds from Financial Institution/Originator which constitute Financial Institution/Originator's Equity Interest in any Participation Loan, Agri-Access shall return such funds to Financial Institution/Originator via

10/2014

ACH within 2 business days of receipt or as otherwise provided in the Reconciliation and Reporting Procedures Manual.

c.      Any escrow accounts respecting the Participation Loans, if held by Financial Institution/Originator, shall be transferred to Participant.

d.      Participant's right to indemnification shall survive termination of this Agreement.

e.      Financial Institution/Originator shall deliver notices to Borrowers and/or Mortgagors as required by law informing such parties of the transfer of servicing rights in a form mutually approved by the parties.

f.      Financial Institution/Originator shall deliver notices to the applicable taxing authorities and insurance companies within five (5) business days of the Effective Date of the transfer of all servicing.   Financial Institution/Originator shall also pay or cause to be paid any and all mortgage, hazard and fire insurance premiums and taxes due with respect to the Participation Loan, including without limitation interest, late charges and penalties, which are due within 30 days of the Effective Date of the transfer of servicing.

g.      The parties shall comply with all federal, state and local laws in connection with the transfer of servicing from Financial Institution/Originator to Participant.


Article 9
Miscellaneous

9.1    Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Minnesota, without regard to its conflicts of law provisions.  In the event of a dispute, the parties agree that venue shall be in Blue Earth County, Minnesota and the parties expressly consent to jurisdiction therein.

9.2    Severability

The terms and provisions of this Agreement are to be deemed severable, and the invalidity or unenforceability of any term or provision shall not affect or impair the remaining terms and provisions, which shall continue in full force and effect.

9.3    Modification, Entire Agreement

No modification of this Agreement shall be binding or enforceable unless in writing and signed by both of the parties hereto. With respect to the subject matter of this Agreement, this Agreement and the other documents and instruments identified in or contemplated by this Agreement constitute the entire agreement between the parties, and may not be altered, modified or amended except by written agreement signed by each party to be changed.  Except as expressly provided in this Agreement, all prior and contemporaneous agreements, arrangements and understandings between the parties are hereby superseded and rescinded.

10/2014

9.4    Headings

The headings for the articles, sections and subsections of this Agreement are for convenience only and shall not be used to interpret the terms and provisions thereof.

9.5    Notices

Any notices or consents required or permitted by this Agreement shall be in writing and shall be deemed given if delivered in person, if sent by United States mail or an express delivery service, postage or other charge prepaid, or if transmitted by facsimile equipment to the Financial Institution/Originator's or Participant's address specified below, to the attention of:

If to Financial Institution/Originator: Corporate America Lending, Inc.
                                   5610 N Palm, #110
                                   Fresno, CA 93704
                                   Attn: Ron Cook

If to Agri-Access:              Agri-Access™, a division of AgStar Financial Services, ACA
                                 5414 NW 88th Street, Suite 110
                                 Johnston, IA 50131
                                 Attn: Agri-Access Enrollment Coordinator
                                 Fax No.: 515-727-4365

Or to such other address or such other person as each party may designate for itself by like notice.

9.6    Successors and Assigns

This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties. Financial Institution/Originator shall not be entitled to assign this Agreement or any Participation Loan under it without the prior written consent of Agri-Access, which consent will not be unreasonably withheld.  No party has the right to pledge or exchange the entire financial asset without agreement by all participating interest holders.

9.7    Relationship of the Parties

It is understood and agreed that Financial Institution/Originator is not an agent or employee of Agri-Access for any purposes whatsoever, but is an independent contractor.  No agent, employee, subcontractor, or servant of Financial Institution/Originator shall be or shall be deemed to be the employee, agent, subcontractor, or servant of Agri-Access for any purpose.    Financial Institution/Originator and the employees or agents of Financial Institution/Originator are not entitled to any of the benefits Agri-Access provides for Agri-Access' employees including, but not limited to, any compensation insurance and/or unemployment insurance.  Agri-Access shall not withhold any amount from any compensation due Financial Institution/Originator under this Agreement for the payment of any taxes.  Financial Institution/Originator will be solely and entirely responsible for its acts and the acts of its agents, employees, and subcontractors during the performance of this Agreement. Financial Institution/Originator shall be solely responsible for paying its employees.    Financial

10/2014

Institution/Originator shall be solely responsible for paying any and all taxes, FICA, workers' compensation, unemployment compensation, medical insurance, life insurance, paid vacations, paid holidays, pension, profit sharing and other benefits for Financial Institution/Originator and its employees, servants and agents. Financial Institution/Originator shall have no authority to incur any obligations or to make any statements or representations on behalf of Agri-Access, or to bind or commit Agri-Access in any manner, or to make, alter or execute any logos, service marks or document or agreement on behalf of Agri-Access. Financial Institution/Originator shall not use Agri-Access' name or any of Agri-Access' trademarks as part of its firm, trade or corporate name, except in connection with co-branding efforts as may be mutually agreed upon by the parties. Financial Institution/Originator shall not accept service of any legal process in any action, which may be brought against Agri-Access, or employ attorneys to defend any such action.

9.8     Acts of Representatives

It is understood by Financial Institution/Originator that all of its duties and responsibilities arising out of this Agreement extend as well to anyone acting on Financial Institution/Originator's behalf. Financial Institution/Originator specifically understands that in the event that it delegates any of its functions, such as obtaining documentation or making other arrangements with regard to a transaction, to others, Financial Institution/Originator is fully and primarily responsible for any and all such actions.

