UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| COMPEER FINANCIAL, ACA;<br>COMPEER FINANCIAL, PCA; and<br>COMPEER FINANCIAL, FLCA, | Court File No.  24-CV-1896 (JWB/ECW) |
| *Plaintiffs,*<br><br>v.<br><br>CORPORATE AMERICA LENDING,<br>INC., | **PLAINTIFFS' MEMORANDUM OF<br>LAW IN SUPPORT OF MOTION TO<br>CONFIRM ARBITRATION AWARDS** |
| *Defendant.* | |

Plaintiffs ("Agri-Access")[1] respectfully move for confirmation of three arbitration awards pursuant to Chapter 1 of the Federal Arbitration Act ("FAA") against Defendant Corporate America Lending, Inc. ("CAL"), and allege as follows:

## INTRODUCTION

Over the past nine months, CAL has told lie after lie with one goal in mind: to prevent or delay Agri-Access from recovering the more than $58 million in Payoff Proceeds CAL stole from Agri-Access.  Those lies were told to this Court, when Agri-Access sought to obtain an order in aid of arbitration requiring that CAL segregate and

---

[1] Plaintiffs Compeer Financial, ACA f/k/a AgStar Financial Services, ACA; Compeer Financial, PCA f/k/a AgStar Financial Services, PCA; and Compeer Financial, FLCA f/k/a AgStar Financial Services, FLCA, each conduct certain business as Agri-Access® and are collectively referred to herein as "Agri-Access."  Previous filings and Orders in this case refer to Plaintiffs collectively as "Compeer."

preserve the Payoff Proceeds and when Agri-Access later sought to enforce the Emergency Arbitrator's award to that effect. When the parties were last before it, the Court found that further relief should await enforceable orders from the arbitration merits Panel.

The Panel has now ruled. Following two hearings, including a merits hearing held in Minneapolis on January 13, 2025, the Panel issued its Partial Final Award on Phase I and found that the Payoff Proceeds are Agri-Access's property, that CAL has no right to retain the Payoff Proceeds, that CAL breached its contract with Agri-Access when it retained those Proceeds, that CAL's defenses to that breach are meritless, and that Agri-Access is entitled to recover the entire unpaid amount of those Proceeds, plus interest, attorneys' fees, and costs. Exhibit 1 (Partial Final Award on Phase I). In reaching its award, the Panel made clear that "[t]he evidence established that [CAL] acted in bad faith in thwarting Claimant's contractual right to receive the Payoff Proceeds." *Id.* at 7. Recognizing that CAL has now succeeded for more than nine months in retaining the Payoff Proceeds and refusing to segregate and preserve them in willful disobedience of orders of this Court and the arbitrators, the Panel ordered CAL to transfer to Agri-Access $23 million now held by CAL's attorney, C. Russell Georgeson, and to pay the remaining amount within 30 days. *Id.* at 3-4.

This Court should promptly confirm the Panel's Partial Final Award on Phase I, as well as the Interim Award and Sanctions Order that led to it and on which the Panel relied (collectively, the "Arbitration Awards"). Under the FAA, a court must confirm an arbitration award unless the award is vacated under 9 U.S.C. § 10 or modified or corrected pursuant to 9 U.S.C. § 11. 9 U.S.C. § 9. No such circumstances exist here. Agri-Access

further requests that the Court grant leave to Agri-Access to register the Court's judgment in other United States District Courts for purposes of execution pursuant to 28 U.S.C. § 1963. Prompt confirmation and entry of judgment is necessary because the record is clear that CAL and its owner/CEO will never comply with any order to turn over the Payoff Proceeds unless there are real and serious consequences for non-compliance.

## BACKGROUND

As the Court will recall from the earlier proceedings,[2] Agri-Access and CAL are parties to an Origination, Field Servicing & Master Participation Agreement ("MPA"). Under that agreement, Agri-Access may purchase participation interests in loans CAL has originated to agricultural borrowers. One such set of loans was made in 2018 and 2021 to borrowers the parties have referred to as the "████ Borrowers." ECF No. 1-4 (Loan Credit Agreement). Agri-Access paid $58 million to purchase a 100% participation interest in those loans, which entitled it to the full amount due from the ████ Borrowers. ECF Nos. 2-1 (0800 Loan Certificate of Participation); 2-2 (3400 Loan Certificate of Participation). In April 2024, the ████ Borrowers refinanced the loans with a different lender, and remitted to CAL the full outstanding balance ($58,187,976.50). ECF Nos. 1-2 (Final Closing Stmt.); 2-5 (Wire Confirm. & Correspondence). CAL was obligated by the

---

[2] *See, e.g.*, ECF No. 1 (May 21, 2024 Sealed Complaint); ECF No. 7 (May 21, 2024 Sealed Memorandum in Support of Motion for Temporary Restraining Order); ECF No. 38 (June 18, 2024 Agri-Access Letter to J. Blackwell); ECF No. 41 (Emergency Arbitrator Recommendation); ECF No. 63 (September 11, 2024 Agri-Access Letter to J. Blackwell); and multiple hearings (*see* ECF Nos. 33, 37 (Transcript of May 29, 2024 Status Conference); ECF No. 57 (Transcript of Sept. 3, 2024 Show Cause Hearing)).

MPA to promptly remit those Payoff Proceeds to Agri-Access. But CAL refused to do so. It first tried to conceal its receipt of the Payoff Proceeds. Then it steadfastly resisted every effort by Agri-Access to recover the Payoff Proceeds or at least require that CAL segregate and preserve those specific, traceable funds, pending determination of Agri-Access's rights to the funds in arbitration.

