UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| COMPEER FINANCIAL, ACA; COMPEER FINANCIAL, PCA; and COMPEER FINANCIAL, FLCA, | Court File No.  24-CV-1896 (JWB/ECW) |
| *Plaintiffs,* | **[PROPOSED] ORDER APPOINTING RECEIVER** |
| v. | |
| CORPORATE AMERICA LENDING, INC., | |
| *Defendant.* | |

The above-captioned action came before the Honorable Jerry W. Blackwell upon the Motion to Confirm Arbitration Awards by Plaintiffs Compeer Financial, ACA, Compeer Financial, PCA, and Compeer Financial, FLCA ("Confirmation Motion") and this Court's Order for Proposed Receivership dated March 11, 2025 (ECF No. 97); the Court having reviewed the Confirmation Motion; Plaintiffs' submission in response to the Court's Order for Proposed Receivership; Defendant CAL's opposition thereto; the record of this case, the arguments of counsel made, and the evidence proffered or adduced; and after due deliberation the Court having determined that appointment of a receiver is appropriate; and good and sufficient cause having been shown.

THE COURT HEREBY FINDS AND CONCLUDES THAT:

A.  <u>Jurisdiction and Venue</u>.  Pursuant to 9 U.S.C. § 9, and for the reasons set forth in Plaintiffs' Confirmation Motion, because the Arbitration Awards were made in this District, venue is proper and this Court has jurisdiction to confirm the Arbitration Awards and appoint a receiver to prevent further dissipation of assets by Defendant CAL until those Awards are satisfied.  9 U.S.C. § 9; 28 U.S.C. § 1391; ECF No. 79 at 20–23; *see also* ECF No. 98 at 3–9.

B.  <u>Standard for Appointment of Receiver</u>.  A court may appoint a receiver to protect a claimant's interest in property.  *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir. 1993) ("A receiver may be appointed to protect a judgment creditor's interest in . . . property when the debtor has shown an intention to frustrate attempts to collect the judgment.") (internal quotation marks omitted); *see also* 12C Charles Alan Wright & Arthuer R. Miller, Federal Practice & Procedure § 2983 (3d ed. 2024).  Although there is "no precise formula for determining when a receiver may be appointed," factors typically warranting appointment are: (1) a valid claim by the party seeking the appointment; (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (3) imminent danger that property will be concealed, lost, or diminished in value; (4) inadequacy of legal remedies; (5) lack of a less drastic equitable remedy; and (6) likelihood that appointing the receiver will do more good than harm.  *Aviation Supply*, 999 F.2d at 316–17.

C.  <u>Validity of Plaintiffs' Claims</u>.  Agri-Access has a valid claim to the Payoff Proceeds and a valid claim against CAL.  In its Partial Final Award, the Panel found: the Payoff Proceeds are Agri-Access's property; CAL has no right to retain the Payoff

2

Proceeds; CAL breached its contract with Agri-Access when it retained those Proceeds; CAL's defenses to that breach are meritless; and Agri-Access is entitled to recover the entire unpaid amount of those Proceeds, plus interest, attorneys' fees, and costs. *See generally* ECF No. 80-1 (Partial Final Award). Based on these rulings, the Panel ordered that CAL pay Agri-Access the sum of $57,146,398.93, together with interest ($4,900,500.15 through March 17, 2025), attorneys' fees and costs awarded by the Emergency Arbitrator ($237,953.50), attorneys' fees and costs awarded by the Panel through Phase I ($3,593,601), and the AAA's administrative fees ($143,773.75) for a total of $66,022,227.33[1] within 30 days of the issuance of the Award—in other words, no later than March 6, 2025.

    D.    <u>Probability that Fraudulent Conduct Has Occurred and Will Occur</u>. The evidence has established that CAL has engaged in fraudulent conduct and it is probable such conduct will continue.

        1.    In its award, the Panel found that "[t]he evidence established that [CAL] acted in bad faith in thwarting Claimant's contractual right to receive the Payoff Proceeds." ECF No. 80-1 at 7.

---

[1] The $57,146,398.93 figure, which is less than the full $58,187,976.50 of the Payoff Proceeds, accounts for Agri-Access's setoff of certain amounts that Agri-Access otherwise received or withheld from CAL. Additionally, the Panel awarded interest at the Minnesota statutory rate of 10% on the $57,146,398.93 from and after May 9, 2024, and continuing on unpaid amounts ($15,656.55 per day). ECF No. 80-1 (Partial Final Award); Minn. Stat. § 549.09(b), (c)(2). Post-judgment interest also accrues at the same rate of 10% until the judgment is paid. Minn. Stat. § 549.09(a), (c)(2).

