## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| | Civil File No.: 24-1896 (JWB/ECW) |
| Compeer Financial, ACA; Compeer Financial, PCA; and Compeer Financial FLCA, | |
| Plaintiffs, | |
| vs. | **BARRY W. LEE AND C. RUSSELL GEORGESON'S MEMORANDUM IN RESPONSE TO MARCH 27, 2025, ORDER TO SHOW CAUSE** |
| Corporate America Lending, Inc., | |
| Defendant. | |

Barry W. Lee and C. Russell Georgeson, as counsel to Defendant Corporate America Lending, Inc. ("CAL"), submit this Memorandum and associated Declarations of Barry W. Lee ("Lee Decl.") and R. Russell Georgeson ("Georgeson Decl.") in response to the Court's March 27, 2025, Order to Show Cause.

## I. INTRODUCTION.

On March 27, 2025, this Court issued an Order to Show Cause Re: Misrepresentations Regarding Availability of Funds ("OSC"). In its OSC, the Court, *sua sponte*, ordered counsel for CAL to show cause why counsel should not be sanctioned under:

1. Federal Rule of Civil Procedure 11(c), for filing or advocating factual contentions lacking evidentiary support or that were misleading;

2. 28 U.S.C. § 1927, for unnecessarily multiplying these proceedings; and/or

3. This Court's inherent authority to sanction litigation conduct that misleads the tribunal or wastes judicial resources.

Messers. Lee and Georgeson take very seriously the Court's concerns and appreciate the opportunity to address them. As discussed below, the conduct raised by the Court in its OSC should not result in sanctions under the applicable legal standards. Neither Mr. Lee nor Mr. Georgeson engaged in sanctionable conduct, and there is insufficient evidence to sustain the heightened standards required for the *sua sponte* sanctions under consideration by the Court.[1] At all times, Messers. Lee and Georgeson have been candid and forthcoming with the Court and the arbitration panels, based on the information and knowledge available to them from their client and other sources. As such, Messers. Lee and Georgeson respectfully request the Court decline to issue sanctions against them.

## II. THE FACTS DO NOT SUPPORT SANCTIONS.

The facts, as set forth in the detailed Declarations of Mr. Lee and Mr. Georgeson, reflect that that neither Mr. Lee nor Mr. Georgeson engaged in conduct warranting sanctions.

### A. Preliminary Proceedings Before the Court.

On May 21, 2024, Compeer Financial, ACA et al. ("Compeer") filed a sealed complaint in this Court against Corporate America Lending, Inc. ("CAL") and also a motion for a temporary restraining order. Declaration of Barry W. Lee ("Lee Decl."), ¶ 8,

---

[1] CAL has not consented to waive the attorney-client privilege or work-product protection. Accordingly, Mr. Lee and Mr. Georgeson may not disclose any privileged information in this response and neither intends anything in this response to be construed as a waiver.

(Doc. Nos. 1, 5.)  At that time, Mr. Lee, was out of the country in Europe from May 14, 2024 to June 2, 2024, with limited internet and phone service.  Lee Decl. ¶ 14, 16.

On May 23, 2024, before Mr. Lee or Mr. Georgeson entered an appearance, the Court scheduled a status conference for May 29, 2024.  Lee Decl. ¶ 9, (Doc. No. 19.)

On May 28, 2024, Joseph T. Dixon and Natasha T. Robinson entered their appearances as counsel on behalf of CAL.  Lee Decl. ¶ 10, (Doc. Nos. 22, 26.)  On May 28, 2024, Mr. Dixon filed a letter with the Court, stating that Mr. Lee was out of the country and requesting two weeks to file an opposition.  Lee Decl. ¶ 11, (Doc. No. 27, at 1.)

On May 29, 2024, the Court held the scheduled status conference via video. Mr. Lee, along with Ms. Robinson, Mr. Dixon, and Ms. Eiritz, attended the conference on behalf of CAL.  Lee Decl. ¶ 13.  Mr. Lee participated in the May 29, 2024, conference via cell phone because he did not have internet access.  Lee Decl. ¶ 14.

At the outset of the status conference, the Court summarized in a "nutshell" "what the dispute is about":

> . . . the plaintiff wants to make sure that the funds aren't going to be dissipated and that otherwise account for where is the money while the action is pending so that once you're off to arbitration, that you're just not off on a fool's errand, that the money is preserved.

Lee Decl. ¶ 15, (Doc. No. 33, at 4:22-5:1.)

The Court and Mr. Lee then had the following exchange, in which Mr. Lee truthfully explained what he knew at that time about the status of the Famoso Payoff Proceeds:

> THE COURT: . . .  The beautiful thing is we can hear you clearly.  And I'm going to ask you just a basic question kind of right up front, and if it proves

3

to be vexatious, you tell me that and tell me why.  But where is the money?

MR. LEE: **The money, as I understand it, remains at Corporate America Lending, Inc., CAL.  I should say, Your Honor, that I have been out of the country for the better part of a week.  I return on the 2nd of June.  I've been incommunicado, without communication for a few of those days, so I am not a hundred percent certain at this point of where things stand, but it is my understanding that funds -- there should not be a concern about the availability of funds.**

. . .

THE COURT: …

So I'm still back at just a fundamental thing.  Like, where is the money and how hard is it? You can have all the discussions you want about technical aspects and who agrees to what under the master services agreement, but fundamentally we've got to make sure, first, that the money is still in the vault.  I mean, I want to be reasonable about this, but I'm not understanding if it is there, as you say, why play footsies about that?

MR. LEE: I appreciate Your Honor's view and concerns.  Our client has asserted claims against -- we call it Agri-Access -- but against Agri-Access for monies it believes that it is owed and has been owed and that's what precipitated the dispute.  **And I just don't want to misspeak, Your Honor, and say that the money is at this location because I honestly cannot say at this moment, only because I've been without communications for a couple days over the weekend -- over the holiday weekend, although I have spoken with the folks at the Fredrikson firm, I think that was Sunday or Monday.  I'm a little missing on my dates.**

So having said all of that, I don't really think our clients are playing footsie.  They have attempted to sit down and discuss this and negotiate it and have simply been told no.  And we believe –

THE COURT: Well, I think it strikes, Mr. Lee, as playing footsies, which is a legal term of art.

. . .

**And, Mr. Lee, if I boil down everything that you just said, I would put it on the rubric of I, Mr. Lee, am not sure where the funds are.  I can say I've been too far -- too gone away from it, so I don't really know.  I can't**

4

> **speak to it. That's what I heard.**
>
> MR. LEE: It has been my understanding that the funds are available and can be made available. That is my understanding. Now, that is based on, you know, a few days' ago conversation.

Lee Decl. ¶ 16, (Doc. No. 33, at 5:24-10:2) (emphasis added.)

Because Mr. Lee did not, and could not, affirmatively represent to the Court at the May 29 conference that he was sure of the location of the Payoff Proceeds, and as the Court paraphrased "I, Mr. Lee am not sure where the funds are," the Court ordered CAL to identify an individual with that knowledge. Lee Decl. ¶ 17.

