UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| COMPEER FINANCIAL, ACA; COMPEER FINANCIAL, PCA; and COMPEER FINANCIAL, FLCA, <br><br> *Plaintiffs,* <br><br> v. <br><br> CORPORATE AMERICA LENDING, INC., <br><br> *Defendant.* | Court File No. 24-CV-1896 (JWB/ECW) <br><br> **PLAINTIFFS' OPPOSITION AND RESPONSE TO RECEIVER'S MOTION REGARDING CONTINUED SEALING OF RECEIVER'S FIRST WRITTEN REPORT** |

1

Plaintiffs (also referred to collectively as "Agri-Access")[1] respectfully submit their Opposition and Response to the Receiver's Motion Regarding Continued Sealing of the Receiver's First Written Report:

## INTRODUCTION

CAL is at it again, this time with the Court-appointed Receiver. CAL's objections to the production of its Bank Records[2] and the disclosure of information related to its banking and business practices in the Receiver's First Written Report are the latest in a year-long display of "cat and mouse" tactics before multiple tribunals—the same tactics that led Judge Blackwell to issue the Order Appointing Receiver (ECF 118) in the first place.[3] CAL now refuses to provide the Court-appointed Receiver with consent to disclose information CAL has *repeatedly been ordered* to produce.[4] CAL does not even contend that these documents are unresponsive or unrelated to the Payoff Proceeds, and instead only vaguely asserts that they are confidential and privileged to prevent Plaintiffs from once and for all learning the status of the Payoff Proceeds. This Court should reject CAL's unsupported claims of privilege and confidentiality outright and deny the Receiver's motion to seal.

The Court authorized the Receiver to "[i]nvestigate Defendant's financial records and account information to identify, locate, and segregate the Payoff Proceeds from

---

[1] Plaintiffs Compeer Financial, ACA f/k/a AgStar Financial Services, ACA; Compeer Financial, PCA f/k/a AgStar Financial Services, PCA; and Compeer Financial, FLCA f/k/a AgStar Financial Services, FLCA, each conduct certain business as Agri-

2

Defendant's other assets" and "to access and review all of Defendant's books, records, and financial systems as necessary to identify, trace, and recover the Payoff Proceeds and enforce the Merits Panel awards." ECF 118 (Order Appointing Receiver), ¶ 9(d). Those Merits Panel awards include orders requiring CAL to produce detailed information and

---

Access® and are collectively referred to herein as "Agri-Access." Previous filings and Orders in this case may also refer to Plaintiffs collectively as "Compeer."

² The Receiver defines the Bank Records as "CAL's bank statements relating to three (3) separate CAL accounts held at Fresno First Bank ('FFB Bank') for the period of February 2024 through March 2025." ECF 168 (Memo ISO Continued Sealing), ¶ 4.

³ Order on Report and Recommendation of Emergency Arbitrator (ECF 73) at 7 (describing how CAL's "'cat and mouse' tactics have now defied two decisionmakers"). As recognized by Judge Blackwell, CAL's bad behavior has been longstanding and pervasive. *See, e.g.*, Order to Show Cause (ECF 119) (describing CAL's "pattern of concealment" regarding "the payoff and the status of the funds").

⁴ CAL has repeatedly failed to comply with the discovery-related orders of the Court, the Emergency Arbitrator, and the Merits Panel that required the production of bank records, documents, and other information related to CAL's business practices. *See* ECF 32 (May 29 Order) (requiring CAL to "submit a detailed report . . . outlining the steps taken to preserve the Payoff Proceeds"); ECF 38-1 (Interim Award) (requiring CAL to turn over to the Emergency Arbitrator monthly statements and balance information for accounts holding the Payoff Proceeds); ECF 38-2 (CAL June 3 Report); ECF 38-3 (Supplement to Interim Award) (requiring CAL to supplement its report with the required information); ECF 38-4 (CAL June 6 Report); ECF No. 38-5 (Second Supplemental Order) (reiterating prior orders and also ordering CAL to produce all "investment contracts or agreements, communications with third parties"); ECF 38-6 (CAL June 13 Report); ECF 41 (Emergency Arbitrator Recommendation) (recommending sanctions because CAL had "resolutely failed and refused to comply with most parts of the Court's Order and the Emergency Arbitrator's orders," including to produce the required documents and information); ECF 80-5 (Interim Award of Merits Panel) (noting CAL's failure to provide information and giving it "one final chance to comply"); ECF 100-10 (Panel's 12/26 Pre-Hearing Order) ("Because [CAL]'s Response to [Agri-Access's third submission on discovery issues] does not contest the factual allegations, the Panel will take those allegations to be true, showing repeated violations of discovery requirements and orders for discovery.").

