# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Compeer Financial, ACA; Compeer Financial, PCA; and Compeer Financial, FLCA, | Case No. 24-cv-01896 (JWB/ECW) |
| Plaintiffs, | |
| v. | **ORDER** |
| Corporate America Lending, Inc., | |
| Defendant. | |

This case is before the Court on the Receiver's Motion Regarding Continued Sealing of Receiver's First Written Report and for Instructions on Sharing of Documents with Plaintiffs ("Sealing and Sharing Motion"). (Dkt. 167.) The Court heard oral argument on the Motion on June 6, 2025, and issued an oral order granting the Motion in part and giving the parties further direction as to the remainder of the Motion. (*See* Dkt. 188 (minute entry summarizing ruling).) Among other things, the oral Order authorized the Receiver to provide the Merits Panel in AAA Case No. 01-24-0005-4234 an unredacted copy of his First Written Report (Dkt. 165) and unredacted copies of all subsequent Reports required by the Receivership Order. (*See* Dkt. 188; Dkt. 198 at

66:10-67:3.)[1]  The Court also ordered the parties to file certain letters, including ordering Defendant Corporate America Lending, Inc. ("CAL") to file a letter stating whether CAL withdraws its objections to the production of the unredacted First Written Report to Plaintiffs and to the disclosure and production of its bank records obtained by the Receiver as of the date of the Sealing and Sharing Motion ("Bank Records") in unredacted form to Plaintiffs and the Merits Panel, pursuant to the Protective Order in place in the underlying arbitration.  (*See* Dkt. 188; Dkt. 198 at 68:23-69:2.)

On June 10, 2025, CAL withdrew its objections to the production of the Receiver's First Written Report to Plaintiffs; withdrew its objections to the disclosure and production in unredacted form of the Bank Records obtained by the Receiver to Plaintiffs and the Merits Panel, subject to the Protective Order in place in the underlying Arbitration.  (Dkt. 195 at 1.)  Further, CAL stated that it had no objection to the Receiver interviewing any of the third parties identified in the First Written Report or Bank Records, to the Receiver serving discovery on any of such third parties, or to the Receiver requesting such third parties' bank records.[2]  (*Id*.)  On June 11, 2025, CAL filed an additional letter stating: "CAL's agreement to withdraw its objection to the production of

---

[1]  Citations to the June 6, 2025 hearing transcript are in page:line format.  Unless otherwise noted, page number citations to materials filed on the docket are citations to the CM/ECF pagination.

[2]  CAL filed another letter authorized by the Court disputing certain statements in a demonstrative filed by the Receiver (Dkt. 196; *see also* Dkts. 190-191 (sealed and redacted versions of the demonstrative); Dkt. 198 at 12:12-19 (authorizing filing of CAL's letter)), and Plaintiffs filed a letter regarding the scope of discovery (Dkt. 194; *see also* Dkt. 198 at 36:17-37:20 (authorizing filing of Plaintiffs' letter)).

the bank records that the Receiver obtained in unredacted form to Plaintiffs and the Merits Panel, was intended to be subject to the Court's ruling on CAL's argument that entries relating to law firm transfers were protected from disclosure by the attorney client privilege." (Dkt. 197 at 1.)  Thus, the only remaining objection for the Court's resolution as to the First Written Report and Bank Records is whether entries relating to law firm transfers are protected from disclosure by the attorney client privilege.  This Order rules on that objection, rules on the question of continued sealing of the First Written Report, and gives the parties direction with respect to future disclosures and Reports by the Receiver.

## I.  CAL'S ATTORNEY CLIENT PRIVILEGE OBJECTION

The Court begins with CAL's remaining objection articulated in connection with the Sealing and Sharing Motion, which is based on a theory that the attorney client privilege prevents disclosure of entries relating to law firm transfers in the Bank Records. The Court observes that CAL's Response to the Sealing and Sharing Motion did not contain any argument or authority supporting an attorney client privilege objection.  (*See* Dkt. 187.)  Indeed, the only mention of that privilege in CAL's brief was the statement that "Plaintiffs unsuccessfully sought to use the receivership as an opportunity to impose a multitude of improper and punitive measures, including . . . gaining unfettered access to CAL's records and information, and requiring the waiver of CAL's attorney-client privilege and work product doctrine protections." (*Id.* at 7.)

