UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Compeer Financial, ACA; Compeer Financial, PCA; and Compeer Financial FLCA,<br><br>     Plaintiffs,<br>v.<br><br>Corporate America Lending, Inc.,<br><br>     Defendant. | Civ. No. 24-1896 (JWB/ECW)<br><br><br><br>**RECEIVER'S THIRD WRITTEN REPORT** |

_____

  T. Scott Avila, the Receiver appointed pursuant to the *Order Appointing Receiver*, dated March 27, 2025 (Docket No. 118) (the "Receivership Order"), hereby files this *Receiver's Third Written Report* (the "Third Report") in accordance with Paragraph 11 of the Receivership Order and the Court's *Order on the Receiver's Motion Regarding Continued Sealing of Receiver's First Written Report and for Instructions on Sharing of Documents with Plaintiffs* entered on June 20, 2025 (Docket No. 206) (the "June 20 Order").

## PRELIMINARY STATEMENT

  1. The Receiver filed the Receiver's First Written Report (the "First Report") on April 28, 2025 and the Receiver's Second Written Report (the "Second Report")[1] on June 27, 2025. Pursuant to the Receivership Order, the Receiver was charged with

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Report and Second Report, as applicable.

303841797v3

investigating, identifying, locating and where possible, recovering the Payoff Proceeds. By the time of the filing of the Second Report, the Receiver had substantially completed the investigation and tracing of the Payoff Proceeds and had identified the known transferees of those funds. A concise summary of the disposition of the Payoff Proceeds, based on the Receiver's investigation, is fully set forth in paragraph 2 of the Second Report.

2. With the tracing of the Payoff Proceeds substantially finished, the investigation has moved from "where did the money go" to "how should recovery be undertaken" (if at all). The Receiver is finalizing his analysis of potential targeted actions against identified transferees, and will soon seek a status conference with the Court regarding next steps in the receivership and the structure under which that should proceed, which may include initiating new recovery efforts from transferees.

## REPORT

**I.   The Performance of the Receiver's Duties**

   *a. Weekly Management Meetings Between CAL and the Receiver*

3. Since the filing of the Second Report, no management meetings have taken place between CAL and the Receiver. As noted in the Second Report, Mr. Cook had declined to attend any weekly meetings since June 10, 2025. Up to that point, any meetings he did attend proved to be of limited value. Subsequent to June 10, 2025, no weekly meetings have taken place due to Mr. Cook's alleged health issues.

   *b. No Additional Site Visits*

4. There have been no additional site visits between the filing of the Second Report and the date hereof. All necessary data collection preservation activities were

conducted through previously established protocols. No material operational issues were observed during this period.

### c. Discovery

5. As noted in the First Report at paragraph 19, the Receiver engaged a digital forensics firm, IDS, to perform backups of CAL's servers and data files for the relevant period, as well as various other tasks, including (i) utilization of applicable technical functions to identify and segregate any files that could potentially be considered privileged communications between Mr. Cook and his counsel not explicitly falling within the scope of the Receivership Order; (ii) performance of keyword search analyses to assist in identifying certain transfers; and (iii) support of the Receiver in any additional forensic accounting analyses as appropriate.

6. IDS segregated roughly *five (5) terabytes* of data. To date, the Receiver has not undertaken a detailed analysis of the segregated data. However, if collection efforts proceed, the Receiver would be required to more fully review and assess this data.

7. Pursuant to Paragraph 9(d) of the Receivership Order, Agri-Access has requested the production of documents that were backed up and secured from CAL's servers. The production request relates to twelve specific categories of information that were shared with CAL. At a high level, the categories of information relate to the Payoff Proceeds, including communications with the transferees, and CAL's former employees regarding the Payoff Proceeds, the commingling of the Payoff Proceeds, the transfers identified in the Receiver's First and Second Reports, various loans and payments related thereto, and communications relating to the arbitration.

8. Consistent with the June 20 Order, the Receiver instructed IDS to (i) execute targeted searches responsive to Agri-Access's requests (working with Agri-Access to develop and identify search terms), (ii) segregate potentially privileged attorney-client communications so that CAL may assert any objections, (iii) compile the resulting data set, and (iv) export all responsive material to the designated document-review platform. Because the approximately five (5) terabytes of data preserved in April 2025 had been copied and segregated, but not indexed, IDS first was required to index the data before any searches were possible. The Receiver is now working with IDS to finalize the compilation and production of responsive documents in accordance with the discovery protocol established by the June 20 Order.

9. Owing to the volume of data extracted from CAL's servers—and the attendant requirement that CAL's counsel review each document for privilege—the Receiver expects that the production process will occur to Agri-Access on a "rolling basis" and will take at least a two to three additional weeks after production begins.

**II.    Next Steps**

10. The Receiver, Katten, and Paladin have prepared a draft task list and budget enumerating specific investigative, discovery and litigation steps, including depositions, subpoenas, fraudulent transfer complaints, and a proposed expansion of the receivership over CAL itself, together with estimated professional fees. The Receiver intends to bring this analysis before the Court for guidance, direction and approval on whether to undertake recovery efforts, and, if necessary, approval for any necessary expansion of powers and approval of the resulting costs involved.

303841797v3

Dated: August 26, 2025  Respectfully submitted,

<u>/s/ T. Scott Avila</u><br>
T. Scott Avila, Court-Appointed Receiver

303841797v3