9.9     Qualification of Financial Institution/Originator

Financial Institution/Originator shall, from time to time upon reasonable request, submit such information to Agri-Access as Agri-Access reasonably deems appropriate in order to ensure that Financial Institution/Originator meets Agri-Access' standards with respect to qualifications to transact business with Agri-Access.

9.10    Mutual Cooperation

With respect to all transactions within the scope of this Agreement, the parties will cooperate reasonably with each other in communicating, in providing requested information, and in assisting each other generally in fulfilling the purposes of this Agreement.

9.11    Counterparts

This Agreement may be signed in any number of counterparts with the same effect as if the signatures upon any counterpart were upon the same instrument. All signed counterparts shall be deemed to be an original. A faxed copy bearing the faxed signature of a party's representative shall serve as a counterpart original.

9.12    Waiver of Breach

Any waiver by any party of any breach of any kind by the other, whether direct or implied, shall not be construed as a continuing waiver of, or consent to, any subsequent breach of this Agreement.

9.13    Attorney Fees

10/2014

In the event that any party shall breach its obligations under this Agreement and shall fail to cure the breach within the reasonable time set by the other party's written demand, the prevailing party in any enforcement proceeding shall be entitled to recover all enforcement-related costs, expenses and reasonable attorney fees from the breaching party.

Each party to this Agreement, acting under proper authority, has caused this Agreement to be executed by its duly authorized representatives as of the date first shown above.

AGRI-ACCESS®, A DIVISION AND
TRADEMARK OF:
AGSTAR FINANCIAL SERVICES, ACA
AGSTAR FINANCIAL SERVICES, PCA
AGSTAR FINANCIAL SERVICES, FLCA

By: Amy Danner
Its: Manager Lender Relations

CORPORATE AMERICA LENDING, INC.

By: Ron Cook
Its: CEO

10/2014



**AGRI-ACCESS**®
Providing Capital to Rural America℠

OFFER AND CERTIFICATE OF PARTICIPATION (agricultural land loans)

| Originator | Participant |
|---|---|
| Coporate America Lending, Inc. | AgStar Financial Services, (either FLCA or PCA) |

| Borrower |
|---|
|  |

1.   Originator issues this Offer and Certificate of Participation to evidence Originator's offer to sell and Participant's purchase and ownership of a participation in a total loan evidenced by the following described note(s):

| Note Date | Loan Amount | Interest Rate | Maturity Date |
|---|---|---|---|
|  | $ |  |  |

2.   Servicing Fee: _____ basis points to Originator.

3.   Pro Rata Percent Participation: _____

4.   Primary Security. The security described below shall be considered primary security for the Participation Loan. Pursuant to Section 4.1c of the Agreement, all other loans to Borrower shall be subordinate to the Participation Loan as to such security. _____

5.   Copies of the following security instruments and lien documentation attached:
☐ Financing Statement        ☐ Security Agreement        ☐ Lien Search
☐ Mortgage/Deed of Trust        ☐ Title Opinion/Policy

6.   This participation is issued and accepted under the terms and conditions of a Origination, Field Servicing and Master Participation Agreement dated _____, 20_____, and all supplements thereto, between Originator and Participant, the terms and conditions of which are incorporated into this Certificate by reference and are a part of it.

7.   Other terms and conditions, if any:_____
_____

Date : _____

AGSTAR FINANCIAL SERVICES, (either FLCA or PCA)        CORPORATE AMERICA LENDING, INC.


_____        _____

By:        By:
Its:        Its:


| AgStar Use Only | | |
|---|---|---|
| Association Number: 52 | Branch Number: | Loan Number: |

10/2014



AGRI-ACCESS®
Providing Capital to Rural America℠

OFFER AND CERTIFICATE OF PARTICIPATION (equipment loans)

| Originator | Participant |
|---|---|
| Corporate America Lending, Inc. | AgStar Financial Services, PCA |
| Borrower | |
| | |

1.    Originator issues this Offer and Certificate of Participation to evidence Originator's offer to sell and  Participant's purchase and ownership of a participation in a total loan evidenced by the following described note(s):

| Note Date | Loan Amount | Interest Rate | Maturity Date |
|---|---|---|---|
| | $ | | |

2.    Servicing Fee: _____ basis points to Originator.

3.    **To be administered as a 100% Pro Rata Participation.**

4.    Primary Security. The security described below shall be considered primary security for the Participation Loan. Pursuant to Section 4.1c of the Agreement, all other loans to Borrower shall be subordinate to the Participation Loan as to such security. _____

5.    Copies of the following security instruments and lien documentation attached:
☐ Financing Statement        ☐ Security Agreement        ☐ Lien Search

6.    This participation is issued and accepted under the terms and conditions of a Origination, Field Servicing and Master Participation Agreement dated _____, 20_____, and all supplements thereto, between Originator and Participant, the terms and conditions of which are incorporated into this Certificate by reference and are a part of it.

7.    Other terms and conditions, if any:_____
_____

Date : _____

AGSTAR FINANCIAL SERVICES, PCA                CORPORATE AMERICA LENDING, INC.


_____        _____
By:                                     By:
Its:                                    Its:


| AgStar Use Only | | |
|---|---|---|
| Association Number:  52 | Branch Number: | Loan Number: |

10/2014