### A. Prior Proceedings in this Court and Before the Emergency Arbitrator.

The parties originally appeared in this Court on May 29, 2024, in connection with Agri-Access's request for an order in aid of arbitration directing CAL to preserve the Payoff Proceeds. ECF No. 1 (May 21, 2024 Sealed Complaint); ECF No. 5 (May 21, 2024 Motion for TRO). After CAL's counsel represented that the entirety of the Payoff Proceeds were still in CAL's possession and Mr. Cook submitted a declaration stating that he was willing to preserve the funds pending resolution of the arbitration, the Court entered an order requiring CAL to place the funds in a third-party escrow account and provide a report within five days. ECF Nos. 33, 37 (Transcript of May 29, 2024 Status Conference); 32 (May 29 Order of District Court). As CAL later admitted, it did neither.

Agri-Access also sought relief from the Emergency Arbitrator, who entered an interim award that adopted this Court's order. ECF No. 41-1 (Interim Award). When CAL refused to comply, the Emergency Arbitrator supplemented the interim award and directed CAL to provide further reports on the status of the funds. ECF No. 41-2 (Supplement to Interim Award). CAL continued to defy those orders and never made a full accounting. But CAL did reveal that, contrary to its earlier representations to this Court, it did not possess the funds but had "invested" them. In further reports, it stated that it had recovered

$23 million of the funds previously "invested," but it continued to refuse to place *any* funds in a third-party escrow account as ordered.  ECF No. 57 (Transcript of Sept. 3, 2024 Show Cause Hearing) at 7-8.  Instead, it claimed that it had deposited them in a bank account controlled by its litigation counsel.  Nor did CAL provide any accounting or documents that would shed light on the whereabouts of the remaining funds.

In light of CAL's failure to comply with the awards and orders of the Emergency Arbitrator, Agri-Access sought and obtained from the Emergency Arbitrator (1) a recommendation that the Court impose sanctions in accordance with the Court's May 29 Order and (2) an interim award of attorneys' fees (which CAL still has not paid).  *See* ECF No. 41 (Emergency Arbitrator Recommendation).

To enforce the Emergency Arbitrator's recommendation, Agri-Access returned to this Court in September 2024.  In a hearing held on September 3, CAL's counsel admitted that CAL had not complied with the Court's May 29 Order.  *See* ECF No. 57 (Transcript of Sept. 3, 2024 Show Cause Hearing) at 8-10.  On September 20, 2024, the Court issued an order recounting CAL's obfuscation and delay:

> Defendant's extended record of noncompliance with orders to preserve the Payoff Proceeds is clearly detailed in the R&R. (Doc. No. 41 ¶ 6.)  Despite initial assurances of possession and preservation of the Payoff Proceeds, and despite repeated promises to the Emergency Arbitrator that detailed information would be provided, Defendant has yet to deliver a reasonable report on the status of the Payoff Proceeds.  Defense counsel acknowledges that Defendant has not complied with the interim orders, and Defendant's CEO, who is controlling Defendant's position, presently appears more focused on farming obligations no matter the inordinate resources Defendant's noncompliance has absorbed.  (*See* Doc. No. 60 at 6 (referencing pistachio farming).)  Defendant's "cat and mouse" tactics have now defied two decisionmakers and led this Court to consider appointing a

> receiver to accomplish the tasks that Defendant has refused for months. The
> deadline for compliance has long since passed.

*See* ECF No. 73 (Order on Report and Recommendation of Emergency Arbitrator) at 6-7.

However, the Court declined to impose further sanctions at the time, explaining that,
while the Emergency Arbitrator had recommended the imposition of sanctions, he had not
entered an actual sanctions award that the Court could enforce. *Id.* at 7. Further, "as the
full arbitration panel ha[d] now been seated, the Emergency Arbitrator's appointment and
authority ha[d] expired in accordance with AAA Commercial Arbitration Rule 39(f)." *Id.*
The Court thus concluded that "the panel should have the opportunity to consider whether
to adopt, vacate, or modify the Emergency Arbitrator's interim awards." *Id.* The Court
also noted that, "[d]epending on the panel's decision, Plaintiffs can then seek enforcement
from any appropriate court." *Id.* at 7-8.

**B.     The Panel Sets the Schedule and Holds Preliminary Hearings.**

The Panel issued an order on September 6, 2024, bifurcating the arbitration into a
Phase I hearing during the week of January 13, 2025 and a Phase II hearing during the
week of May 26, 2025. *See* Exhibit 2 (Arbitration Panel's Bifurcation Order). CAL
objected to bifurcation, while Agri-Access sought additional sanctions and relief from the
merits Panel for CAL's ongoing failure to comply with prior orders and awards. On
October 2, 2024, at CAL's request, the Panel issued an Order setting a preliminary two-
day hearing on October 22 and 23, 2024. *See* Exhibit 8 (Panel Sanctions Order) at 1, n.1 .

At that preliminary hearing, CAL's owner and CEO Ron Cook testified and made a
number of crucial admissions under oath, including that:

(1) CAL sold a 100% Participation in the Loans to Agri-Access for $58 million (*see* Exhibit 4 (Transcript of Oct. 22, 2024 Hearing) at 94);

(2) CAL instructed the Borrowers to deliver the Payoff Proceeds to CAL without ever informing Agri-Access (*see id.* at 136:6-12);

(3) CAL, at Mr. Cook's direction, received and withheld the Payoff Proceeds to coerce Agri-Access into re-negotiating its business relationship with CAL (*see id.* at 137:6-143:9);

(4) Mr. Cook transferred over $35 million of the Payoff Proceeds received by CAL to third parties he described as "valued business partners," based on only a "handshake" deal, to "hold" the funds until he provided further instructions (*see id.* at 100:23-25, 101:12, 104:4-105:13, 106:24-107:1, 194:3-5);

(5) The three recipients of the $35 million did not have any claims to the Payoff Proceeds (*see id.* at 103:17-18, 103:25-104:3, 104:12-14, 105:4-13, 106:7-15, 107:2-4); and

(6) Mr. Cook had not made *any* requests to his "valued business partners" for the return of the $35 million so that CAL could escrow them as ordered by the Court and the Emergency Arbitrator.  *See id.* at 103:15-20, 105:14-17, 107:5-8.