2.      On May 29, 2024, CAL's counsel represented to this Court that "[t]he money, as I understand it, remains at Corporate America Lending, Inc. . . ." and "there should not be a concern about the availability of funds." ECF No. 37 (5/29 Hearing Tr.) at 6. CAL's bank records subsequently revealed that Mr. Cook had transferred tens of millions of dollars into the hands of Mr. Cook's close friends and business partners: by May 6, 2024 CAL had transferred $32,992,792 to those individuals; an additional $3,387,000 was transferred on May 22—a week before the May 29 hearing. Exhibit 3 (April 30, 2024 CAL Bank Statement); Exhibit 4 (May 31, 2024 CAL Bank Statement); Exhibit 5 (May 22, 2024 CAL Bank Statement).

3.      On October 22, Mr. Cook was asked about the whereabouts of the Payoff Proceeds during a hearing before the arbitral Panel. Mr. Cook testified under oath that, in addition to the $23 million being held in a trust account by his counsel, the remaining $35 million had been transferred to and was still being held by three individuals: Dennis Morgan, Michael Graham, and Kristi Iness. ECF No. 80-4 at 100:23-25; 101:12; 104:4-105:13; 106:24-107:1: 194:3-5. At the time, Mr. Cook stated that those three individuals were holding the funds per his instructions, but did not have any claims to the funds, which had been transferred to them without consideration. *Id.* at 103:17-18; 103:25-104:3; 104:12-14; 105:4-13; 106:7-15; 107:2-4. After the Panel ordered CAL to reacquire and preserve the Payoff Proceeds, *see* ECF No. 80-5 (October 28 Interim Award), Mr. Cook submitted a sworn declaration on November 15 detailing his unsuccessful efforts to reacquire

4

the $35 million from Morgan, Graham, and Iness. ECF No. 80-6 (November 15 Declaration). In that declaration, Mr. Cook declared under penalty of perjury that he had requested each of those individuals return the funds, and that all had refused, claiming that the transfers were actually made in repayment of debts owed by CAL. *Id.* at 2–3. Subsequent evidence revealed that nearly the entirety of the $35 million was returned to CAL by October 1, 2024—well before Mr. Cook's false statements on October 22. *See* Exhibit 6 (March 16, 2025 Declaration of Dennis Morgan) (declaring all funds received from CAL were returned by October 1, 2024); Exhibit 7 (Stipulation between Plaintiffs and Graham Defendants) (describing history of transfers and return of nearly all funds prior by September 18, 2024); Exhibit 8 (January 22, 2025 Counsel Email Documenting Meet and Confer). Because the funds in question had already been returned—and thus were not still being held by Morgan, Graham, and Iness—Mr. Cook's November 15 declaration was also false.

    4.    On October 28, 2024, the arbitral Panel issued an Interim Order that recounted CAL's failure to comply with orders directing it to preserve the Payoff Proceeds pending the outcome of the arbitration proceedings. *See* ECF No. 80-5 at 3 (listing orders and awards and finding that "[a]lthough CAL had actual notice of these Awards and Order, and Mr. Cook testified CAL had the financial capability to comply, it completely failed to comply within the time limits specified in those Awards and Order" and "CAL's late attempt to show compliance . . . did not materially comply with the prior Awards and/or Order."). And when CAL elected not to take advantage of its "final chance to comply," *id.* at 3, the Panel noted its

5

concern "that CAL and its owner and CEO ha[d] misled the Panel relative to the disposition of the Payoff Proceeds . . . ." ECF No. 80-7 (November 26 Sanctions Order).

E.  Imminent Danger.  The evidence demonstrates that CAL transferred the Payoff Proceeds after receipt and may further dissipate assets at any time.  ECF No. 80-4 at 100:23-25; 101:12; 103:17-18; 103:25-104:3; 104:4-105:13; 106:7-107:4; 194:3-5.

1.  At the October 22 hearing before the Panel, Mr. Cook testified under oath that he transferred approximately $35 million of the Payoff Proceeds to Dennis Morgan, Michael Graham, and Kristi Iness, and that he transferred those funds to them without consideration.  ECF No. 80-4 at 100:23-25; 101:12; 103:17-18; 103:25-104:3; 104:4-105:13; 106:7-107:4: 194:3-5.