At the time of the May 29 conference, Mr. Lee neither knew nor suspected that CAL (i) did not possess or have access to the full amount of the Payoff Proceeds or (ii) had previously transferred any portion of the Payoff Proceeds. Lee Decl. ¶ 19. Based on his prior conversations with CAL, including with Mr. Cook, Mr. Lee believed on May 29 that the Payoff Proceeds were available to CAL. *Id*. Mr. Georgeson was not yet counsel of record for CAL in the District of Minnesota and did not participate in the May 29 conference. Georgeson Decl. ¶ 19.

After the status conference concluded, the Court entered a minute entry of the proceedings, ordering CAL "to identify an individual with authority … within who can confirm the current status of the disputed funds and enter into an agreement to preserve the funds pending the arbitration outcome." The order continued: "If Defendant identifies such an individual in an email to chambers by 1:30 p.m. central time [8:30 p.m. CET and 3:30 p.m. PT] today, May 29, 2024, a Zoom status conference will take place at 3:00 p.m. central time [10:00 p.m. CET and 5:00 p.m. PT], and the individual must attend the call." Lee

Decl. ¶ 20, (Doc. No. 29.)

Pursuant to the minute entry, CAL's CEO Ron Cook was identified as the individual "who can confirm the current status of the disputed funds and enter into an agreement to preserve the funds pending the arbitration outcome." Lee Decl. ¶ 21. However, Mr. Lee, Mr. Dixon, and Ms. Robinson subsequently learned that Mr. Cook was not available for the 3:00 p.m. CDT conference. Lee Decl. ¶ 22.

At approximately 2:00 p.m. CDT on May 29, 2024, Mr. Lee, Mr. Dixon, and Ms. Robinson received a draft of Mr. Cook's Declaration. Lee Decl. ¶ 24. Mr. Dixon and Mr. Lee each proposed revisions to the draft declaration, some of which CAL accepted and some of which CAL did not. However, Mr. Lee did not suspect that any of the rejected proposed revisions made the statements in the declaration untrue or misleading. Lee Decl. ¶ 26. Mr. Georgeson had no role in drafting, reviewing, or submitting the Cook Declaration. Georgeson Decl. ¶ 19.

At approximately 3:00 p.m. CDT on May 29, 2024, Ms. Robinson filed the Declaration of Ron Cook ("Cook Declaration"). The Cook Declaration attested in relevant part:

> On April 29, 2024, and as a result of the Borrowers decision to refinance the Famoso Loans, CAL received wire payments totaling $58,187,976.50, in full repayment of the Famoso Loans (the "Payoff Proceeds").
>
> I am willing to enter into an agreement that preserves the Payoff Proceeds pending the resolution of AAA Case No. 01-24-0005-4234.

Lee Decl. ¶ 27, (Doc. No. 30, at 2.)

At the time Mr. Lee reviewed Mr. Cook's declaration on May 29, 2024, and at the

6

time Ms. Robinson filed the declaration with the Court, Mr. Lee did not know or suspect that CAL (i) did not possess or have access to the full amount of the Payoff Proceeds or (ii) had transferred any portion of the Payoff Proceeds. Lee Decl. ¶ 28. At the time the Cook Declaration was filed, Mr. Lee did not know or suspect that any statement in the declaration was false. *Id.*

Mr. Lee understood that CAL had received the Payoff Proceeds on April 29, 2024, and was willing to enter an agreement to preserve the funds pending resolution of the arbitration. Lee Decl. ¶ 30. This understanding was based on Mr. Cook's and Mr. Aretakis' previous statements to Mr. Lee. *Id.*

Mr. Lee had no reason to suspect on May 29, 2024, that Mr. Cook was unable or not "willing to enter into an agreement that preserves the Payoff Proceeds pending the resolution of AAA Case No. 01-24-0005-4234." Lee Decl. ¶ 31.

Later on May 29, 2024, the Court entered an order to preserve the Payoff Proceeds (the "May 29 Order"). Doc. No. 32. The May 29 Order delegated authority to the arbitrator(s) regarding the Order, denied the motion for a temporary restraining order, and stayed the case. Lee Decl. ¶ 32, (Doc. No. 32, at 3.)

**B.    Proceedings Before the Emergency Arbitrator.**

On June 2, 2024, Mr. Lee returned to the United States. Lee Decl. ¶ 33. On June 3, 2024, Mr. Lee learned for the first time that after receiving the Payoff Proceeds on April 29, 2024, CAL had "invested" the Payoff Proceeds. Lee Decl. ¶ 34. Mr. Lee was also informed that CAL was in the process of re-acquiring the Payoff Proceeds to comply with the May 29 Order. *Id.* Mr. Lee was not provided further information regarding the

7

investment of the Payoff Proceeds.  *Id.*

That same day, on June 3, 2024, Mr. Georgeson filed a report to Emergency Arbitrator Robert Morrill, pursuant to the May 29 Order.  Lee Decl. ¶ 35, Georgeson Decl. ¶ 26, (Doc. No. 38-2.)  That report disclosed that the Payoff Proceeds were in the process of being re-acquired:

> 1.     Based on representations received from representatives of Corporate America Lending, Inc., the $58,187,976.50 is in process of being re-acquired.

(Doc. No. 38-2, at 1-2.)

On June 4, 2025, Emergency Arbitrator Morrill issued the Supplemental Interim Award.  Lee Decl. ¶ 38, (Doc. No. 38-3.)

On June 6, 2024, Mr. Georgeson and Mr. Lee filed another report to Emergency Arbitrator Morrill, pursuant to the Supplemental Interim Award.  Georgeson Decl. ¶ 28, (Doc. No. 38-4.)  That report disclosed the relevant facts regarding the Payoff Proceeds, all of which Mr. Lee and Mr. Georgeson then believed to be true:

> **The $58,187,975.50 received by CAL was invested by CAL** for purposes of preservation and creating a reasonable return on the funds.  **Beginning May 30, 2024, the day after Judge Blackwell signed the Order to Preserve Disputed Funds in the matter of** *Compeer Financial, ACA; Compeer Financial, PCA; and Compeer Financial FLCA v. Corporate America Lending, Inc.***, U.S. District of Minnesota, Court Case 24-cv-1896, Ron Cook, CAL's CEO, began undertaking measures, including placing telephone calls, to recall and giving notice for return of the deposited funds, the $58,187,975.50, with the purpose and intent being to place the recalled funds in an account consistent with the Court's Order to Preserve Disputed Funds, and to have the funds specifically identified and not at a perceived risk of loss or diminution.**  These efforts continued thereafter and to the present.
>
> **On June 5, 2024, pursuant to the actions undertaken by Ron Cook, a total of $13,000,000.00 has been retrieved and deposited in First Fresno**

Bank, Account No. **[Account No. removed]**.  See attached June 5, 2024 letter.  This sum is part of the original $58,187,975.50.  In addition, all funds received pursuant to Ron Cook's recall notices will be temporarily placed in an account.  When the total amount has been received back, all parties and the Emergency Arbitrator will be notified and presented proof of deposit.