documents about what happened to the Payoff Proceeds,[5] and Judge Blackwell's Order makes clear that "Plaintiffs may request access to such records through the Receiver." *Id*. Where, as here, "the Receiver declines to share specific information," "Plaintiffs may seek Court approval to compel such access, which may be referred to the Magistrate Judge as appropriate." *Id.* Plaintiffs seek such access in opposing the Receiver's Motion Regarding Continued Sealing.

Plaintiffs oppose CAL's attempts to prevent disclosure of its Bank Records, business practices, and banking information—information CAL has repeatedly been *ordered* to produce to Plaintiffs—on three bases. *First*, the Bank Records are not privileged. CAL articulates no basis for its privilege claim because no such basis exists and neither the attorney-client nor work product privileges prevent production of CAL's Bank Records or information based on those records. *Second*, discussion of CAL's business practices and banking information in the Receiver's First Written Report is not confidential and no privilege attaches to prevent disclosure. *Finally*, the redacted information in the Receiver's First Written Report and the information in the Bank Records, in addition to being the subject of multiple discovery orders confirmed by Judge Blackwell, are subject to a long-standing Protective Order in the arbitration and the at-issue information and records should be immediately provided to Plaintiffs pursuant to the terms of that Protective Order.

---

[5] *See supra* n. 4.

4

Plaintiffs respectfully request that the Court order the Receiver to (1) immediately produce the entirety of the Bank Records to Plaintiffs; (2) immediately produce an unredacted version of the entirety of the Receiver's First Written Report to Plaintiffs; and (3) to the extent that the Bank Records or the First Written Report are found to contain confidential information that requires protection, immediately provide unredacted versions to Plaintiffs subject to the Protective Order.

## ARGUMENT

**I.    Attorney-client privilege does not prevent disclosure of the Bank Records.**

CAL's bald and unsupported assertion of attorney-client privilege to protect its Bank Records from production and disclosure fails.

Federal courts sitting in diversity jurisdiction apply federal law to work product claims and state law to attorney-client privilege claims. *See Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011). The threshold inquiry in an attorney-client privilege analysis is determining whether the "party resisting disclosure" has established that "the contested document embodies *a communication in which legal advice is sought or rendered.*" *City Pages v. State*, 655 N.W.2d 839, 845 (Minn. Ct. App. 2003) (internal quotation marks omitted and emphasis added). Moreover, for privilege to attach, the communication must be between an attorney and his client or persons who assist in that communication. *See In re Bretto*, 231 F. Supp. 529, 531 (D. Minn. 1964) (applying state law). Minnesota courts strictly construe the privilege. *See Leer v. Chicago, M., St. P. & P. Ry. Co.*, 308 N.W.2d 305, 309 (Minn. 1981).

5

None of these factors apply here. The documents in question are bank statements, created and provided to CAL in the regular course of the bank's business. They were not created in connection with or for purposes of assisting any attorney-client communication. Courts are clear that bank records are not inherently privileged and depositors have no expectation of privacy in their bank records. *See In re Grand Jury Proc. (Malone)*, 655 F.2d 882, 886 n.3 (8th Cir. 1981) ("[O]rdinary business and financial records of corporations and partnerships [] would not [] be[] privileged in the hands of the client. Mere delivery of the documents to the attorney would not create the privilege where it previously did not exist."); *United States v. Willis*, 565 F. Supp. 1186, 1205 (S.D. Iowa 1983) ("[B]ank statements and bank receipts of the law firm trust account are not privileged."); *United States v. Raabe*, 431 F. Supp. 424, 427 (D.S.D. 1977) ("There is[] [] no recognized privilege which attaches to the dealings between a depositor and a bank that precludes disclosure of records of their ordinary dealings by lawful process."); *Lesh v. United States*, 715 F. Supp. 1333, 1335 (E.D. Va. 1989) ("The fact that bank records derive from transactions involving an attorney's client trust account does not cloak those records with any special protection. To hold otherwise would give individuals the opportunity to use the attorney-client privilege for the impermissible purpose of masking fraud."); *see also United States v. Miller*, 425 U.S. 435, 442 ("[N]o legitimate expectation of privacy" in financial records held by a bank) (internal quotations omitted). CAL's "responses asserting blanket privilege with no legal or factual support" yet again "constitute[] willful noncooperation." *See In re Disciplinary Action Against Colosi*, 977 N.W.2d 802, 808-9, 812-13 (Minn. 2022) ("There is ample support for the referee's findings and conclusions