That said, at the June 6, 2025 hearing, CAL cited the case of *Los Angeles County Board of Supervisors v. Superior Court*, 386 P.3d 773 (Cal. 2016), to support its assertion

3

that the contents of attorney invoices, including amounts, "may be privileged if sought in a pending matter." (Dkt. 198 at 41:16-42:4.) In that case, the California Supreme Court held:

> [W]hile billing invoices are generally not "made for the purpose of legal representation," the information contained within certain invoices may be within the scope of the privilege. To the extent that billing information is conveyed "for the purpose of legal representation"—perhaps to inform the client of the nature or amount of work occurring in connection with a pending legal issue—such information lies in the heartland of the attorney-client privilege. And even if the information is more general, such as aggregate figures describing the total amount spent on continuing litigation during a given quarter or year, it may come close enough to this heartland to threaten the confidentiality of information directly relevant to the attorney's distinctive professional role. The attorney-client privilege protects the confidentiality of information in both those categories, even if the information happens to be transmitted in a document that is not itself categorically privileged. When a legal matter remains pending and active, the privilege encompasses everything in an invoice, including the amount of aggregate fees. This is because, even though the amount of money paid for legal services is generally not privileged, an invoice that shows a sudden uptick in spending "might very well reveal much of [a government agency]'s investigative efforts and trial strategy." (Mitchell, supra, 37 Cal.3d at p. 610, 208 Cal.Rptr. 886, 691 P.2d 642.) Midlitigation swings in spending, for example, could reveal an impending filing or outsized concern about a recent event.

386 P.3d at 781.

The Court is not persuaded by CAL's reliance on *Los Angeles County Board of Supervisors*. First, it is not clear that the Court should apply California privilege law to this issue. It is true that federal courts sitting in diversity jurisdiction apply state law to attorney-client privilege claims. *See Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). But the agreement underlying this dispute states that it shall be governed by and construed in accordance with the law of the State of Minnesota. (*See*

4

Dkt. 3 at 19 § 9.1 ("Governing Law"); *see also* Dkt. 1 ¶ 18 (quoting the "Governing Law" provision).) Thus, it may well be that Minnesota law applies to the privilege issue, and notably, CAL has cited no Minnesota case shielding entries relating to law firm transfers from disclosure based on attorney client privilege.[3] In fact, Minnesota cases discussing whether billing records are privileged suggest that entries in bank records showing financial transactions between a client and an attorney would not be protected by the attorney client privilege because the entries are not legal advice. *See, e.g.*, *City Pages v. State of Minnesota*, 655 N.W.2d 839, 844 (Minn. Ct. App. 2003) ("Because billing records are not 'communication made by the client,' they come under the privilege only if they are 'attorney's advice given [on a client's communication] in the course of professional duty.'") (quoting Minn. Stat. § 595.02, subd. 1(b) (2000)); *see also Arctic Cat Inc. v. Polaris Indus. Inc.*, Nos. 16-CV-0009 (WMW/HB), 16-CV-0010 (WMW/HB), 2017 WL 6187325, at *1 (D. Minn. May 15, 2017) ("While billing records that reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services performed, such as researching particular areas of the law, fall within the privilege, billing records that do not reveal communications between counsel and clients, are usually not privileged.") (citations and quotation marks omitted).

---

[3]   With respect to CAL's privacy-based objections, Plaintiffs stated that it did not matter if the Court applied California or Minnesota state law and CAL stated that "at the end of the day, it's a balancing test." (Dkt. 198 at 34:4-12 (Plaintiffs), 44:18-45:7 (CAL).) In any event, CAL withdrew its privacy-based objections in its June 10, 2025 letter. (Dkt. 195 at 1.)

Even if the Court applies California state law, "*Los Angeles Cnty. Bd. of Supervisors* [] does not support the proposition that the attorney-client privilege categorically shields billing information from disclosure." *Castillo v. Troon Enters., Inc.*, No. ED CV 19-305-DSF (SPx), 2019 WL 7945613, at *2 (C.D. Cal. Dec. 20, 2019) (citation omitted). Rather, the inquiry is nuanced. *See Los Angeles Cnty. Bd. of Supervisors*, 386 P.3d at 781 ("[T]he amount of money paid for legal services is **generally** not privileged.") (emphasis added). And under both Minnesota and California state law, the burden in on CAL to make at least a preliminary showing that the privilege applies. *See Costco Wholesale Corp. v. Superior Ct.*, 219 P.3d 736, 764 (Cal. 2009) ("The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise . . . .") (citations omitted); *see also Kobluk v. Univ. of Minnesota*, 574 N.W.2d 436, 440 (Minn. 1998) ("[T]he party resisting disclosure bears the burden of presenting facts to establish the privilege's existence.") (citations omitted).