**C.    The Panel's Interim Award Gives CAL "One Final Chance to Comply."**

Based on this testimony and other evidence, on October 28, 2024, the Panel issued an interim award (the "Interim Award").    Among other things, the Interim Award (1) denied CAL's motion to reconsider bifurcation; (2) granted in part Agri-Access's request for interim relief; (3) adopted the awards of the Emergency Arbitrator without

modification and suggested no modifications to the Court's May 29 Order;[3] (4) found CAL failed to comply within the time limits specified in the Emergency Arbitrator's awards and the Court's May 29 Order; and (5) gave CAL "one final chance to comply," ordering CAL "to deposit $58,187,796.50 into a segregated, interest bearing, and award/order compliant escrow account, on or before November 15, 2024."  Exhibit 5 (Interim Award of Merits Panel) at 2-4.

### D.    CAL Again Fails to Comply, and Agri-Access Renews its Request for Sanctions.

Rather than comply, CAL flouted the Panel's Interim Award.  On November 15, CAL submitted a letter to the Panel restating CAL's objections that the MPA is unlawful and unenforceable and asserting that the Panel "is prohibited from ordering CAL to perform a discretionary act under the MPA."  *See* Exhibit 6 (R. Georgeson Letter dated Nov. 15).  Despite its counsel's repeated representations that no third parties had claims against the Payoff Proceeds—and Ron Cook's sworn testimony that the recipients of the $35 million had no claims against the Payoff Proceeds—CAL also submitted a declaration from Mr. Cook in which he asserted that he was unable to secure the return of the Payoff Proceeds because the members of his inner circle to whom the funds were transferred were

---

[3] Specifically, the Interim Award adopted the June 3, 2024 Interim Award (ECF No. 38-1); the June 4, 2024 Supplement to Interim Award (ECF No. 38-3); the June 13, 2024 Second Supplemental Interim Order (ECF No. 38-5); and the August 13, 2024 Interim Award of Attorneys' Fees and Costs (Exhibit 3) of the Emergency Arbitrator.

allegedly now claiming (without any detail or evidence) that such payments were made in repayment of debts owed by CAL.  Exhibit 7 (R. Cook Declaration dated Nov. 15) at 2-3.

### E.     The Panel Issues its Sanctions Order.

On November 26, following further briefing from the parties, the Panel issued a sanctions order (the "Sanctions Order"), in which it incorporated the terms of the Interim Award and found that "CAL has willfully and without justification violated the previous Order of the United States District Court, the Interim Awards and Order of the Emergency Arbitrator, and the Interim Award of the Merits Panel."  Exhibit 8 (Panel Sanctions Order) at 2.  The Panel accordingly ordered, among other things, that Agri-Access be awarded "its costs . . . and attorneys' fees through the Phase I hearing, the amounts of which will be determined in the Phase I hearing."  *Id.*  The Panel also noted that it was "concerned that CAL and its owner and CEO have misled the Panel relative to the disposition of the Payoff Proceeds, and should CAL continue to fail to comply with the Interim Award of the Merits Panel, the Panel may order additional sanctions."  *Id.*

### F.     The Panel Holds the Phase I Hearing and Issues its Partial Final Award on Phase I.

On December 23, 2024, CAL filed a motion to stay the arbitration on the ground that Mr. Cook is the subject of a criminal grand jury investigation arising out of CAL's theft of the Payoff Proceeds.  Exhibit 9 (Motion to Stay Arbitration Proceedings) at 2.  CAL argued that Mr. Cook faced the risk of self-incrimination if he were to testify at the hearing, and thus the hearing should be deferred until the criminal proceedings were complete.  *Id.* at 3.  The Panel denied that motion on multiple grounds, including that Agri-Access would

be "seriously prejudiced by a delay in the hearing" given that CAL has "received [Agri-Access's] property and has steadfastly refused to return it."  Exhibit 10 (December 26, 2024 Pre-Hearing Order) at 1.  The Panel observed that "[i]t has further been shown that [CAL] has dissipated that property and there are real concerns that further delays could result in additional dissipation."  *Id.* at 1-2.  The Panel concluded that neither CAL nor Mr. Cook would be unduly prejudiced if Mr. Cook opted not to testify in the hearing because CAL could rely on his previous testimony, including his testimony under oath at the October 2024 preliminary hearing.  *Id.* at 2.

The merits hearing was held in Minneapolis on January 13, 2025.  *See* Exhibit 1.  CAL presented no witnesses or other evidence of its own and did not cross-examine Agri-Access's witness.  It argued to the Panel, however, that Agri-Access's claims should be denied on the ground that the MPA violated federal and state law because it effectively made Agri-Access a direct lender outside of its authorized territory under the federal Farm Credit Act.  CAL also challenged the arbitrator's jurisdiction and asserted the MPA was invalid under various state-law theories, including fraud and mistake.

The Panel issued its unanimous Partial Final Award on Phase I on February 4, 2025.  It addressed—and rejected—all of CAL's challenges to the legality or enforceability of the MPA, including its arbitration provision.  As to arbitrability, the Panel found that CAL had waived any challenge to arbitrability by "failing to timely object and by affirmatively participating in the arbitration."  *Id.* at 12.  On the merits, the Panel found in Agri-Access's favor on Agri-Access's breach of contract claim, ruling that Agri-Access was "unconditionally entitled" under the MPA to receive the Payoff Proceeds and CAL "had

no legal grounds" to withhold those Proceeds. *Id.* at 6. The Panel further found that Agri-Access had proved its claims for unjust enrichment and breach of the covenant of good faith and fair dealing as alternative bases for recovery. *Id.* at 7.