2.  Mr. Cook's testimony on October 22 further indicates that several of his transfers of the Payoff Proceeds were made without formal written documentation, ECF No. 80-4 at 103:25-104:14, and the Declaration of Dennis Morgan indicates that at least one investment made with CAL "does not have any formal paperwork (e.g., a note or agreement) documenting th[at] investment," Exhibit 6 at ¶ 8(f).

3.  Although CAL has been repeatedly ordered to provide detailed and extensive records relating to the Payoff Proceeds and what it did with them, CAL has steadfastly refused to comply.[2]

---

[2] *See* ECF No. 32 (May 29 Order) (requiring CAL to "submit a detailed report . . . outlining the steps taken to preserve the Payoff Proceeds."); ECF No. 38-1 (Interim Award)

6

4. This Court and the Panel have ordered CAL to place funds in escrow or actually turn over funds to Agri-Access. ECF No. 80-1 at 3 (ordering turnover of Payoff Proceeds to Agri-Access); ECF No. 32 at 2 (ordering CAL to place Payoff Proceeds into escrow account). CAL has refused to do so, further indicating that assets in CAL's possession may be dissipated at any time.

5. CAL has stated that only Mr. Cook has access and control over CAL's bank accounts. ECF No. 2-6 (Emails 5/2-5/3) at 1; ECF No. 38-5 (CAL June 13, 2024 Report) at 2. Given Mr. Cook's false statements, this fact creates significant risk of danger to recovery on Plaintiffs' claim.

F. <u>Inadequacy of Legal Remedies</u>. Where a claimant will be unable to recover assets that have been transferred or dissipated, legal remedies are inadequate. *See Pension Ben. Guar. Corp. v. Tempcon, Inc.*, No. 1:14-CV-782, 2015 WL 1249716, at *6 (W.D. Mich. Mar. 18, 2015) ("[L]egal remedies are inadequate because the [claimant] cannot recover assets that have been transferred . . . ."); *Cadence Bank, N.A. v. Manausa Holdings,*

---

(requiring CAL to turn over to the Emergency Arbitrator monthly statements and balance information for accounts holding the Payoff Proceeds); ECF No. 38-2 (CAL June 3 Report); ECF No. 38-3 (Supplement to Interim Award) (requiring CAL to supplement its report with the required information); ECF No. 38-4 (CAL June 6 Report); ECF No. 38-5 (Second Supplemental Order) (reiterating prior orders and also ordering CAL to produce all "investment contracts or agreements, communications with third parties"); ECF No. 38-6 (CAL June 13 Report); ECF No. 41 (Emergency Arbitrator Recommendation) (recommending sanctions because CAL had "resolutely failed and refused to comply with most parts of the Court's Order and the Emergency Arbitrator's orders"); ECF No. 80-5 (Interim Award of Merits Panel) (noting CAL's failure to provide information and giving it "one final chance to comply"); Exhibit 11 (Panel's 12/26 Pre-Hearing Order) ("Because Respondent's Response to [Agri-Access's third submission on discovery issues] does not contest the factual allegations, the Panel will take those allegations to be true, showing repeated violations of discovery requirements and orders for discovery.").

7

*LLC*, No. 4:12cv38-WS/WCS, 2012 WL 1252494, at *3 (N.D. Fla. Mar. 30, 2012) (appointing receiver after finding that claimant's "legal remedies are profoundly inadequate" because defendant would be unable to "adequately compensate" claimant because it did "not have the funds"). CAL has shown that it has transferred assets in an effort to frustrate Plaintiffs' recovery. Exhibit 1 (10/22/24 Transcript) at 78:8-81:14. Testimony during the October arbitration hearing further demonstrates that at that time CAL did not have sufficient liquid assets to satisfy a judgment in favor of Plaintiffs for the full amount of the Payoff Proceeds. *Id.* at 114:9-115:14. CAL has only re-acquired $23 million of the Payoff Proceeds, but has still refused to turn those funds over to Plaintiffs as required by the Panel.

G. <u>Lack of Less Drastic Equitable Remedy</u>. There is no less drastic remedy available at this time. This Court has offered less drastic remedies to CAL. Numerous orders have been issued by this Court and the Panel requiring CAL to reacquire, segregate, preserve, and now return the Payoff Proceeds, and to provide information about what happened to those funds. *See, e.g.*, ECF Nos. 32, 38-1; 38-3; 38-5; 80-1, 80-5. CAL has refused to comply with all of them.