**To create a final escrow account consistent with Judge Blackwell's Order, item 3, and the Emergency Arbitrator's Interim Award, item 3, and to place the disputed funds into a 1) segregated, 2) interest-bearing escrow account, and 3) with a reputable financial institution Ron Cook has contacted Touradj Etazadi, Bank of Sierra for purposes of setting up the escrow account insured up to approximately $65,000,000.00 ±. Opening the account is in progress.... The same inquiries and steps are concurrently in process with Fresno First Bank with the same approximate timeline and with Jordan Eiler of PNC Bank. All parties will be notified when acceptable terms have been finalized and CAL will seek written approval from the Emergency Arbitrator to move the disputed funds from the temporary account to an account that meets the requirements mandated by Judge Blackwell.  Additionally, the bank will be provided copies of Judge Blackwell's Order to Preserve Disputed Funds, AAA Interim Award and the Supplement to Interim Award.**

**Ron Cook, CAL's CEO, is the person who has directed the decisions relating to the disputed funds from receipt to the present and who communicated with third parties and/or financial institutions regarding the disputed funds.**  After Judge Blackwell signed the Order to Preserve Disputed Funds and thereafter, Alex Aretakis, CAL's COO communicated with banks regarding creation of an account that meets the requirements set out in Judge Blackwell's Order to Preserve Disputed Funds.  **The totality of the $58,187,975.50 is expected to be received within the next 10-14 days.** No funds will be released from the order-compliant account without further order from the Court, Emergency Arbitrator or three-person Arbitration panel.

Once the disputed funds are moved into a compliant account, withdrawals can only be released upon order of the Court, the Emergency Arbitrator or the three-person Arbitration panel.

Lee Decl. ¶ 40, Georgeson Decl. ¶ 28, (Doc. No. 38-4, at 1-3) (emphasis added.)

On June 6, 2024, Emergency Arbitrator Morill held a conference, which

Mr. Georgeson and Mr. Lee attended.  Lee Decl. ¶ 41, Georgeson Decl. ¶ 29, Georgeson

Decl. Ex. 11. Emergency Arbitrator Morrill and Mr. Georgeson engaged in the following

colloquy:

> ARBITRATOR MORRILL: …Mr. Lee, I got your report.  Thank you very much, and that definitely goes a long way towards filling in some of the blanks that I was concerned about.  We now know where the $13 million is.  It's in the Fresno Bank; right?
>
> MR. GEORGESON: That is correct, Mr. Arbitrator.  We provided you with the number of the  account and with a letter from the bank, advising that the $13 million is in the bank.
>
> …
>
> ARBITRATOR MORRILL: …. Okay.  So, I guess, my question is where is the other 45 million?
>
> MR. GEORGESON: As we set out in the report we're in the -- not we.  If I say "we," I mean CAL, Your Honor -- CAL is in the process of reacquiring those funds.  They are expected to be in the possession of CAL within the next 10 to 14 days, and I would suggest that as those funds are made available, that there should be a notice both to you and to the Claimant of the receipt of those moneys….
>
> ARBITRATOR MORRILL: Okay.  That sounds good.  But where is that other $45 million right now?  I understand it'll be transferred when it's recovered, but where is it now?
>
> MR. GEORGESON: Your Honor -- I keep calling Your Honor.  Excuse me.  I'm a trial lawyer -- Mr. Arbitrator, I do not know, and I was not provided that information.  And that's just the way it is.

Lee Decl. Ex. 1, Georgeson Decl. Ex. 11, at 6:8-8:5.

Mr. Georgeson expressly acknowledged that CAL had not complied with the

Supplemental Interim Award ("Does this report comply with the – the supplemental

interim award? It does not comply with the letter of that award, and I'm not going to tell

you any different."). *Id.*, at 15:8-11.

Emergency Arbitrator Morrill ordered the deposition of Mr. Cook to take place Thursday, June 13, 2024, because, as Mr. Georgeson acknowledged, counsel for CAL did not know the current location of the Payoff Proceeds and were not provided this information by CAL ("You don't know where the money went, and I think that [counsel for Compeer] is entitled to know.… Your client can dispel that suspicion very easily by just telling us where the money went."). Lee Decl. ¶ 44, Georgeson Decl. Ex. 11, at 20:20-21:1.

On June 13, 2024, Mr. Georgeson and Mr. Lee submitted another report to Emergency Arbitrator Morrill, which acknowledged CAL's non-compliance and provided the information available to Mr. Georgeson and to Mr. Lee at that time. Lee Decl. ¶ 48. Neither Mr. Georgeson nor Mr. Lee knew or suspected that any of the information they were given by their client and reported to the Emergency Arbitrator was false or misleading. Lee Decl. ¶ 48; Georgeson Decl. ¶ 32.

CAL's counsel reported:

This Second Supplement Report is in response to the Order you issued that certain material and information is to be delivered by CAL to Claimant and the Arbitrator. This will not occur.

…

The records ordered produced are only available through Ron Cook. All documents including the bank records can only be accessed through Ron Cook who is presently unavailable because of his serious medical condition.

**The proposed plan for placement of the funds in an escrow account as ordered is:**

1.      **$10 million next week.**

**2.      $10 million the following week.**

**3.      The remaining money deposited by the end of June 2024.**

CAL is attempting to comply with the Arbitrator's order in all due haste given Ron Cook's present serious medical condition.

**As it relates to the funds:**

**1.      CAL is unaware of and does not believe there are any claims, rights or obligations asserted by any third party;**

**2.      The funds are being recalled by CAL as quickly as they are available;**

**3.      The account numbers where the funds have been or are since April 29 are known only to Ron Cook.  As a result, CAL cannot respond to paragraph 6B and 6C at this time;**

**4.      As of today, $23 million dollars have been reacquired and deposited in Fresno First Bank.  The remaining funds when acquired will be deposited in the appropriate account consistent with the schedule set out above;**

5.      The $23 million dollars will be redeposited in Bank of the Sierra when documentation to open the compliant account has been completed.  Mr. Cook has no pre-existing relationship with Bank of the Sierra.  The process has been slowed because of Ron Cook's medical condition.  However, presently all reacquired funds, $23 million dollars, are on deposit with Fresno First Bank; and

6.      No withdrawals have been made or will be made from the account at Fresno First Bank now holding the Payoff Proceed Funds. Notice will be given to the Arbitrator and Mr. Boylan as the additional anticipated deposits are made as above noted.

Lee Decl. ¶ 48, (Doc. No. 38-6, at 1-3) (emphasis added.)

On June 17, 2024, Emergency Arbitrator Morrill held another conference that both

Mr. Georgeson and Mr. Lee attended.  Lee Decl. ¶ 49, Lee Decl. Ex. 2, Georgeson Decl.

Ex. 12.  Mr. Georgeson explained counsel's inability to provide the required information:

MR. GEORGESON: I'll make a first stab at it, Your Honor. Mr. Lee can pick up and make any additional statements.