that Colosi acted in bad faith when withholding [bank records] and responses under the guise of attorney-client privilege and that he failed to cooperate with the Director's investigation.").

At most, CAL asserts privilege because the Bank Records may show transfers of funds to law firms. Records showing the amount of funds transferred to an attorney do not reflect advice from the attorney to the client. *See In re Grand Jury Proc.*, 402 F. Supp. 2d 1066, 1067 (D. Minn. 2005) ("The privilege does not normally attach to fee arrangements because the attorney's fees are not typically a part of the confidential attorney-client relationship."); *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 247-48 ("While consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously. For this reason, absent special circumstances not present here, disclosure of fee information and client identity is not privileged even though it might incriminate the client.").

Further, the party resisting disclosure has the burden of showing that materials are work product, which CAL has not done here. *See Malone*, 655 F.2d at 887. "[B]ank records . . . generated by a third party (the bank) and sent only to the [] [] Law Firm . . . [a]re not created by [the attorney], and the records are produced in the ordinary course of the bank's business, so it is difficult for the court to discern how those records may reflect [the attorney's] work product or trial theories." *SPV-LS, LLC v. Transamerica Life Ins. Co.*, No. 4:14-CV-04092-LLP, 2016 WL 3620745, at *2 (D.S.D. June 29, 2016); *see also*

*Malone*, 655 F.2d at 886-87 (same); *In re Grand Jury Subpoena*, 784 F.2d 857, 859 n.3, 862 (same).

Accordingly, the entirety of the Bank Records should be immediately produced to Plaintiffs.

## II. Discussion of CAL's banking and business practices is not confidential.

The Receiver has redacted banking and business practice information because CAL asserts, without any explanation or detail, that its banking and business practices require protection. Such an unsupported claim does not satisfy the standards for protection from disclosure.

For information to be confidential business information, the information must be exclusively used by CAL and not disclosed publicly. *United States v. Wirtz*, 357 F. Supp. 2d 1164, 1167-68 (D. Minn. 2005) (citing *Carpenter v. United States*, 484 U.S. 19 (1987)).[6] That is, the information must not be "generally known or readily ascertainable by persons who can make use of the information." *Id.* at 1168 n.1 (quoting *Minn. v. Philip Morris Inc.*, 606 N.W.2d 676, 688 (Minn. Ct. App. 2000)). CAL has made no such claim to the Receiver.

The Minnesota Supreme Court has identified four factors to determine whether information is confidential: "(1) the protected matter is not generally known or readily ascertainable, (2) it provides a demonstrable competitive advantage, (3) it was gained at expense to the employer, and (4) it is such that the employer intended to keep it

---

[6] Federal courts apply state law to determine whether information qualifies as confidential. *See Wirtz*, 357 F. Supp. at 1167.

confidential." *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 90 (Minn. 1979); *see also Minn. Min. & Mfg. Co. v. Kirkevold*, 87 F.R.D. 324, 334-35 (D. Minn. 1980) (applying the *Cherne* factors to determine whether plaintiff's information was confidential). This inquiry primarily focuses on whether the company treated the information as confidential. *Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 398 (D. Minn. 2020) ("[A] company's efforts (or lack thereof) to protect information may be dispositive of the question whether employees have a reason to know that it is confidential.").