Here, even if the Court assumes that the Bank Records contain still undisclosed "entries relating to law firm transfers" (which is not entirely clear from the record), CAL has not identified facts showing the attorney client privilege would apply to those entries under California or Minnesota law. Again, CAL made no argument as to the attorney client privilege in its response to the Sealing and Sharing Motion, and its only argument at the June 6, 2025 hearing was that CAL asserted a privilege over amounts paid to law firms based on *Los Angeles County Board of Supervisors*, without any further explanation. (*See* Dkt. 198 at 41:13-42:4.) CAL declined to submit any supplemental briefing after the June 6, 2025 hearing. (*Id.* at 70:8-16.) CAL also has not submitted any

6

evidence (*in camera* or otherwise) showing those entries constitute the type of "aggregate" information that "could reveal an impending filing or outsized concern about a recent event" or otherwise reveal privileged information about a matter "pending" at the time of the transaction. *See Los Angeles Cnty. Bd. of Supervisors*, 386 P.3d at 781. Based on the current record, the Court finds that CAL has not made a preliminary showing that entries relating to law firm transfers in the Bank Records are attorney client privileged under the theory set forth in *Los Angeles County Board of Supervisors* (or any other theory). The Court overrules CAL's objection based on attorney client privilege to the production of unredacted copies of the Bank Records to the Merits Panel and Plaintiffs. As CAL has withdrawn its other objections (*see* Dkt. 195), the Court authorizes the Receiver to produce unredacted copies of the Bank Records to the Merits Panel and to Plaintiffs no later than 15 days after the date of this Order.[4]

---

[4] The Bank Records are for the period of February 2024 to March 2025. (Dkt. 168 ¶ 4.) Plaintiffs originally sought the Bank Records from the Receiver for the date range of April 28, 2024 to the present, but now seek those records for the period of January 2024 to the present based on its document requests in the underlying arbitration. (Dkt. 194.) The Court agrees with Plaintiffs that transactions for a period preceding the April 29, 2024 payoff of the loans at issue are necessary to put the post-April 29, 2024 transactions in context and therefore are relevant to the issues in this case. The Court authorizes the Receiver to produce all of the Bank Records to Plaintiffs, which apparently encompass February 2024 to March 2025. To the extent Plaintiffs seek bank records going back to January 1, 2024 based on its discovery in the arbitration, the Court cannot authorize the Receiver to produce records it does not appear to have at this time. *See Edeh v. Equifax Info. Servs., LLC*, No. CIV. 11-2671 SRN/JSM, 2013 WL 1749912, at *9 (D. Minn. Apr. 23, 2013) ("A party is only required to produce discovery which is within its possession or control."), *aff'd*, 291 F.R.D. 330 (D. Minn. 2013).

## II.   CONTINUED SEALING OF THE FIRST WRITTEN REPORT

The Court turns to the sealing question as to the First Written Report. American courts "recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted). The Receiver filed his First Written Report under seal at Docket Entry 165 and publicly in a redacted form at Docket 166. (Dkts. 165-66.) CAL objects to the unsealing of the unredacted First Written Report on the grounds that the redacted portions implicate the privacy interests of third parties and would reveal CAL's "business operations." (*See generally* Dkt. 187.)

The Court has carefully reviewed the First Written Report. The Court finds that CAL's argument that the specific descriptions of its "business operations" should remain sealed are unsupported, as the descriptions do not appear to describe any confidential, proprietary, or trade secret information. Indeed, CAL has not made any specific argument as to any such description. The Court therefore concludes that information in the paragraphs 8, 12, 13, 14, 20, 29, and 33 should not remain under seal.[5] Similarly, CAL has not explained why the name of the entity in paragraph 10 should remain under seal. The Court concludes that there is no basis to keep that entity's name under seal.

---

[5]   The Court recognizes that, as with the demonstrative at Docket Entries 190 and 191, CAL may disagree with the Receiver's description of certain business operations in the First Written Report. The Court does not require records or information to remain under seal because one party disagrees with the content. Nothing in this Order is intended or should be construed as the Court's approval or disapproval as to any description or content in the First Written Report.