Based on these rulings, the Panel ordered that CAL pay Agri-Access the sum of $57,146,398.93, together with interest at the Minnesota statutory rate of 10% from and after May 9, 2024, and continuing thereafter on unpaid amounts. *Id.* at 3. The Panel further ordered that CAL pay Agri-Access for its attorneys' fees and costs in the amount of $3,593,601 through Phase I (in addition to the fees and costs of $ 237,953.50 awarded by the Emergency Arbitrator in his Interim Award of Attorneys' Fees and Costs of August 13, 2024), and $143,773.75 for the administrative fees and expenses of the AAA. *Id.* The Panel ordered that CAL pay the amounts awarded within 30 days of the issuance of the Award, and that it "[i]mmediately and without delay" transfer the $23 million in Payoff Proceeds being held in the account of CAL's counsel. *Id.* at 4.

The Panel made clear that its Partial Final Award on Phase I fully resolves "all claims and defenses submitted to Phase I of this arbitration." *Id.* Further, reflecting CAL's persistent refusal to turn over the Payoff Proceeds and its willful defiance of all previous orders to preserve and segregate the funds, the Panel recommended that "any Court confirming and enforcing this Partial Final Award consider and impose any and all actions and relief which may be necessary and appropriate to compel Respondent's immediate compliance, including but not limited to the appointment of a receiver to take possession of Respondent's documents and assets and to exercise all rights and perform all tasks

necessary to effectuate the terms of this Partial Final Award, as well as the Merit Panel's prior Interim Award and Sanctions Order." *Id.*

### G.   CAL's Lies to Agri-Access, the Arbitrators, and This Court.

The record is beyond dispute that CAL has repeatedly lied to everyone involved in these proceedings—including this Court—about the location and status of the Payoff Proceeds.

First, CAL lied to this Court about its efforts to open a compliant escrow account. In its June 20, 2024 letter to the Court, CAL's counsel represented that "[a] compliant escrow account is in the process of being established at Bank of the Sierra, a financial institution with which CAL has no pre-existing relationship. Counsel expects that the account will be established in the next few days and will receive the [$23 million] funds currently deposited at Fresno First Bank. Additional funds reacquired will also be deposited in the compliant escrow account." ECF No. 39 (June 20 Letter to J. Blackwell) at 2. However, CAL never deposited even the $23 million in Payoff Proceeds it *was* able to recover into a compliant escrow account, despite being ordered (and able) to do so, and has not confirmed whether it now intends to comply with the Panel's Partial Final Award on Phase I and transfer these funds to Agri-Access.

CAL also represented to this Court that "CAL has diligently attempted to comply with the [Emergency Arbitrator's] Interim Orders" and "CAL understands and takes seriously its obligations and is making every reasonable effort to comply." ECF No. 39 (June 20 Letter to J. Blackwell). However, as noted above, Mr. Cook's October 22 testimony showed that those statements were false, and that he had made no request for the

return of the Payoff Proceeds from the members of his inner circle to whom he improperly diverted these funds. *See* Exhibit 4 at 103:15-20, 105:14-17, 107:5-8.

More recently, it has come to the attention of Agri-Access's counsel that Mr. Cook's representations regarding the whereabouts of the Payoff Proceeds are demonstrably false. In January 2025, Agri-Access filed a lawsuit in the United States District Court for the Eastern District of California against Mr. Cook's business associates (the "E.D. Cal. Defendants") for the return of more than $35 million of the Payoff Proceeds. In connection with that action, recently-obtained documents and representations made by counsel for the E.D. Cal. Defendants (including by Mr. Georgeson and Mr. Lee as purported counsel for Defendant Kristi Iness) reveal that nearly *all* of the more than $35 million CAL transferred to the E.D. Cal. Defendants had already been returned to CAL well before Mr. Cook's sworn testimony to the contrary. Exhibit 11 (Jan. 29 Email to Panel).

These contradictory—and demonstrably false—statements from Ron Cook, CAL, and counsel have delayed (and so far prevented) recovery of the Payoff Proceeds, and neither CAL nor its counsel have made any effort to explain or correct them.

In accordance with this Court's September 20, 2024 Order on Report and Recommendation of Emergency Arbitrator, Agri-Access now seeks enforcement of the Arbitration Awards and any other relief as the Court deems appropriate. Only with an enforceable order from this Court can CAL be compelled to comply with its obligations or otherwise face real consequences for its refusal to do so.

## ARGUMENT

## I.    THE COURT SHOULD CONFIRM THE ARBITRATION AWARDS.

"Under the Federal Arbitration Act, 9 U.S.C. § 9, a court must confirm an arbitration award unless the award is vacated under 9 U.S.C. § 10, or modified or corrected pursuant to 9 U.S.C. § 11." *Beumer Corp. v. ProEnergy Servs., LLC*, 899 F.3d 564, 565 (8th Cir. 2018).[4]  As such, "the Court must confirm an arbitration award if there is no basis to vacate or modify the award." *Paisley Park Enters., Inc. v. Boxill*, 371 F. Supp. 3d 578, 582 (D. Minn. 2019); *see also Prime Therapeutics LLC v. Omnicare, Inc.*, 555 F. Supp. 2d 993, 996 (D. Minn. 2008) ("Under the FAA, a court must confirm an arbitration award, except in the [] narrow circumstances [enumerated in 9 U.S.C. § 10].").

Because the FAA applies here and its requirements are easily satisfied, this Court should promptly confirm the Arbitration Awards.

### A.    The FAA Applies to the Confirmation of the Arbitration Awards.

The FAA applies here.[5]  That is because the MPA reflects a commercial relationship

---

[4] Pursuant to 9 U.S.C. § 9, "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  As the Interim Award was served upon the parties on October 28, 2024, the Sanctions Order was served upon the parties on November 26, 2024, and the Partial Final Award on Phase I was served upon the parties on February 4, 2025, Agri-Access's Motion to Confirm Arbitration Awards is timely.

[5] Even if the MUAA applied (it does not), that would not matter.  The MUAA and FAA have similar standards, and confirmation is proper under either.  *See, e.g.*, *Conroy v. Inter Fac. Org.*, No. CIV 06-4612 JRT/FLN, 2007 WL 2580573, at *5 (D. Minn. Sept. 5, 2007) ("Both acts have very similar standards. . . .").  *Hunter, Keith Indus., Inc. v. Piper*

between parties in different states concerning loans in an industry that affects interstate commerce and thus is a contract "involving" interstate commerce, the MPA's arbitration clause does not expressly exclude application of the FAA, and the parties are litigating in federal court.  9 U.S.C. § 2; *Laborers Health & Welfare Tr. Fund for N. Cal. v. Laster,* No. C–92–1009 MHP, 1993 WL 165355, at *11 (N.D. Cal. Feb. 2, 1993) ("It is unquestionable that agriculture is an activity 'affecting commerce.'"); *Volt Info Sciences v. Bd. of Trustees*, 489 U.S. 468, 476 (1989) ("[T]his contract falls within the coverage of the FAA, since it involves interstate commerce . . . ."); *Minn. Nurses Ass'n v. Amended N. Mem'l Health Care*, No. CIV. 14-4529 DSD/BRT, 2015 WL 2373446, at *2 n.3 (D. Minn. May 18, 2015) ("Although MNA moved for vacatur under the Minnesota Uniform Arbitration Act, the court finds that this action is governed by federal law."), *aff'd sub nom. Minn. Nurses Ass'n v. N. Mem'l Health Care*, 822 F.3d 414 (8th Cir. 2016).

## B.     The FAA's Requirements for Confirmation are Easily Satisfied Here.

"Section 10 [of the FAA] contains the *exclusive* bases for vacating an arbitration award."  *Boxill*, 371 F. Supp. 3d at 582 (emphasis in original).  Under Section 10, an arbitration award may be vacated "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or

---

*Cap. Mgmt. Inc*., 575 N.W.2d 850, 854 (Minn. Ct. App. 1998) ("The grounds for vacating an arbitration award under the Federal Arbitration Act are similar to those under the Minnesota act."); *Card v. Stratton Oakmont, Inc*., 933 F. Supp. 806, 810 (D. Minn. 1996) (stating that "Section 9 of the FAA, as well as Minn. Stat. § 572.18, provides that a party to an arbitration proceeding may apply to the court for an order confirming the award" and citing Section 9 of the FAA and Minn. Stat. § 572.18 as requiring confirmation unless "the arbitration award has been corrected, vacated or modified").

either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

As a threshold matter, CAL has not sought vacatur for any reason—nor could it plausibly do so. *First*, nothing in the record indicates that the Interim Award, the Sanctions Order, or the Partial Final Award on Phase I were obtained by any form of corruption, fraud, or undue means. In fact, the parties agreed that the arbitration should proceed under the AAA's Commercial Arbitration Rules, and CAL engaged in formal discovery, submitted filings to the Emergency Arbitrator and the Panel, and participated in various proceedings including the Phase I merits hearing.

*Second*, there is similarly no evidence that any partiality or corruption exists on the part of any of the arbitrators on the Panel. The Panel consists of well-respected arbitrators who were appointed according to the terms of the MPA and AAA rules, including CAL's party-appointed arbitrator.

*Third*, there is no evidence of any misconduct by the Panel and resulting prejudice against CAL. To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *El Dorado Sch. Dist. #15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) (internal

citations omitted). That is, misconduct "must amount to [a] denial of fundamental fairness of [the] arbitration proceeding[.]" *Id.* (citing *Tempo Shain Corp. v. Bertek*, 120 F.3d 16, 20 (2d Cir. 1997)). Because courts give "even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds," vacation is warranted only where misconduct deprives a party "of a fair opportunity to present evidence and argument in support of his position." *Brown v. Brown-Thill*, 762 F.3d 814, 820 (8th Cir. 2014); *see also Manion v. Nagin*, No. 00-238 ADM/RLE, 2003 WL 21459680, at *3 (D. Minn. June 20, 2023) (finding no misconduct because the party "identified no request for postponement not granted, nor any evidence sought to be presented that was not received by the Arbitrator").

Here, there is no evidence that the arbitration procedures precluded a fair outcome. CAL received adequate notice and every opportunity to present evidence and arguments at each stage of the proceedings. In particular, the Panel decided to bifurcate the arbitration proceedings and consider the Phase I issues separately based on CAL's months-long non-compliance with the segregation and escrow orders from the Emergency Arbitrator and this Court. *See* Exhibit 2 (Arbitration Panel's Bifurcation Order). When CAL sought reconsideration of bifurcation, the Panel held the October preliminary hearing, at which CAL presented argument and evidence that included damning testimony from Mr. Cook. The Panel also denied CAL's request to stay the Phase I proceedings in a reasoned decision, finding that Agri-Access would be "seriously prejudiced by a delay in the hearing" given that CAL had "received [Agri-Access's] property and has steadfastly refused to return it." Exhibit 10 (December 26, 2024 Pre-Hearing Order).

Then again at the Phase I merits hearing, CAL "was given full opportunity to present" its defense and "to challenge [Agri-Access's] request for damages." Exhibit 1 (Partial Final Award on Phase I) at 8. Even though the Panel "was prepared to hear all evidence proffered" on CAL's defenses, CAL "did not avail itself of that hearing opportunity, electing instead to call no witnesses and limiting itself to the cross examination of [Agri-Access's] witnesses." *Id.* Further, on the day of the hearing, CAL opted not to cross-examine Agri-Access's sole witness. After the Panel afforded CAL these opportunities to present its case, an impartial decision resulted.

*Finally*, the Panel did not exceed its authority in issuing the Interim Award, the Sanctions Order, and the Partial Final Award on Phase I. Courts "will confirm the arbitrator's award even if [they] are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Osco Motors Co., LLC v. Quality Mark, Inc.*, No. CIV. 14-887 (MJD/JJK), 2014 WL 4163595, at *8 (D. Minn. Aug. 21, 2014) (quoting *McGrann v. First Albany Corp.*, 424 F.3d 743, 748 (8th Cir. 2005)). "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Balvin v. Rain & Hail, LLC*, 943 F.3d 1134, 1136 (8th Cir. 2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). As demonstrated by the Interim Award, the Sanctions Order, and the Partial Final Award on Phase I, the Panel considered substantial arguments, documentary evidence, and witness testimony from both parties when issuing the Arbitration Awards. The Panel also considered the law applicable to the parties'

18

dispute and applied it to the facts in evidence. As such, the Panel did not exceed its authority in issuing the Interim Award, the Sanctions Order, and the Partial Final Award on Phase I.

Further, CAL has never alleged, nor is there any evidence of, any of the limited grounds under Section 11 of the FAA for a court to modify or correct an award. In particular, there was no "evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award"; the Panel did not issue an "award[] upon a matter not submitted to them"; and neither the Interim Award, the Sanctions Order, nor the Partial Final Award on Phase I "is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Consequently, there are also no grounds for the Court to modify or correct the Arbitration Awards.

The Panel's decisions as set forth in the Interim Award, the Sanctions Order, and the Partial Final Award on Phase I are precisely the arbitration proceedings that this Court had contemplated to allow it to enter judgment to compel CAL's compliance and bring an end to CAL's "cat and mouse" tactics in this matter. Further, CAL has made no petition to vacate, modify, or correct the Arbitration Awards, requiring their confirmation upon Agri-Access's application. 9 U.S.C. § 9; *Domino Grp., Inc. v. Charlie Parker Mem'l Found.*, 985 F.2d 417, 420 (8th Cir. 1993). Even if CAL had made a petition to vacate, modify, or correct the Arbitration Awards, there is no basis for doing so, also requiring their confirmation under applicable law. 9 U.S.C. § 9; *Boxill*, 371 F. Supp. 3d at 582; *Prime Therapeutics LLC*, 555 F. Supp. 2d at 996. Therefore, the Court should issue an

order confirming the Interim Award, the Sanctions Order, and the Partial Final Award on Phase I and direct that judgment be entered thereon.

## II. CAL'S CHALLENGES TO JURISDICTION AND FINALITY ARE GROUNDLESS.

Over the past nine months, CAL has raised various specious arguments in its campaign to prevent or delay Agri-Access's efforts to secure the Payoff Proceeds. Two such arguments relevant to this motion are that (i) this Court lacks jurisdiction and venue, and (ii) the Panel cannot issue a confirmable award without addressing all claims submitted to arbitration, including all claims and counterclaims the Panel reserved for Phase II. Both arguments are groundless and neither provides any basis for the Court to delay confirmation of the Arbitration Awards.

### A.    This Court Has Jurisdiction and Venue is Proper.

The FAA provides that a party to an arbitration may apply to a court specified in the arbitration agreement for an order confirming an arbitration award, and that "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Here, the Panel held the Phase I merits hearing in Minneapolis, and further determined that "pursuant to the MPA, the locale of the arbitration shall be Minnesota" (Exhibit 12 (Scheduling Order No. 1) at 1), which is encompassed by the District of Minnesota.

Further, the MPA states that "[t]he prevailing party in an arbitration under this section shall have the right to enter, without contest by the other party, an order reflecting the arbitrator's decision in *any* court of competent jurisdiction." ECF No. 3 (MPA) at

§ 7(c) (emphasis added).  This provision, which applies specifically to actions to confirm arbitral awards, governs this motion, rather than the MPA's more general forum selection clause.  *See, e.g.*, *Jerry's Enters. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 890 (8th Cir. 2017) ("[A] basic principle of Minnesota contract law instructs courts to make specific contract language controlling over general language.").  Because the MPA does not require a specific court for actions to confirm an arbitration award, Agri-Access has properly filed this motion in the district where the arbitration is venued.  *See Hughes Socol Pier Resnick & Dym, Ltd. v. G3 Analytics, LLC*, 336 F. Supp. 3d 924, 930 (N.D. Ill. 2018) (finding that because the parties' agreement provided that a "decision of the arbitrator may be enforced in any court of competent jurisdiction," the agreement "did not specify a court" and "[p]etitioners properly filed [the motion to enforce] in the district where the Award was made").

This Court also has diversity jurisdiction under 28 U.S.C. § 1332.  The parties to this action are diverse: Agri-Access is a federally-chartered agricultural credit association headquartered in Sun Prairie, Wisconsin and is a citizen of Wisconsin under the Farm Credit Act.  12 U.S.C. § 2258 ("Each institution of the [Farm Credit] System shall for the purposes of jurisdiction be deemed to be a citizen of the State, commonwealth, or District of Columbia in which its principal office is located."); *see also Engelmeyer v. Prod. Credit Ass'n of Midlands*, 652 F. Supp. 1235, 1237 (D.S.D. 1987) (applying § 2258 and holding the federally chartered corporation "is therefore a citizen, for jurisdictional purposes, of the state in which its principal office is located").  CAL is a citizen of California.  ECF Nos. 3 (MPA); 30 (Cook Decl.).  The amount in controversy, including the objects of the

litigation, exceeds $75,000 exclusive of interest and costs. Specifically, CAL has unlawfully retained $57,146,398.93 of Agri-Access's property.

Further, this Court has personal jurisdiction based on CAL's contacts with Minnesota, including its agreement that the MPA would be governed by Minnesota law and its presence at the Phase I merits hearing in Minneapolis. *See* ECF Nos. 3 (MPA); 2-1 (0800 Loan Certificate of Participation); 2-2 (3400 Loan Certificate of Participation), 2-5 (Wire Confirm. & Correspondence); 2-12 (First Power of Attorney); 2-13 (Second Power of Attorney); 9 (Steele Decl.); 30 (Cook Decl.); Exhibit 1 (Partial Final Award on Phase 1); *Cambria Co. LLC v. Disney Worldwide Servs., Inc.*, 651 F. Supp. 3d 1073, 1078-81 (D. Minn. 2023) ("The nature and quality of contacts between [defendant] and the forum state favor personal jurisdiction because both the formation and the performance of the Agreement provided [defendant] with fair warning of being sued in Minnesota," and "it entered a multi-year contractual relationship that envisioned the purchase of millions of dollars' worth of products involving substantial coordination between the parties."); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726-27 (8th Cir. 2001) (finding that "appellants consented to personal jurisdiction in Minnesota" where they were parties to an agreement providing that "[a]ll arbitration hearings will be held in Minneapolis, Minnesota").

Finally, venue is proper even aside from the FAA's more specific venue rules because "a substantial part of the events or omissions giving rise to the claim occurred" in Minnesota, including CAL's coordination with Agri-Access employees located in Minnesota over nearly a decade to sell participation interests under the MPA and its

communications with Agri-Access employees seeking to recover the Payoff Proceeds. *See* ECF Nos. 2-5 (Wire Confirm. & Correspondence); 9 (Steele Decl.); 30 (Cook Decl.); 28 U.S.C. 1391(b)(2).

**B.    The Panel's Partial Final Award on Phase I is Final for Purposes of Judicial Confirmation.**

Courts around the country have repeatedly held that a final, confirmable arbitration award may be entered on less than all pending claims or issues before the arbitrators. *See, e.g., Manion v. Nagin*, 392 F.3d 294, 299-301 (8th Cir. 2004) (holding that the district court properly reviewed an interim award that "finally determined the substantive issues" on liability, even though the arbitrator postponed resolving the question of damages); *Bridgeview Aerosol, LLC v. Black Flag Brands, LLC*, No. CV 09-1817 (JNE/SRN), 2009 WL 10678555, at *3 (D. Minn. Sept. 18, 2009) ("'an interim award that finally and definitively disposes of a separate independent claim may be confirmed notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration'" (*quoting Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984)).

*HDI Glob. SE v. Phillips 66 Co.*, No. 22-CV-807 (VEC), 2022 WL 3700153, at *3 (S.D.N.Y. Aug. 26, 2022), is instructive. There, the arbitrators determined in a partial award that the respondent insurer was entitled to be repaid $725,000 in defense costs that it had prematurely paid in error to its insured. The award was based on the arbitrator's interpretation of a "Loss Payable" condition in the insurance policy. The award did not resolve all the issues in the arbitration, however, because the arbitrators had not ruled on

the insured's right to payment under the policy for other claims, which were reserved for a subsequent phase of the arbitration. Despite the pendency of the unresolved claims, the court held that the $725,000 repayment order was a final award that could be judicially confirmed. The court concluded that "[t]he claim for repayment was . . . a 'separate and independent claim'" subject to confirmation because it finally resolved that the payment had been made in error and was thus a "severable issue" rather than merely a determination that might bear on future claims. *Id.* at *3 (*quoting Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986)). And this was true even though the arbitrator's interpretation of the "Loss Payable" condition would set the "framework" for resolving the remaining claims in the case. *Id.* at *4.

The same is true here. Agri-Access's claim for recovery of the Payoff Proceeds is "separate and independent" from its claims regarding loans to other borrowers and from CAL's counterclaims. The separate and independent nature of the issue is confirmed by the fact that the Panel found it appropriate to bifurcate the question of Agri-Access's right to the Payoff Proceeds from the other claims in the arbitration, as expressly authorized by the governing rules of the AAA. *See* Exhibit 2 (Arbitration Panel's Bifurcation Order); AAA Commercial Arbitration Rules and Mediation Procedures at R-33(b) ("The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case."). And it was further confirmed by the Panel's Partial Final Award on Phase I. *See* Exhibit 1 (Partial Final Award on Phase I) at 4 ("This Partial Final Award

is in full settlement of all claims and defenses submitted to Phase I of this arbitration.  All claims and defenses submitted to the Phase I hearing, but not expressly mentioned in this Award, are DENIED."), 13 ("By use of bifurcation, the Panel was able to provide the narrow evidentiary hearing concerning the Payoff Proceeds while reserving jurisdiction over the independent additional claims and the counterclaims").  As the bifurcation order and Partial Final Award on Phase I recognize, Agri-Access's right to the Payoff Proceeds does not depend on the resolution of its other claims or CAL's counterclaims.  It is a stand-alone issue that is not affected by whether Agri-Access is entitled to recover additional amounts on other loans.  Nor is Agri-Access's right to the Payoff Proceeds affected by whether CAL can prove that it was injured in connection with any of its separate and independent counterclaims.  This separateness is demonstrated by, among other things, the fact that CAL has filed two lawsuits in California Superior Court in Fresno that assert essentially the same claims as CAL's counterclaims in this action, but those lawsuits do not mention anything about the ████ Loans or the more than $58 million in Payoff Proceeds.[6]

As *HDI Global* illustrates, a partial final award is proper even though the Panel's resolution of certain issues in connection with the ████ Loans—including the resolution of CAL's claims of illegality—may also be relevant to resolving the remaining claims.  It is enough that Agri-Access's right to the Payoff Proceeds has been finally resolved as a

---

[6] *See* Superior Court of California, County of Fresno Case Nos. 24CECG02156 and 24CECG03803.

severable issue.  2022 WL 3700153, at *3; *see also Loc. Union No. 1 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the U.S. & Canada v. JPP Plumbing, LLC*, No. 12-CV-2034 (DLI)(RLM), 2014 WL 1311934, at *4 (E.D.N.Y. Mar. 27, 2014) ("The Construction Water Award was rendered in an arbitration proceeding that consolidated several grievances. . . . The Executive Committee resolved the construction water allegations, but left open for further proceedings the allegations regarding fabrication of pipe and the operation of valves and pumps. . . . Based on (i) the language in the introductory paragraphs; (ii) the structure of the decision; (iii) the severability of the issues; and (iv) the complete resolution of the construction water issue, the Court finds that the Construction Water Award was final with regards to the 41G Contract construction water issue as of the date of the decision, January 5, 2012."); *Bridgeview Aerosol*, 2009 WL 10678555, at *3-5 (confirming a partial award that ordered immediate payment of amounts undisputedly owed for certain products, even though claims remained as to other disputed products).

Accordingly, the Partial Final Award on Phase I is final for purposes of confirmation by this Court.

## III.    THE COURT SHOULD PERMIT IMMEDIATE REGISTRATION OF ITS JUDGMENT.

Under 28 U.S.C. § 1963, a judgment creditor may register a judgment in another district by filing a certified copy of the judgment in that district.  Section 1963 further provides that a judgment "may be registered . . . when the judgment has become final by appeal or expiration of the time for appeal *or when ordered by the court that entered the*

*judgment for good cause shown*."  28 U.S.C. § 1963 (emphasis added).  Good cause exists

where the judgment creditor does not hold sufficient assets in the rendering district to

satisfy the judgment or when it holds assets in another federal district.  *3M Co. v. Mohan*,

Civ. No. 09-1413 ADM/FLN, 2011 WL 2441213, at *1-2 (D. Minn. June 17, 2011); *see*

*also Glob. Traffic Techs., LLC v. Morgan*, Civ. No. 10-4110 ADM/JJG, 2014 WL

5089850, at *2 (D. Minn. Oct. 9, 2024); *Assoc. Bus. Tel. Sys. Corp. v. Greater Cap. Corp.*,

128 F.R.D. 63, 66-68 (D.N.J. 1989).

Here, good cause exists because CAL has substantial property in California and no

assets in Minnesota for satisfaction of the judgment.  *See* Exhibit 13 (LexisNexis Due

Diligence Report).  Moreover, CAL has not offered any assurances that it will pay the sums

due under the Arbitration Awards or comply with a court-ordered bond.  *See Spray Drift*

*Task Force v. Burlington Bio-Medical Corp.*, 429 F. Supp. 2d 49, 51 (D.D.C. 2006)

(finding good cause for immediate registration because defendant had "offered no

assurances that it [would] pay the Award or comply with a court-ordered bond").  To the

contrary, CAL has repeatedly demonstrated its unwillingness to turn over the Payoff

Proceeds in defiance of binding orders from this Court, the Emergency Arbitrator, and the

Panel.

Further, this Court can authorize immediate registration at the same time that it

confirms the Arbitration Awards.  The plain language of § 1963 imposes no temporal limit

on when a court may find "good cause" for authorizing registration in another district.  *See*

28 U.S.C. § 1963; *Spray Drift*, 429 F. Supp. 2d at 51 ("[t]he statute's plain meaning is that

a judgment may be registered when it has become final or, at any other time, for good cause

shown"). And courts have authorized a prevailing party to register a judgment confirming an arbitration award immediately, without regard to any post-judgment motions or whether an appeal has been filed. *See Spray Drift*, 429 F. Supp. 2d at 51; *AT&T Corp. v. Public Ser. Enter.*, No. 98CV6133LAP, 1999 WL 672543, at *6 (S.D.N.Y. Aug. 26, 1999). Where, as here, there is strong reason to believe that CAL will attempt to avoid enforcement of the judgment, this Court should permit Agri-Access to register the judgment confirming the Arbitration Awards in California immediately. *See Spray Drift*, 429 F. Supp. 2d at 51 (authorizing immediate registration to prevent defendant "from utilizing the delay in execution of the judgment to remove property from another district, thus frustrating potential enforcement").

## CONCLUSION

For all of the reasons above, Agri-Access respectfully requests that this Court:

1.  Issue an order pursuant to 9 U.S.C. § 9 confirming the Interim Award (including the orders and awards of the Emergency Arbitrator adopted therein), the Sanctions Order, and the Partial Final Award on Phase I.

2.  Enter judgment thereon pursuant to 9 U.S.C. § 13.

3.  Grant leave to register the Court's judgment in other United States District Courts for purposes of execution pursuant to 28 U.S.C. § 1963.

4.  Award Agri-Access such other and further relief as this Court deems just and proper.

Dated: February 12, 2025

Respectfully submitted,

**JONES DAY**

*/s/ Joseph Boylan*_____
Christopher J. Lovrien*
Joseph J. Boylan*
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Phone: 213-243-2175
Email: cjlovrien@jonesday.com
        jboylan@jonesday.com

W. Anders Folk (MN #0311388)
90 South Seventh Street
Suite 4950
Minneapolis, MN 55402
Phone: 612-217-8800
Email:  afolk@jonesday.com

*Attorneys for Plaintiffs Compeer*
*Financial, ACA, Compeer Financial, PCA,*
*and Compeer Financial, FLCA*

*Admitted pro hac vice