H. <u>Likelihood That Receiver Will Do More Good Than Harm</u>. Given CAL's and its counsel's refusal to comply with the orders and awards obtained against CAL, Agri-Access may not be made whole. By contrast, the harm CAL will face from the appointment of a receiver is negligible—and indeed is "avoidable through obedience." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). CAL, its officers, and its counsel chose to engage in a course of conduct that demonstrates that they will not

8

voluntarily comply with any order or award issued against them. This choice does not demonstrate harm from the appointment of a receiver. Moreover, a receiver will ensure that assets are not transferred for no consideration and without documentation, which benefits all creditors of CAL.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. The factual and legal basis for appointment of a receiver over CAL exist.

## APPOINTMENT OF RECEIVER

2. **[RECEIVER NAME]** is appointed as the receiver ("Receiver") over the assets of Defendant Corporate America Lending, and the authority granted to Receiver is self-executing.

3. "Receivership Property" as used herein shall mean all personal property of Defendant Corporate America Lending, wherever located, including, but not limited to all Goods, Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Deposit Accounts, Letter of Credit Rights and General Intangibles, all as defined in Minnesota Uniform Commercial Code, Minn. Stat. § 336.9-101, *et seq.*

4. "Payoff Proceeds" as used herein shall mean the specific, traceable funds that Defendant obtained in payment of the full outstanding balance of the Famoso loans, totaling $58,187,975.50, which constitute the property of Plaintiffs and that have been wrongfully retained by Defendant, as determined by arbitration merits Panel and confirmed by this Court.

5. Defendant Corporate America Lending and its current or former agents, representatives and/or any entities in which Corporate America Lending holds an interest,

and all employees, attorneys, agents, officers, directors, members, partners, and/or representatives thereof, including without limitation Ron Cook and Alex Aretakis, are directed to cooperate with the Receiver in the Receiver's performance of his duties and responsibilities by making themselves reasonably available to assist the Receiver as requested, take all necessary steps to comply with this Order and other orders of the Court, and with all applicable law and/or rules, and are enjoined from interfering with, secreting, removing, damaging or disabling the use, management, possession and control of the Receivership Property. In addition, they shall make immediately available for turnover to the Receiver, if requested, all of their records concerning Defendant Corporate America Lending and the Receivership Property so that the Receiver may adequately account for any funds constituting Payoff Proceeds.

6. Upon the request of the Receiver, the United States Marshal Service or any state, county, or local policing authority, as the case may be, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take and secure possession, custody and control of, or identify the location of, any assets, records or other materials that are Receivership Property under this Order.

7. Defendant Corporate America Lending and any third parties receiving notice of this Order shall surrender to the Receiver all Receivership Property, including any money held in accounts maintained by Defendant Corporate America Lending at any financial institution.

8. All banks, commodity firms, brokerage firms, financial institutions, and other persons or entities, which have possession, custody, or control of any Receivership

Property in the name of Defendant Corporate America Lending that receive actual notice of this Order by personal service, electronic mail or otherwise shall not:

    a. Liquidate, sell, convey or otherwise transfer any Receivership Property in the name of Defendant Corporate America Lending except upon instructions from the Receiver;

    b. Exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any Receivership Property to the Receiver's control without the permission of this Court;

Further, all such institutions shall:

    c. Within five (5) business days of receipt of notice, serve on the Receiver a certified statement setting forth, with respect to each such Receivership Property, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and

    d. Cooperate expeditiously in providing information and transferring Receivership Property to the Receiver or at the direction of the Receiver.

## AUTHORITY OF RECEIVER

9.    Immediately upon entry of this Order, and continuing until expiration or termination of the receivership, the Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and shareholders under applicable state and federal law, by the governing charters, by-laws, articles, or entity operating agreements in addition to all powers and authority of a Receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959, and 1692,

and Federal Rule of Civil Procedure 66. The Receiver is authorized, in the exercise of his discretion and subject to the control of this Court, to do any and all acts necessary for the proper and lawful conduct of the receivership under all powers conferred upon a receiver under those provisions. Without limiting the generality of the foregoing, the Receiver may, in his discretion:

a. Take any and all actions Receiver deems reasonable and appropriate to prevent waste of the Receivership Property and to preserve, secure, manage, maintain, and safeguard the Receivership Property;

b. Access the books and records of Defendant with respect to operation of the Defendant and other property subject to this Order but shall share access to those records with Defendant as needed;

c. Take and have complete and exclusive control and possession of Defendant's assets, including deposit accounts, commodity accounts, brokerage accounts, accounts receivable, or any other similar accounts comprising Receivership Property held at any financial or other institution, and this Order shall constitute direction to any such institution(s) to grant the Receiver full and complete access to all accounts;

d. Investigate Defendant's financial records and account information to identify, locate, and segregate the Payoff Proceeds from Defendant's other assets;

e. Allow the Plaintiffs and their counsel access to the Receivership Property at reasonable times to inspect the Receivership Property and all books and records related thereto;

f. Comply with the document requests and orders of the Court and Panel to produce documents to Plaintiffs, including but not limited to delivering complete unreacted bank statements;

g. Deliver all amounts awarded by this Court and the Panel, including the Payoff Proceeds, once segregated from Defendant's other assets, to Plaintiffs as required by the arbitration merits Panel and this Court;

h. Have authority to employ and pay such competent professionals to represent or assist the Receiver in carrying out the Receiver's duties, including, attorneys, accountants, appraisers, auctioneers, brokers, consultants, licensed salespersons, property managers, attorneys, investment bankers, and accountants and other professionals that do not hold or represent an interest adverse to the receivership. Any professional to be retained shall provide the Receiver with a disclosure of any potential conflicts of interest, and the professional or the Receiver shall file with the Court a notice of the retention and of the proposed compensation. Any party in interest may bring a motion for disapproval of any retention within 14 days after the filing of the notice of retention. The Receiver and any professional retained by the Receiver shall be paid by the Receiver from the Receivership Property in the same

        manner as other expenses of administration and without separate orders, but subject to the procedures, safeguards, and reporting that the Court may order;

    i. Communicate with, and/or serve this Order upon any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Property. All government offices which maintain public files of security interests in personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver. Any person who, or any entity that, receives a copy of this Order by hand delivery, mail, email, or through any other means, shall have notice of this Order and be bound by its terms; and

    j. Issue subpoenas from any state or Federal court for the purposes of carrying out the rights and duties set forth herein.

## MISCELLANEOUS PROVISIONS

10. **Reports of Receiver**. Prior to discharge, the Receiver shall provide regular reports to the Court, the Parties to this action, and other relevant stakeholders, regarding the findings of its investigation, the performance of its rights and duties as set forth in this Order, and the progress of the Receivership. The first such report shall be provided within 60 days of the date of this Order.

11. **Privilege**. The Receiver shall have access to all attorney client privileged information and communications and all attorney work product that belongs to Defendant CAL, and the Receiver shall have the authority to exercise the rights and powers of

Defendant, its officers, directors, managers and shareholders with respect thereto to the extent necessary to perform its rights and duties in accordance with this Order.

12. **Fees and Expenses**. Without prior Court approval, the Receiver shall be compensated at the rate of **[$XXX.XX]** per hour, which is the standard hourly rate for the Receiver. In addition, the Receiver shall be reimbursed for reasonable business and travel expenses associated with the receivership. Any objections to the Receiver's fees must be filed with the Court and served on the parties within fourteen (14) days after receipt of the Receiver's statement, at which point the Court will schedule a hearing on the objection. If no objections are served and filed within the fourteen (14) day deadline, the fees and expenses of the Receiver shall be deemed approved by the Court.

13. **Discharge**. The Receiver shall serve continuously until the entry of an order by this Court terminating the receivership or appointing a substitute receiver. This Court will receive for approval an accounting of cash receipts and disbursements by the Receiver during his administration.

14. **Qualifications and Bond**. **[Receiver Name]** is qualified to serve as a Receiver and an officer of the Court. The Receiver shall post a bond or provide a letter of credit in sufficient amounts as the Court may determine to be reasonably necessary upon hearing on Plaintiffs' motion. The filing of the bond or letter of credit in a form acceptable to the Court, provided it is done within fourteen (14) business days of this Order, shall not delay the appointment of the Receiver, and the Receiver shall take control of the Receivership Property immediately. The Receiver shall be reimbursed for the cost of the bond from the proceeds of the Receivership Property.

Dated: _____
                                    Hon. Jerry W. Blackwell
                                    United States District Judge