They can -- you know, there's a misconception or at least apparent belief that CAL is some giant conglomeration that has various levels of bureaucracy that perform functions. That is just plain incorrect. CAL is, essentially, Mr. Cook operating in his corporate capacity. And the problem that has arisen -- and it's a real one -- is he is -- he has been in a medical decline which last week became a medical emergency. **And, so, we're placed in a position where the only source, real source of the information is Mr. Cook. Mr. Cook is unavailable. I've not spoken to him in -- I don't even know what today is -- probably about a week. There is hope, and we are trying to set up a conference with him on Thursday to discuss these issues.** That has not been confirmed. However, in a -- in a communication, it appears that he may be able to do so.

…

**We have set out a -- a source and mechanism by which the money is being returned, expect to be another $10 million this week.** Beyond that, because I have been unable to personally talk with Mr. Cook and he being the only person that can make decisions and do things, and receiving information that he's not available for his deposition -- and he will be made available when we get a medical okay on that.

With that, Your Honor -- or excuse me -- **Mr. Morrill, I set out in the report what information I had and what information I could acquire, and I have no further information. Wish I did. I don't. And, so, that's where we are.**

Lee Decl. Ex. 2, at 8:19-9:13, 10:1-14 (emphasis added).

Mr. Lee explained to Emergency Arbitrator Morrill his repeated efforts to obtain additional information from CAL:

MR. LEE: -- because I was the one responding back and forth. [Counsel for Compeer]'s comments are categorically denied and incorrect. **There were multiple communications that I had written, not verbal, written communications with the client, including Mr. Cook, requesting the information. I was never told that it would not be available and was unavailable until we heard -- and I'm drawing a blank right now. I think it was Thursday or Friday of last week. I think it was end of the day**

**Thursday -- that the information we needed was solely with Mr. Cook. Prior to that time -- and I'm, obviously, not gonna disclose them -- there were multiple e-mails and other written communications on a more-than-a-day daily basis, requesting the information. We learned that only Mr. Cook had access to the information**….

ARBITRATOR MORRILL: Thank you.

MR. LEE: If I had known the information was not available, I would have told you.

Lee Decl. ¶ 51, Lee Decl. Ex. 2, at 11:3-12:3 (emphasis added).

### C. Compeer Submits Letter Regarding Arbitration Proceedings to the Court, Which Counsel to CAL Does Not Dispute.

On June 18, 2024, counsel for Compeer submitted a letter to this Court, describing the proceedings before Emergency Arbitrator Morrill, including CAL's admitted non-compliance with the Interim Orders in the arbitration. Lee Decl. ¶ 53, (Doc. No. 38.) Counsel for Compeer sought leave to file a motion to hold CAL in civil contempt. *Id.*

On June 20, 2024, Mr. Lee submitted a letter to this Court on behalf of CAL in response. Lee Decl. ¶ 54, (Doc. No. 39.) Mr. Lee told the Court that CAL was not in compliance with the Interim Orders and acknowledged (i) CAL did not possess the full amount of the Payoff Proceeds and was in the process of reacquiring the Payoff Proceeds, and (ii) Mr. Lee was unable to obtain information from CAL, despite his consistent efforts, and his access to information was limited by Mr. Cook's serious medical condition. Lee Decl. ¶ 54, (Doc. No. 39, at 1-2.) Mr. Lee had no reason to know or suspect that these statements were inaccurate. *Id.*

On June 27, 2024, the Court denied Compeer's request to re-open this action as "premature" and stated "this action will remain stayed pending resolution of AAA Case

No. 01-24-0005-4234." Lee Decl. ¶ 56, (Doc. No. 40.)

**D.    Compeer Seeks Sanctions Against CAL in Arbitration.**

On July 1, 2024, Compeer moved Emergency Arbitrator Morrill to issue a report

and recommendation to this Court recommending sanctions against CAL. Lee Decl. ¶ 57,

Lee Decl. Ex. 3. Compeer argued CAL had not only concealed information from Compeer

and Emergency Arbitrator Morill *but from its own lawyers*, despite their repeated efforts

to obtain such information:

> Indeed, CAL's counsel admitted at the hearing on June 17 that "[t]here were
> multiple communications that I had, written, not verbal, written
> communications with the client, including Mr. Cook, requesting that
> information. I was never told that it would not be available . . . until we heard
> . . . I think it was Thursday or Friday of last week [June 6 or June 7]." Exhibit
> C-24 at p. 6-7. **In other words, for *six whole weeks*, Mr. Cook did not tell
> a single other person where the funds were, despite repeated requests
> not only from Agri-Access but also from CAL's *own lawyers*.** This is
> especially concerning given the June 3 revelation that CAL—or rather, Mr.
> Cook—made the decision to transfer those funds (and attempted to cover up
> that fact with the fake May payment), **and then failed to inform Agri-
> Access, CAL's lawyers, the Court, and the Emergency Arbitrator of that
> fact during the hearing on May 29 or at any other time before the May
> 29 Order or Interim Award were issued.**

Lee Decl. ¶ 58, Lee Decl. Ex. 3, at 6 (bold added; italics in original).

On July 16, 2024, Emergency Arbitrator Morrill issued a report and

recommendation for sanctions against CAL. Lee Decl. ¶ 59, (Doc. No. 41). Emergency

Arbitrator Morrill did not recommend sanctions against Messers. Lee or Georgeson, or

other counsel for CAL. Lee Decl. ¶ 60, Georgeson Decl. ¶ 35. Rather, Emergency

Arbitrator Morrill made clear counsel for CAL had been forthright in acknowledging

CAL's non-compliance with the Interim Orders. The report repeatedly set forth its findings

with the prefatory language "[a]s CAL's counsel has acknowledged."  Lee Decl. ¶ 60,

(Doc. No. 41, at 2-3).

This Court held a hearing on the Emergency Arbitrator's report and
recommendation on September 3, 2024, which Mr. Georgeson and Mr. Lee attended.  Lee
Decl. ¶ 61.  During the hearing, counsel again acknowledged CAL did not comply with the
Interim Orders:

> MR. GEORGESON: … Now, let's deal with some of the issues that are most
> troubling to everyone. Early on, the order of this Court was received and the
> subsequent orders of the emergency arbitrator were received. **Can I
> represent to the Court that there has been compliance with either your
> order or the orders of the emergency arbitrator? I cannot. And let me
> be clear, I'm not going to argue that there was compliance.**  Where we
> find ourself is two things occurred:
>
> **One, is there was set aside, and I verified, $23 million**. I have been –
>
> THE COURT: Did you verify it in the form required by the arbitrator for the
> proper reporting on the segregation of the funds and the other particulars that
> the arbitrator set forth? Was that done?
>
> MR. GEORGESON: Excuse me, Your Honor.  I did not.  **I verified with the
> banking institution itself that there had been put into an account the sum
> of $23 million.  I have been told, and I have not verified, Your Honor,
> that that amount is now at $29 million. I have not verified that.  I only
> have the representation that was made.**
>
> **THE COURT: Well, who is making that representation at 29 million?**
>
> **MR. GEORGESON: That was made by Mr. Cook.**
>
> THE COURT: The Mr. Cook who hasn't sat for a deposition?
>
> MR. GEORGESON: That's correct, Your Honor.  And has he sat for a
> deposition? No.
>
> …

> THE COURT: Mr. Georgeson, you are not trying to suggest that that explains the whole company's noncompliance from May to this date, are you?
>
> MR. GEORGESON: I am not. I am merely advising the Court of that situation and there was a delay -- I can give you my best estimate -- of two weeks, two and a half weeks where that was not going to be possible. The rest of it, Your Honor, I'm not going to represent to you otherwise than the orders were there and they have not been complied with except for that short period of time.

Lee Decl. ¶ 62, (Doc. No. 57, at 7:22-9:21.)

The Court subsequently thanked counsel for CAL for their forthrightness, stating: "[a]nd, Mr. Georgeson, I appreciate your forthrightness in the discussion in just saying what has and has not been done, and it is what it is at this point." Lee Decl. ¶ 63, (Doc. No. 41, at 15:18-25.)

**E.    Mr. Cook's Testimony at the October 22-23, 2024 Arbitration Hearing.**

Mr. Lee was not actively involved in either this action or the AAA Arbitration from about the last week in August 2024 until near the end of November 2024 because David Schwarz from Sheppard Mullin took over as trial counsel for CAL with Mr. Georgeson. Lee Decl. ¶ 65, Georgeson Decl. ¶ 16 n1.

On October 22, 2024, Mr. Cook testified in the arbitration. Lee Decl. ¶ 66. Mr. Lee was not involved in preparing Mr. Cook for his testimony and was not present for his testimony. *Id*. Rather, Mr. Georgeson and Mr. Schwarz prepared Mr. Cook for his testimony before the AAA Arbitration Panel. Georgeson Decl. ¶ 16. Mr. Lee listened to the hearing and Mr. Cook's testimony remotely. Lee Decl. ¶ 66.

During that testimony, Mr. Cook disclosed that CAL had distributed the following approximate amounts of the Payoff Proceeds to the following individuals: Michael Graham

($16 million); Dennis Morgan ($15-$16 million) and Kristie Iness ($5-$6 million).  Lee Decl. ¶ 67.  Mr. Lee was not previously aware of this information. *Id.* Mr. Georgeson did not learn this information until October 16, 2024, while preparing witnesses for the October 22, 2024, hearing in the AAA Arbitration. Georgeson Decl. ¶ 16. Based on the information available to Mr. Georgeson, Mr. Georgeson understood that Mr. Cook's testimony on these disbursements was accurate and truthful. *Id.*

Following the hearing, the Arbitration Panel instructed Mr. Georgeson to send emails to the persons identified by Mr. Cook in his testimony as having received portions of the Famoso Payoff Proceeds. Georgeson Decl. ¶ 17. Mr. Georgeson complied with this order. *Id.*

### F. Preservation and Disbursement of Famoso Payoff Proceeds Held in Trust by Mr. Georgeson.

On October 17, 2024, CAL transferred approximately $23 million in Famoso Payoff Proceeds to a Trust account opened by Mr. Georgeson at Fresno First Bank.[2]  Georgeson Decl. ¶ 5. Mr. Georgeson advised the Arbitration Panel of this development. *Id.* Mr. Georgeson updated the Arbitration Panel on the status of the Famoso Payoff Proceeds held in Trust on November 25, 2024. *Id.* at ¶ 6.

On March 24, 2025, Mr. Georgeson submitted to this Court a Declaration providing a copy of the most recent statement of the Fresno First Bank account holding the Famoso Payoff Proceeds, reflecting an account balance of $23,347,081.25. *Id.* at 7.  Days later, this

---

[2] Mr. Lee is not now, and has not ever, held any Famoso Payoff Proceeds in trust or otherwise.  Lee Decl. ¶ 68.

Court issued its Order on Motion to Dismiss and Motion to Confirm Arbitration Awards, entering judgment on the Partial Final Award on Phase I, the October 28, 2024 Interim Award, and the November 26, 2024 Sanctions Order. (Doc. 117.)

To comply with the Order, Mr. Georgeson worked with Compeer's counsel, the Court appointed Receiver to CAL, and Fresno First Bank to wire the Famoso Payoff Proceeds held in Trust by Mr. Georgeson to Compeer.  Georgeson Decl. ¶¶ 8-10. As such, Mr. Georgeson is no longer holding any Famoso Payoff Proceeds in Trust or otherwise. *Id.* at 11.

## III.   THE SCOPE OF THE OSC IS POTENTIALLY AMBIGUOUS AND DOES NOT DISCLOSE THE TYPE OR SEVERITY OF SANCTIONS.

Counsel respectfully submits that the current scope of the OSC is potentially ambiguous, precluding the imposition of sanctions. The Court's March 27, 2025, Order to Show Cause Re: Misrepresentations Regarding Availability of Funds states:

> Accordingly, **IT IS HEREBY ORDERED** that attorneys Barry Lee, C. Russell Georgeson, and any other attorney who assisted in preparing, submitting, or defending the May 29, 2024 Cook declaration or made representations at the May 29 conference regarding the Payoff Proceeds, shall show cause in writing within 14 days why they should not be sanctioned ….

Thus, the language appears to limit the scope of the OSC to (1) "the May 29, 2024 Cook declaration" and (2) the "representations at the May 29 conference regarding the Payoff Proceeds."  However, in light of the opening paragraphs of the OSC, the scope appears to be much broader than contained in the operative language of the Order. As a result, and because the Court is considering sanctions *sua sponte*, Messers. Lee and Georgeson have not been given the particularized notice of what specific statements or

conduct they are supposed to address. Given this, imposing sanctions at this time and on this record is not warranted. *Johnson v. Waddell & Reed, Inc*., 74 F.3d 147, 151 (7th Cir. 1996); *Thornton v. Gen. Motors Corp*., 136 F.3d 450, 454-55 (5th Cir. 1998); *Martin v. Brown*, 63 F.3d 1252, 1264 (3rd Cir. 1995) (holding particularized notice of conduct is required prior to imposing sanctions).

By way of example, the OSC states that, "[i]n response to this direct question, counsel for CAL offered a declaration from CEO Ron Cook stating vaguely that he was 'willing to enter an agreement' to preserve the funds. (Doc. No. 30 at 2.) This assurance, presented as if responsive, did not address the Court's actual concern ...." However, Mr. Lee did not offer a declaration from CEO Ron Cook in response to any direct question at the May 29 status conference.

Rather, as the OSC acknowledges, Mr. Lee stated he understood Payoff Proceeds were available, based on prior communications with CAL and communications between CAL and Compeer, but admitted he was not "100% certain where things stand" and did not know the current location of the Payoff Proceeds. Mr. Georgeson was not involved at all in the May 23, 2024, hearing or in the preparation of the Cook Declaration. Georgeson Decl. ¶ 15.

Mr. Lee reviewed the draft Cook Declaration, the initial draft of which he was not involved in preparing, and proposed revisions, some of which were accepted by CAL and some of which were not. The Cook Declaration, which was prepared in just hours following the Court's minute order, was submitted specifically because Mr. Lee did not have the information the Court requested.

Similarly, following its discussion of the May 29 status conference, and the declaration of Mr. Cook, the OSC states that "the reassurances continued." The Court does not identify what "reassurances continued," after Mr. Lee's statements at the May 29 status conference and Mr. Cook's declaration. As such, Messers. Lee and Georgeson are unable to specifically respond to or address the Court's concerns.

Given this, Messers. Lee and Georgeson respectfully submit that the scope of the Court's OSC is ambiguous beyond the specifically identified issues related to (1) "the May 29, 2024 Cook declaration" and (2) the "representations at the May 29 conference regarding the Payoff Proceeds." If there are other statements or submissions beyond these specifically enumerated issues that the Court believes warrant sanctions, Messers. Georgeson and Lee respectfully request the Court identify those and permit an opportunity to respond.

In addition, due process requires that Messers. Lee and Georgeson be advised of the types of sanctions this Court is considering and be provided an opportunity to respond before any such sanctions may be issued. *See Sec. Nat'l Bank of Sioux City, IA v. Jones Day*, 800 F.3d 936, 944 (8th Cir. 2015) ("'It is well established that before sanctions are imposed under a federal rule or the court's inherent power, the intended recipient is to be given 'notice that sanctions against her are being considered and an opportunity to be heard.'") (quoting *Plaintiffs' Baycol Steering Comm. V. Bayer Corp.,* 419 F.3d 794, 802 (8th Cir.2005)). "These requirements also apply when district courts impose sanctions on their own motion." *Id.* (citing *Manual for Complex Litigation* § 10.155 (4th ed. 2008)).

Although the OSC identifies the authority under which the Court is considering imposing sanctions, it does not identify the type and severity of sanctions under consideration.  Thus, Messers. Lee and Georgeson are not, at this time, in a position to respond or address the potential sanctions that the Court is contemplating. This is especially relevant if the Court is considering a punitive sanction, which may entitle Messers. Lee and Georgeson to heightened due process protections and/or a heightened evidentiary standard.

## IV.    SANCTIONS ARE NOT WARRANTED UNDER RULE 11, SECTION 1927, OR THE COURT'S INHERENT AUTHORITY.

The Declarations of Messers. Georgeson and Lee reflect no evidence of reckless, knowing, intentional, or bad faith conduct. As such, *sua sponte* sanctions are not appropriate here.

### A.    Rule 11 is Inapplicable to the Conduct Identified in the OSC.

In its OSC, the Court identifies two sources of alleged misrepresentations regarding the Famoso Payoff Proceeds: (1) Mr. Lee's statements during the May 29 status conference; and (2) Mr. Cook's statements in his May 29 declaration.  Neither is a basis for Rule 11 sanctions against Messers. Lee or Georgeson.

Rule 11 does not apply to the oral statements Mr. Lee made at the May 29 status conference.[3]  "Fed. R. Civ. P. 11 applies only when an attorney has signed a pleading, motion or other paper."  *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 621 (8th Cir.

_____

[3] Mr. Georgeson's Declaration makes clear that he was not involved in the May 29 hearing and as such made no statements to the Court during that hearing. Georgeson Decl. ¶¶ 15, 19.

1987) (internal citation omitted) (holding Rule 11 inapplicable because attorney "signed neither a pleading, nor motion nor any other paper which may be the basis of a Rule 11 sanction"); *see also In re Sanford L. Firm*, 106 F.4th 706, 716 (8th Cir. 2024) ("Rule 11 does not license a district court to sanction any action by an attorney or party that it disapproves of.  Imposition of sanctions must be based on a pleading, motion or other paper signed and filed in federal court." (quoting *Coltrade Int'l, Inc. v. United States*, 973 F.2d 128, 131 (2d Cir. 1992)).

Thus, Rule 11 "applies only to assertions contained in papers filed with or submitted to the court.  It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection."  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also* Steven S. Gensler and Lumen N. Mulligan, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 11 (February 2024 update) ("Rule 11 does not apply to issues raised orally that lack a link to a previously submitted paper."); *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc*., 892 F.2d 802, 813 (9th Cir. 1989) (holding "district court erroneously applied Rule 11 to oral representations and testimony"), *judgment aff'd*, 498 U.S. 533 (1991).

Rule 11 governs oral statements only where the attorney relies on or argues from a paper previously submitted to the court, which did not occur at the May 29 status conference.  The Advisory Committee Notes to Rule 11 make clear that "a litigant's obligations with respect to the contents of these [previous] papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the

court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also O'Brien v. Alexander*, 101 F.3d 1479, 1490 (2d Cir. 1996) (holding oral statements may serve as basis for sanctions when attorney or party is later advocating untenable contention that was directly addressed in signed pleading, motion, or other paper previously submitted to district court).  At the time of the May 29 conference, Mr. Lee had not signed a pleading, motion, or other paper, had not submitted or filed a pleading, motion, or other paper to the Court, and was not advocating, and did not advocate, an untenable contention directly addressed in a previously submitted pleading, motion, or other paper. As such, Rule 11 is inapplicable.

For the same reasons, Rule 11 does not apply to Mr. Cook's declaration, which was filed *after* the statements Mr. Lee made at the May 29 status conference, because Mr. Lee did not sign Mr. Cook's declaration, did not submit the declaration to the Court, and did not later advocate the declaration before the Court.

   **B.    *Sua Sponte* Sanctions Under Rule 11 Require Clear and Convincing Evidence of Intentional or Reckless Disregard or Subjective Bad Faith.**

Even if Rule 11 did apply here, where the Court raises the possibility of taking action under Rule 11 on its own initiative, the Court must apply a heightened standard that is not satisfied here.

After the 1990 amendment to Rule 11, the Eighth Circuit concluded the standard under Rule 11 is whether the attorney's conduct, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  *Perkins v. Spivey,*

911 F.2d 22, 36 (8th Cir.1990). In 1993, Rule 11 was amended again to explicitly state courts have authority to impose sanctions *sua sponte*. Although Rule 11 does not describe the factors a court must consider before imposing sanctions on its own initiative, the Advisory Committee Notes state such sanctions orders "will ordinarily be issued *only in situations that are akin to a contempt of court*." Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment (emphasis added).

Following the 1993 amendment, the Eighth Circuit held the Rule 11 "standard is applied with particular strictness where, as here, the sanctions are imposed on the court's own motion." *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003). While acknowledging other Courts of Appeal have concluded "the amended rule requires a finding that the attorney's conduct was [1] 'akin to contempt of court' and [2] motivated by subjective bad faith before a court may impose sanctions on its own initiative," the Eighth Circuit has previously "found it unnecessary to decide whether the standard for sanctions initiated under Rule 11(c)[(3)] is different from, and more stringent than, the standard for sanctions initiated by motion of a party under Rule 11(c)[(2)]." *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006).

As the Eighth Circuit has recognized, however, other Circuits have addressed the issue and required conduct akin to contempt of court and/or bad faith. In *In re Pennie & Edmonds LLP,* 323 F.3d 86 (2nd Cir. 2003), the Second Circuit vacated a sanctions award and adopted the "subjective bad faith" standard for court-initiated sanctions. *Id.* at 87 ("We conclude that where, as here, a *sua sponte* Rule 11 sanction denies a lawyer the opportunity to withdraw the challenged document pursuant to the "safe harbor" provision

of Rule 11(c)(1)(A), the appropriate standard is subjective bad faith."). Other Courts of Appeal have emphasized that sanctions should be imposed with caution when done *sua sponte* and should be reserved for conduct akin to contempt. *See, e.g.*, *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-1116, (9th Cir. 2001) ("Looking at all the circumstances, we conclude that while Judge Baird had every reason to disapprove of the manner in which Counsel presented information to the district court concerning the appropriate assignment of the case, the Notice was in neither purpose nor substance 'akin to contempt.' Sua sponte Rule 11 sanctions were therefore inappropriate."); *see also Kaplan v. DaimlerChrysler, AG*, 331 F.3d 1251, 1255 (11th Cir. 2003) (joining Circuits that apply the "akin to contempt" rationale to *sua sponte* Rule 11 sanctions).[4]

The Court need not decide which standard applies because, even under the lesser standard of objective reasonableness, there is no clear and convincing evidence of intentional or reckless disregard of Messers. Lee or Georgeson's duties to the Court, much less subjective bad faith. "Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct, considering factors such as 'the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation.'" *Sharma v. Crosscode, Inc.*, 2022 WL 816555, at *17 (D. Minn. Mar. 17, 2022) (quoting *Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 498

---

[4] The Eight Circuit has explained "the contempt power is a most potent weapon," and thus the Eight Circuit reviews the grant of a contempt order "more searchingly" than a denial. *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998) (quotation omitted). The party seeking a civil contempt order "bears the burden of proving facts warranting such relief by clear and convincing evidence." *Jake's, Ltd., Inc. v. City of Coates*, 356 F.3d 896, 899-900 (8th Cir. 2004).

U.S. 533, 551 (1991), and citing *Pope v. Federal Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995)).

Applying these factors, the evidence does not support the imposition of sanctions here. Regarding the "purported wrongdoer's history," neither Mr. Lee nor Mr. Georgeson have previously been subject to an order to show cause or disciplined. Lee Decl. ¶ 5, Georgeson Decl. ¶ 4.

The second factor, which is the severity of the purported violation, does not warrant discipline for the conduct identified in the OSC.[5]  The purported violation identified in the OSC concerns Mr. Lee's statements during the May 29 status conference.  While Mr. Lee recognizes the Court's concerns, the evidence reflects that Mr. Lee did not make any false or misleading statements regarding the location of the Famoso Payoff Proceeds. To the contrary, Mr. Lee explicitly informed the Court that he was out of the country and lacked up to date information on the issue.

Specifically, Mr. Lee relayed his understanding that the Payoff Proceeds were available to CAL based on his prior communications with his client CAL and based on communications between CAL and Compeer, but Mr. Lee admitted he was not "100% certain where things stand," did not want to "misspeak," and did not know the current

---

[5] As noted previously, Mr. Georgeson was not involved in either the May 29 status conference or the preparation, review, or submission of the Cook Declaration. Georgeson Decl. ¶¶ 15, 19.  As such, there is no factual basis to sanction Mr. Georgeson for any conduct related to those issues. The evidence further reflects that Mr. Georgeson's conduct in holding, and ultimately distributing, the Famoso Payoff Proceeds held in Trust was appropriate and done with the consent of Compeer, the Receiver to CAL, and in accordance with the Court's Orders. Georgeson Decl. ¶¶ 5-11.

location of the Payoff Proceeds.  Lee Decl. ¶ 16, (Doc. No. 33, at 6:4-10-2). As a result, Mr. Lee's statements to the Court were appropriately circumscribed.

Because Mr. Lee could not answer the Court's questions, or as the Court paraphrased "I, Mr. Lee am not sure where the funds are," the Court ordered CAL to identify an individual with the requisite knowledge.  Lee Decl. ¶ 17.  Thus, the Court entered a minute entry, which required CAL to "identify an individual with authority … who can confirm the current status of the disputed funds and enter into an agreement to preserve the funds pending the arbitration outcome."  Lee Decl. ¶ 20, Doc. No. 29.

Because Mr. Cook was unavailable, Mr. Cook quickly provided a draft declaration to Mr. Lee, Mr. Dixon, and Ms. Robinson.  Mr. Lee was not involved in the initial drafting that Declaration, although he did review it and suggest edits.  Lee Decl. ¶¶ 24, 26.  At the time Mr. Lee reviewed Mr. Cook's declaration on May 29, and at the time Ms. Robinson filed the declaration, Mr. Lee did not know or suspect that CAL (i) did not possess or have access to the full amount of the Payoff Proceeds or (ii) had transferred any portion of the Payoff Proceeds.  Lee Decl. ¶ 28.  At the time the Cook Declaration was filed, Mr. Lee did not know or suspect that any statements in the declaration, which were attested to under penalty of perjury, were misleading or false.  *Id.*  Thus, while Mr. Lee certainly understands the Court's concerns regarding the lack of information related to the Famoso Payoff Proceeds, the evidence reflects that Mr. Lee did not make a knowingly or even suspected false or misleading statement or fail to correct a statement to the Court upon learning of its falsity.

The final factor is the degree to which malice or purported bad faith contributed to the violation. Here, there is no evidence that malice or bad faith on the part of Mr. Lee contributed to his statements at the May 29 status conference, or the statements in Mr. Cook's Declaration.  In addition to the facts described above, Mr. Lee's conduct subsequent to the status conference demonstrates that, as soon as Mr. Lee discovered new information, he promptly disclosed it to the Emergency Arbitrator, or the Merits Panel, or the Court, as appropriate.  This demonstrates good faith, not bad faith.

The Emergency Arbitrator recognized this when, upon issuing the sanctions against CAL, he found that counsel for CAL acknowledged CAL's failure to comply with the May 29 Order and Interim Orders.  Lee Decl. ¶ 77.  Similarly, this Court recognized that Messers. Lee and Georgeson had been forthright with the Court regarding CAL's non-compliance. (Doc. 57, 15:19-21.) In sum, Messers. Lee and Georgeson have been transparent and truthful with the Court and, after the Court's delegation of authority, to the arbitrators, regarding CAL's non-compliance. As such, the evidence does not support a finding of bad faith or malice, precluding the imposition of sanctions.

## C.     Sanctions Under Section 1927 Are Not Warranted Here.

Sanctions may be imposed against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "While [section 1927] grants authority to the courts to impose sanctions for misconduct by attorneys, it is a power which the courts should exercise only in instances of a serious and studied disregard for the orderly process of justice." *Williams v. Giant Eagle Markets, Inc*., 883 F.2d 1184, 1191 (3d Cir. 1989) (reversing section 1927 sanctions).

In the Eighth Circuit, the standard for section 1927 sanctions, including whether "an explicit finding of bad faith is required" to impose sanctions, "is not clear." *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 2020 WL 4915832, at *4 (D. Minn. Aug. 21, 2020). Indeed, Eighth Circuit decisions regarding section 1927 sanctions appear to conflict. *Compare NAACP v. Atkins*, 908 F.2d 336, 340 (8th Cir.1990) (noting that "the language of § 1927 appears to require both a finding of objectively unreasonable behavior and a finding of bad faith"), *and O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 n. 2 (8th Cir.1987) ("We do not hold that § 1927 contains only an objective standard, as opposed to both an objective and subjective standard. The words of the statute require unreasonable and vexatious conduct.  28 U.S.C. § 1927.  Whether this requires a finding of bad faith in addition to unreasonable conduct is a question that is not before us."), *with Perkins v. Spivey*, 911 F.2d at 36 ("The standard under § 1927 and Rule 11 is whether the attorney's conduct 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" (quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987))).

Some Circuits require bad faith to impose sanctions under section 1927,[6] while others do not.[7] Regardless, district courts in this District have concluded "28 U.S.C. § 1927 implicates a higher level of culpability than Rule 11 sanctions." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.,* 2017 WL 8947185, at *16 (D. Minn. Feb. 3, 2017) (denying section 1927 sanctions, even though case was "objectively baseless"). *In Beaulieu v. Stockwell*, 2019 WL 3947007, at *6 (D. Minn. Aug. 21, 2019), the court acknowledged the tension in Eight Circuit authority and nevertheless denied sanctions under section 1927 because it could not "conclude with certainty that [the purported wrongdoer] acted vexatiously or in bad faith, or that he unreasonably multiplied the proceedings," even

---

[6] *See, e.g., Eisemann v. Greene*, 204 F.3d 393, 396 (2nd Cir. 2000) (reversing sanctions due to lack of bad faith); *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1191 (3rd Cir. 1989) (reversing sanctions award where district court's bad faith finding was clearly erroneous); *LaSalle Nat. Bank v. First Conn. Holding Grp., L.L.C.,* 287 F.3d 279, 289 (3rd Cir. 2002) (vacating sanctions award due to absence of bad faith). Under the heightened bad faith standard, section 1927 sanctions cannot be imposed even when an attorney fails to investigate and determine that his client's claims are baseless, but nevertheless permits the lawsuit to proceed. *See Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 340 (2d Cir. 1999); *Zuk v. Eastern Pa. Psychiatric Inst, of the Medical College,* 103 F.3d 294, 298 (3rd Cir. 1996) (holding district court abused its discretion by imposing section 1927 sanctions even though "plaintiff's counsel failed to conduct an adequate investigation").

[7] *See, e.g., Cruz v. Savage*, 896 F.2d 626, 634 (1st Cir. 1990)*, Salkil v. Mount Sterling Tp. Police Dept.*, 458 F.3d 520, 532, (6th Cir. 2006).

though "the pattern of behavior demonstrates a lack of respect for the judicial process." *Id.* at *6.[8]

Here, as with Rule 11 sanctions, the Court need not decide which standard applies because, even under the lesser standard of objective reasonableness, no clear and convincing evidence of intentional or reckless disregard for duties to the Court, much less subjective bad faith, exists. In sum, because there is no evidence that either Mr. Lee or Mr. Georgeson multiplied proceedings or acted in bad faith, section 1927 sanctions are inapplicable on their face.

### D. Sanctions Should Not Be Imposed Pursuant to the Court's Inherent Authority.

The Supreme Court permits courts to award sanctions under inherent authority against counsel only for conduct that constitutes bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (holding that while federal courts have the inherent authority to assess attorneys' fees against counsel who willfully abuse judicial processes, the court must make a specific finding that counsel's conduct in the case "constitutes or is tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers.") Courts in this District have applied this standard when considering sanctions imposed pursuant to the Court's inherent authority.

---

[8] Other Circuits have held that simple negligence is insufficient to levy sanctions under section 1927. *See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (concluding that imposing section 1927 sanctions "require[s] a showing of something less than subjective bad faith, but something more than negligence or incompetence"); *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1185 (7th Cir. 1992) ("Under the current state of the law, something more than ordinary negligence must exist in order to justify the order of sanctions.").

In *Steinlage v. Mayo Clinic Rochester*, 235 F.R.D. 668, 674 (D. Minn. 2006), the court held that exercise of its inherent authority "requires a finding of bad faith and addresses conduct that constitutes willful abuse of judicial process or fraud upon the court." *Id.* at 674 (citing *Stevenson v. Union Pac. R. Co.,* 354 F.3d 739, 751 (8th Cir.2004), and *Jaquette v. Black Hawk County,* 710 F.2d 455, 462 (8th Cir.1983)).  Recognizing the requirement that the court exercise "its inherent power to sanction cautiously and with 'restraint and discretion,'" the court denied sanctions because "Plaintiff has not offered the court any direct evidence of bad faith by defendant or its counsel. Neither has plaintiff identified any direct or indirect benefit gained by defendant or its counsel …." *Id.* at 674 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC,* 458 F.3d 733, 739 (8th Cir. 2006) ("A bad faith finding is specifically required in order to assess attorneys' fees.").

As discussed above regarding the application of Rule 11 and section 1927, the evidence does not support a finding that either Mr. Lee or Mr. Georgeson acted in bad faith with respect to any of the conduct identified in the OSC. As such, sanctions should not be imposed pursuant to the Court's inherent authority.

## V.    CONCLUSION.

Both Mr. Georgeson and Mr. Lee recognize the Court's frustration and concerns regarding the issues identified in the OSC. However, the evidence reflects that throughout their representation of CAL, both Mr. Georgeson and Mr. Lee have relayed information to the arbitrators and the Court that was true and accurate at the time it was submitted. Certainly, the evidence does not reflect that either Mr. Lee or Mr. Georgeson acted

recklessly, knowingly, intentionally, or in bad faith. As such, Messers. Lee and Georgeson respectfully request the Court determine that no sanctions can be imposed on these facts and conclude these proceedings.

BASSFORD REMELE
*A Professional Association*

Date:  April 10, 2025          By /s/ Aram V. Desteian
                              Kevin P. Hickey (#202484)
                              Aram V. Desteian (#396021)
                              100 South 5th Street, Suite 1500
                              Minneapolis, MN 55402-1254
                              Telephone:  (612) 333-3000
                              Facsimile:   (612) 333-8829
                              khickey@bassford.com
                              adesteian@bassford.com

                              Attorneys for Barry W. Lee and C. Russell Georgeson

4896-2863-2628, v. 1