CAL asserts that the entirety of its discussions with the Receiver regarding its "business practices, operations, cash flow and similar matters" are confidential. ECF 168 (Memo ISO Continued Sealing) at 2. CAL further asserts—again without detail—that its Bank Records, including the transfer of funds from its accounts to third parties, are confidential. *Id.* at 4. CAL's blanket claim of confidentiality, without any reasoning or explanation, does not satisfy Minnesota law.[7]

*First*, CAL provides no basis for its confidentiality claim regarding the information it provided to the Receiver, so the Court has no grounds on which to evaluate CAL's refusal

---

[7] CAL bears the burden to show that its Bank Records and the information regarding its business operations that it shared with the Receiver are confidential and should be withheld from Agri-Access. *Mead Corp. v. Riverwood Nat. Res. Corp.*, 145 F.R.D. 512, 515-16 (D. Minn. 1992). *See also In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991); *Wagner v. Dryvit Sys.*, 208 F.R.D. 608, 612 (D. Neb. 2001) ("To withhold information under a claim that the information is 'confidential' . . . [a party] must demonstrate the confidential and proprietary nature of the discovery and the need for non-disclosure.").

9

to authorize the disclosure of the documents and information to Agri-Access. *See Mead Corp. v. Riverwood Nat. Res. Corp.*, 145 F.R.D. 512, 515 (D. Minn. 1992) ("[A]n objection to a discovery request cannot be merely conclusory."). *Second*, CAL does not explain how the information about its business operations is or conceivably could be shielded from public knowledge. *See id*. (denying objection to disclosure because party had "presented no specific facts to support [its] objection"). As noted above, the confidentiality determination focuses on whether the company treated the information as confidential. *See Prairie Field Servs.*, 497 F. Supp. 3d at 398. Here, CAL has not provided *any* explanation about the nature of the information, nor any rationale for why that information should be withheld from Agri-Access.

CAL's confidentiality claim as to the entirety of the Bank Records also fails. *First*, the Bank Records do not contain descriptive or narrative information. *Second*, much of the relevant information in the Bank Records is available to third parties, including Fresno First Bank, the third parties who received transferred funds, and indeed the public. *See* ECF 34 (transfer to Michael and Cythia Graham), 35 (transfer to Dennis Morgan and J D Investments), 38 (transfer to Kristi Iness), *Compeer Financial, ACA v. Graham*, 1:25-cv-00049-JLT-SKO (E.D. Cal. Jan. 10, 2025). Accordingly, the Bank Records are not confidential because they fail on the fourth *Cherne* factor. *See Phillips v. Cook*, Civ. No. 09-1732, 2009 WL 10711665, at *2 (D. Minn. Nov. 2, 2009) (finding that "bank records, which show the specific detail of the flow of money into and out of these accounts— including the identity of the accounts of Defendants and individuals and organizations associated with Defendants" should not be treated as confidential).

10

Consequently, all of the Bank Records and an unredacted version of the Receiver's First Written Report should be immediately produced to Plaintiffs (and an unredacted version of the First Written Report should be filed on the docket). To the extent that the Bank Records or the First Written Report are found to contain confidential information that requires protection, the Receiver should immediately provide unredacted versions to Plaintiffs subject to the Protective Order, as discussed below.

**III. Even if parts of the Receiver's report and Bank Records are deemed confidential, they should nevertheless be immediately provided to Plaintiffs subject to applicable confidentiality restrictions.**

CAL cannot simply refuse to consent to the Receiver providing to Agri-Access the very information that the Court ordered the Receiver to uncover and produce. *See* ECF 118. Instead, even if information in the Receiver's First Written Report or the Bank Records was somehow deemed confidential (it is not), there are protections in place, the terms of which CAL negotiated with Agri-Access, that allow Agri-Access to receive confidential information. The underlying arbitration is governed by a Protective Order dated September 28, 2024 that provides for access to exactly the kind of information that CAL maintains is confidential and/or privileged, including with respect to CAL's business operations and information contained in the Bank Records.

The existence of a protective order is sufficient to permit disclosure of financial or other "confidential" information and overrule objections to such disclosure. *See, e.g., Lubrication Techs., Inc. v. Lee's Oil Serv.,* LLC, No. CIV. 11-2226 DSD/LIB, 2012 WL 1633259, at *11-12 (D. Minn. Apr. 10, 2012) (finding that "protective order already in place addresses and protects any concerns the Defendants may have that the information

11

[regarding Defendant's customer lists, bank accounts, transactions, corporate records and tax records] might be used by the Plaintiffs to obtain a competitive advantage") (internal citation omitted); *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 501-02 (D. Minn. 2011) ("Where the parties have agreed to a protective order, particularly one with 'Attorneys' Eyes Only' designation, even a very sensitive trade secret will be sufficiently protected and should be produced if relevant."); *High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2011 WL 4008009, at *2 (D. Kan. Sept. 9, 2011) (finding, where protective order had already been entered, "[i]t is well settled that confidentiality does not act as a bar to discovery and is not grounds to withhold documents or information from discovery").

The Protective Order here reads in relevant part that "[a]ny party or non-party may designate any documents, testimony, or other information produced, given, or exchanged in th[e] arbitration . . . as 'CONFIDENTIAL' or 'ATTORNEY EYES ONLY.'" Exhibit 1 (Arbitration Protective Order), ¶ 1. The "CONFIDENTIAL" designation may be applied to "currently non-public, confidential and/or proprietary business or personal information that the designating party would not normally reveal to third parties," including "financial information," "business and operations methods, including policies, practices, procedures, and protocols," and "internal business and corporate records, reports, strategies, decisions, and actions." Exhibit 1 (Arbitration Protective Order), ¶ 2. The Protective Order also allows the parties to designate materials as "ATTORNEY EYES ONLY" to address

information that if disclosed would result in competitive, commercial, or financial harm. Exhibit 1 (Arbitration Protective Order), ¶ 3.[8]

These definitions are broad enough to encompass any "discussion of the business operations of CAL and many of the transfers and other information contained in the Bank Records." ECF 168 (Memo ISO Continued Sealing), ¶ 10. Plaintiffs will, of course, continue to comply with the terms of the Protective Order as they have since it was entered.

As such, even if the Court needs additional time to consider the Receiver's motion or decides that some information can be appropriately shielded from *public* disclosure, the Receiver should provide unredacted versions of his report and the entirety of the Bank Records to Plaintiffs immediately.[9]

## CONCLUSION

Plaintiffs respectfully request that the Court order the Receiver to (1) immediately produce the entirety of the Bank Records to Plaintiffs; (2) immediately produce an

---

[8] "Except with the prior written consent of the producing party," any documents, testimony, or other information produced, given, or exchanged in the arbitration and designated as "CONFIDENTIAL" "shall not be disclosed or disseminated to any person or entity, except" a limited list of individuals, including the parties to the arbitration, their counsel, experts and consultants, third-party vendors, the arbitrators, and any court and associated personnel. *Id.* at ¶ 9. Information designated as "ATTORNEY EYES ONLY" is subject to further restrictions and cannot be disclosed to the parties, deponents, or any potential or actual witness in the arbitration in preparation for or during any hearing or other proceedings in the arbitration. *Id.* at ¶ 10.

[9] For materials that will be publicly filed on ECF, Plaintiffs do not object to the redaction of personally identifiable information ("PII"), such as bank account and Social Security numbers and any other redactions that are required to comply with applicable local rules. No such redactions are appropriate or required for materials provided to Plaintiffs, who are bound by the Protective Order.

unredacted version of the entirety of the Receiver's First Written Report to Plaintiffs; and (3) to the extent that the Bank Records or the First Written Report are found to contain confidential information that requires protection, provide unredacted versions to Plaintiffs subject to the Protective Order.

Dated: May 5, 2025               Respectfully submitted,

**JONES DAY**

*/s/ Joseph Boylan*_____
Christopher J. Lovrien*
Joseph J. Boylan*
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Phone: 213-243-2175
Email: cjlovrien@jonesday.com
          jboylan@jonesday.com

W. Anders Folk (MN #0311388)
90 South Seventh Street
Suite 4950
Minneapolis, MN 55402
Phone: 612-217-8800
Email: afolk@jonesday.com

*Attorneys for Plaintiffs Compeer Financial, ACA, Compeer Financial, PCA, and Compeer Financial, FLCA*

*Admitted pro hac vice