8

The First Written Report also contains descriptions of certain financial transactions that include the names of the parties to the transactions, the amount of the transactions, and in some cases, the last four digits of the account initiating or receiving the transaction. The Court concludes that the need to maintain such financial and identifying information under seal to protect certain privacy interests outweighs the public's right of access **at this point in the litigation**. *See* D. Minn. LR 5.6(d) *advisory committee's note*; *IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013). This finding is further based on the fact that the First Written Report was not filed in connection with any motion, but instead as a report to the Court. However, the Court emphasizes that this decision is not determinative as to whether this information will remain sealed in the future to the extent that such Reports are considered by the Court with respect to future motions, including dispositive motions. *See In re Baycol Prod. Litig.*, No. 08-CV-5758 (MJD/ECW), 2021 WL 1893897, at *4 (D. Minn. May 11, 2021). Accordingly, the Court finds that the names of the parties to transactions, the amount of the transactions, and the account numbers involved in the transactions in paragraphs 23 and 26.a to 26.r should remain sealed. This includes the tables in paragraph 26. Further, the amount of the cash book balances for all identified accounts in the last sentence of paragraph 11 should remain sealed.

The Receiver is ordered to publicly filed a redacted First Written Report consistent with this Order no later than 10 days after the date of this Order, unless any party files a good faith motion for further consideration of sealing pursuant to Local Rule 5.6(f)

within 7 days of the date of this Order.[6] Any response to a motion for further consideration of sealing must be filed no later than 7 days after such motion is filed.

### III.   GUIDANCE TO THE PARTIES

Finally, the Court gives the parties the following guidance as to the additional Reports by the Receiver and treatment of discovery obtained by the Receiver. The Court sets forth this process so the Receiver can conduct his investigation and provide the Reports required by the Receivership Order with minimal delay while giving parties sufficient time to object to disclosures and public filing.

As to Reports, the Receiver must file his Report consistent with the deadlines set by the Receivership Order. (*See* Dkt. 118 ¶ 11.) Each Report must be filed under temporary seal. Any party may object to the unsealing of the Report by filing objections setting forth specifically what portions of the Report that party believes should be redacted and the basis for the objection no later than 7 days after the Receiver files the Report. If no objections are filed by that deadline, the Report will be unsealed. Any response to objections must be filed 7 days after the filing of the objections.

The Court has already authorized the Receiver to provide the Reports in unredacted form to the Merits Panel. (*See* Dkt. 188; Dkt. 198 at 66:10-67:3.)

As to providing Reports to Plaintiffs, the Court notes that the Receivership Order authorizes—and in fact requires—the Receiver to provide the Reports to Plaintiffs. (*See*

---

[6]   The standard deadline for a motion for further consideration of sealing under Local Rule 5.6(f) is 21 days. D. Minn. LR 5.6(f). The Court shortens the deadline to 7 days for the First Written Report because the Court has already entertained briefing and argument as to that Report.

Dkt. 118 ¶ 11.) The Court therefore imposes a shorter deadline for CAL to file objections to the Receiver's provision of the Reports to Plaintiffs. CAL must file any such objections no later than 3 days after the Receiver files the Report. Any response to the objections must be filed 3 days after the filing of the objections. If CAL does not timely file objections, the Receiver must provide an unredacted copy of each Report to Plaintiffs after the deadline expires without further order of the Court.

As to discovery sought and received by the Receiver, consistent with the Court's direction at the June 6, 2026 hearing, the Receiver must copy Plaintiffs and CAL on all discovery requests. (Dkt. 198 at 62:10-63:3.) The Receiver must provide the discovery responses and productions to CAL no later than 3 days after they are served on the Receiver. If CAL objects to the Receiver providing the responses and productions to Plaintiffs, CAL must notify the Receiver and Plaintiffs of its objections no later than 3 days after the Receiver serves the responses and productions on CAL, must then meet and confer with the Receiver and Plaintiffs by telephone or video conference to see if the parties can reach agreement, and must file its objections no later than 7 days after service of the responses and productions on CAL. Any response to the objections must be filed 7 days after the filing of the objections.

Finally, the Receiver notified the Court during the hearing that it was beginning a forensic review of CAL's emails and reviewing them for privilege. (Dkt. 198 at 60:5-12.) The Court expects the parties to timely meet and confer to the extent CAL asserts any privilege as to any communications. If they cannot resolve their dispute, CAL must

file a motion seeking a protective order with respect to any communications it asserts are privileged no later than 7 days after the parties meet and confer.

The parties and their counsel are cautioned that the Court may award attorneys' fees and costs if an objection is overruled and the Court finds that the objection was not substantially justified, or if an objection is sustained and the Court finds the opposition to the objection was not substantially justified. The parties should keep in mind the Court's guidance at the June 6, 2025 hearing and in this Order when making or opposing objections.

**SO ORDERED.**

Dated: June 20, 2025                    *s/Elizabeth Cowan Wright*
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge