# Exhibit 2

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL

COMPEER FINANCIAL, ACA/FLCA/PCA

f/k/a AgStar Financial Services ACA/FLCA/PCA

doing business as Agri-Access, Claimant

v. AAA Case No. 01-24-0005-4234

CORPORATE AMERICAN LENDING, INC., Respondent

INTERIM AWARD OF MERITS PANEL ON PHASE II

We, the Undersigned Arbitrators, have been designated in accordance with the arbitration agreement of the parties contained in their Origination, Field Servicing & Master Participation Agreement ("MPA") dated April 15, 2015, have been duly sworn, and have duly heard the proofs and allegations of the parties, hereby issue this Interim Award on Phase II as follows:

PROCEDURAL HISTORY

On January 13, 2025, an evidentiary hearing was conducted on the bifurcated Phase I of this arbitration, as originally ordered in Scheduling Order # 1 of September 18, 2024, and redefined in the Sanctions Order of the Merits Panel of November 26, 2024. Prior to that Sanctions Order, the Respondent's motion to reconsider bifurcation was denied by the Interim Award of Merits Panel of October 18, 2024, and subsequent to the Sanctions Order, the Respondent's objection to the hearing location and Respondent's motion to stay the Phase I hearing were denied by Pre-Hearing Order of

December 26, 2024. On February 4, 2025, a Partial Final Award of Merits Panel on Phase I was issued. That Award and its Reasoning are incorporated into this Interim Award as though set forth in full herein.

By Scheduling Order # 2, issued on February 25, 2025, the procedural timetable for Phase II of this arbitration was established. The Phase II issues included two affirmative claims by Claimant regarding a request for assignment by Respondent on two loans, a claim for set off by Respondent to any recoveries by Claimant, and Respondent's Counterclaims. The evidentiary hearing on those issues was scheduled for May 26 through May 30, 2025. On April 7, 2025, Respondent filed a request to stay the Phase II hearing. Of note, the court-appointed Receiver of Respondent did not join in the request to stay the Phase II hearing. By email dated April 10, 2025, Respondent's request for a stay was denied.

By Order dated May 3, 2025, Claimant's motion for summary judgment was denied. On May 8, 2025, Respondent advised that certain witnesses listed on its preliminary list of witnesses would not be called to testify at the hearing, which meant that Respondent would not be presenting any evidence in support of its Counterclaims or offset defenses. As a result, Claimant withdrew its Motion for Additional Discovery. On May 9, 2025, Respondent further advised that it would "abandon prosecution of CAL's counterclaims and offset affirmative defenses". Thereafter, counsel agreed to conduct the remaining evidentiary hearing by Zoom and to commence the hearing on May 28, 2025. Finally, on May 21, 2025, two days after filing its prehearing brief, Respondent filed a Notice of Dismissal which purported to dismiss its Counterclaims "without prejudice".

On May 28, 2025, the Phase II evidentiary hearing was conducted. Claimant called a single witness to support its claims of breach of contract by Respondent's failure to assign its interest in the two subject loans. Respondent did not call any witnesses. On June 11, 2025, the parties each submitted its Proposed Award.

## JURISDICTION

Throughout this arbitration, Respondent has raised issues concerning the jurisdiction of this Panel, alleging in Phase I that both the MPA and the arbitration agreement within the MPA were unlawful and thus did not provide jurisdiction to proceed with this arbitration, and alleging in Phase II that the Panel had no jurisdiction to decide whether the dismissal of the counterclaims was with or without prejudice. The Panel has concluded that both the MPA and the arbitration clause are lawful and provide jurisdiction for this arbitration. The Panel concluded that Respondent has either confirmed or not objected to the jurisdiction of the Arbitrators, as detailed hereafter.

On May 28, 2024, in opposition to Claimant's request for an emergency arbitrator, Respondent sought relief under the MPA, stating "This matter must be heard by a panel of three arbitrators selected in the manner set forth in the MPA." On May 29, 2024, Respondent submitted a Declaration of its chief executive officer, Ron Cook, stating "I am willing to enter into an agreement that preserves the Payoff Proceeds pending the resolution of [this arbitration]." On June 3, 2024, Counsel for Respondent stipulated to an interim award of the emergency arbitrator. On that same date Counsel reported to the Emergency Arbitrator that the Payoff Proceeds were being reacquired. On June 20, 2024, Counsel argued to the District Court that it should defer to the arbitration, where Respondent argued that extensive proceedings were already underway. Of course, Respondent participated in the initiation of this arbitration, selected its party-appointed arbitrator on this Panel, and sought to move issues from the Court to this Panel. Although Respondent objected to the bifurcation of the arbitration, it did not do so on jurisdictional grounds but instead affirmatively requested a two-day hearing before the Merits Panel on the bifurcation and sanctions issues, which request the Panel granted and about which the requested hearing – at which Respondent was represented by three law firms – was held. Respondent not only made affirmative defenses, but it also asserted counterclaims seeking affirmative relief from this arbitration.

Based on the evidence presented at the hearing, the arguments of Counsel, the prior Orders and Awards of this Panel referred to above, the Awards and Orders of the Emergency Arbitrator and of the United States District Court, and all the files, records, and proceedings herein, we issue the following:

FACTUAL FINDINGS

1. On February 4, 2025, this Panel held that "The MPA is legal, valid, and enforceable, and Respondent's arguments to the contrary are DENIED." To the extent Respondent reserved any arguments as to the legality, validity, or enforceability of the MPA to be addressed in Phase II, those arguments are hereby DENIED.

2. The claims, defenses, and counterclaims of the Parties, including all of the issues associated with Phase II of this arbitration, are subject to the jurisdiction of this arbitration, as this Panel previously held on February 4, 2025, and as tis Panel reaffirms here. The Phase II hearing was conducted on all of Claimant's remaining claims in its Statement of Claim that were not addressed in Phase I (which was "essentially limited to the right of Claimant to remittance of the Payoff Proceeds").

3. Respondent, and its counsel, were permitted to assert all relevant affirmative defenses to the claims addressed in Phase II and those defenses, to the extent they have not been abandoned (which abandoned defenses are addressed in more detail in Part V below), are DENIED. More specifically:

   a. <u>Respondent's affirmative defenses 1-6 and 9 related to alleged illegality, compliance with applicable law, and unconscionability</u>. Respondent's affirmative defenses related to its arguments that the MPA is void, illegal, or contrary to public policy, that Claimant has engaged in any unlawful activity, and that the MPA is unconscionable are DENIED. Despite having the full opportunity to present evidence and argument on these defenses, Respondent presented

no credible evidence or legal basis that supports their application here. Therefore, Respondent's affirmative defenses 1-6 and 9 are DENIED.

b. Respondent's affirmative defenses 7 and 8 related to Claimant's alleged bad faith and Respondent's alleged good faith. Despite having the full opportunity to present evidence and argument on these defenses, Respondent presented no credible evidence or legal basis that supports their application here. Therefore, Respondent's affirmative defenses 7 and 8 are DENIED.

c. Respondent's affirmative defense 10 of offset. Respondent voluntarily abandoned its affirmative defense of offset on May 9, 2025. Despite having the full opportunity to present evidence and argument on its defense of offset, Respondent presented no credible evidence or legal basis that supports its application here. For these reasons, and those described more fully in Part V below, Respondent's affirmative defense 10 is DISMISSED WITH PREJUDICE.

d. Other Defenses. All other factual and legal defenses advanced by Respondent and addressed during Phase II are without merit and are hereby DENIED.

4. The remaining claims of Claimant for Breach of Contract concerning Respondent's failure to assign its remaining interests in the Participated Loans are GRANTED. More specifically:

a. The MPA is a legal, valid, and enforceable contract.

b. Claimant performed under the MPA by purchasing 100% Participation Interests in the Participated Loans, paying Respondent monthly servicing fees due under each loan, providing a proper written notice of termination of the MPA under Section 8.1, and requesting assignment under Section 8.4.3.

c. Respondent breached the MPA by failing to immediately assign any and all outstanding interests or rights in the Participated Loans following Claimant written notice of termination of the MPA under Section 8.1 and request for assignment under Section 8.4.3. For the avoidance of doubt, those interests include not only Respondent's remaining interests for the outstanding Verve and Riverdale Loans, but also include any rights and interests Respondent has or had under the Financial Services Agreements entered into between Respondent and any of its borrowers for the Participated Loans.

d. Respondent has offered no credible contractual or legal basis to excuse its performance of its contractual obligations upon Claimant's termination of the MPA under Section 8.1 and request for assignment under Section 8.4.3.

5. By reason of the breach of contract finding above, the claims of Claimant for Breach of Implied Covenant of Good Faith and Fair Dealing and Unjust Enrichment have become moot.

6. Monetary damages alone are inadequate to compensate Claimant for Respondent's breaches of the MPA. The record reflects that as lender of record on the Participated Loans, Respondent retains the ability to harm Claimant's interests in the Participated Loans, and both Claimant and the borrowers are or at least may be harmed by the cloud Respondent has created over who can properly take action as to each of the Participated Loans, and the resulting obstruction and delay to loan actions and borrower requests.

INTERIM AWARD

7. In light of the foregoing, the Panel hereby AWARDS the following relief:

a. Respondent is hereby ORDERED to SPECIFICALLY PERFORM its contractual obligations

pursuant to Section 8.4.3 of the MPA, which require Respondent to "immediately assign any interest or rights [Respondent] has in the Participated Loan or Loans . . . to [Claimant]."

b. Respondent, its officers, and agents are further ORDERED to undertake any and all actions within their power necessary to effectuate the required assignment pursuant to Section 8.4.3 of the MPA, including but not limited to the following:[1]

   1. Executing an assignment and assumption agreement to assign the Loan Documents in the Participated Loans, including any Financial Services Agreements (see, e.g., **Exhibit A**).

   2. Executing allonges to the notes for the Verve and Riverdale loans (see, e.g., **Exhibit B**).

   3. Executing and recording an assignment of the deed of trust for each of the Verve and Riverdale loans (see, e.g., **Exhibit C**).

c. Respondent is further ORDERED to pay Claimant interest of $141,006.64 through June 11, 2025, plus interest accruing thereafter. This amount reflects the 10% interest rate under Minn. Stat. § 549.09(b), (c)(2) on amounts paid by the Verve borrowers to the Fresno Superior Court, rather than to Claimant, as a result of Respondent's breaches and bad faith conduct described above. To the extent that the amounts paid into Court were in an interest-bearing account, any interest earned on those amounts shall be credited against this monetary award.

d. Because Claimant is the prevailing party in this Arbitration, Respondent is further ORDERED to pay "all enforcement-related costs, expenses, and reasonable attorney fees" incurred by

---

Claimant, pursuant to Section 9.13 of the MPA as well as AAA Rules 49(c) and 60. The record is held open only to receive submissions relating to Claimant's attorneys' fees and costs. Claimant shall submit its application for attorneys' fees and costs no later than 14 calendar days following the issuance of this Award. Such application shall exclude all fees and costs previously requested or awarded to Claimant Agri-Access in this arbitration. Respondent shall submit any opposition to Claimant's application within 14 calendar days following submission of the application.

8. The actions ordered to be taken shall be performed, and amounts awarded to Claimant shall be paid, within 30 days of the issuance of this Phase II Merits Award.

9. On May 9, 2025, counsel for Respondent sent an email to the Panel and counsel for Claimant which read, in full:

> Following-up on the below email, as the Panel has been informed we know of only two witnesses with personal knowledge of the facts necessary to support Corporate America Lending, Inc.'s ("CAL") counterclaims and offset affirmative defenses—Messrs. Cook and Aretakis. As the Panel also knows, given the pendency of the federal criminal investigation that was initiated by Compeer, and at the direction of their respective independent counsel, neither Mr. Cook nor Mr. Aretakis will testify at the Phase II hearing. And, because the Panel denied CAL's motion to continue the arbitration proceeding until the conclusion of the federal criminal investigation, CAL is reluctantly compelled to abandon prosecution of CAL's counterclaims and offset affirmative defenses. CAL intends to put on its defenses to Claimants' remaining claims at the Phase II hearing. All counsel are copied on this email.

In response to Respondent's abandonment of its counterclaims and offset defenses, by email dated May 14, 2025, counsel for Claimant requested that the Panel issue a partial final award dismissing those counterclaims and defenses with prejudice. On May 28, 2025, the Phase II merits hearing was held. The parties were each given full opportunity to present their respective cases.

Respondent did not put forward any evidence in support of its counterclaims and offset defenses. Except for Claimant's forthcoming request for fees and costs relating to Respondent's counterclaims and offset defenses, for which judgment is reserved, this Phase II Merits Award is in full resolution of all of CAL's counterclaims and offset defenses submitted to Phase II of this arbitration. All of CAL's counterclaims and offset defenses are hereby DISMISSED WITH PREJUDICE.

11. This Interim Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute the Interim Award of the Panel.

12. This Interim Award shall remain in full force and effect until such time as a Final Award is rendered.

## REASONING

A. Respondent breached the MPA

Section 8.1 of the MPA provides that either party "may terminate this Agreement at any time upon 30 days prior written notice to the other party." Such termination may be with or without cause and there are no limitations other than the 30 days-notice. (Given the wrongful taking, retaining, and alienating of the Payoff Proceeds, as found in Phase I, there was a core breach of the MPA and obvious cause). On July 15, 2024, Claimant notified Respondent that it was terminating the MPA, effective 30 days later on August 14, 2024, and requested that Respondent assign its remaining interest in the Verve and Riverdale loans to Conterra, the new servicer of the loans, as required by Section 8.4.3 of MPA. Respondent refused to make the assignments, and instead purported to revoke the Powers of Attorney that Respondent had previously issued to Claimant with respect to those loans. Further, Respondent instructed Verve to disregard any notices from Claimant and continue to make payments to Respondent.

Respondent's refusal to assign its interest in these two loans is a clear breach of its mandatory obligations under the MPA, following the lawful termination under Section 8.1. Respondent did not present any evidence to support its alleged defenses to this breach, meaning that liability is fully established. Given liability for breach of contract, the alternative claims for breach of an implied covenant of good faith and fair dealing and for unjust enrichment are moot and need not be addressed.

B. Claimant is entitled to Specific Performance

Absent the assignments, Respondent remains the lender of record on these two loans even though Claimant owns 100% of the economic interest and carries 100% of the risk. In such case, an award of damages for Respondent's breach would not be an adequate remedy because it would not provide Claimant with the full range of rights and remedies under the loans. Moreover, the assignments will fairly vindicate Claimants rights and place it in the position contemplated and required by the MPA.

Respondent argues that specific performance is not permitted under the arbitration clause in the MPA, relying on the prohibition in Section 7.1(c) against awarding "specific performance of any discretionary powers to [Respondent] under the terms of this Agreement." But that argument must fail because Respondents contractual obligation to make the assignments is mandatory and does not involve any discretionary powers.

This Award includes the direction that Respondent also assign its interest in any FSAs that Respondent may have had with borrowers. Although Claimant was not aware of these FSAs at the time of the MPA, Section 8.4.3 contemplated that Respondent would assign all interests and rights it had in the Participated Loans and Section 2.3 defined "Loan Documents" broadly, to include such FSAs.

C. Claimant also suffered Damages

Claimant has proven that it sustained damages in connection with the Verve loan. Claimant has been deprived of the payments on those loans since September 2024, which were made to the court in the interpleader action commenced by Verve. With interest at the statutory rate of 10%, Claimant's damages total $130,306.83 through May 30, 2024.

Respondent argues that Claimant failed to mitigate these damages, contending that Claimant could have exercised the Power of Attorney ("POA") to accomplish the assignment of Respondent's interest in the Verve loans. Respondent suggests that the POA is extremely broad and authorized Claimant to take any action that Respondent could take, including such assignments. We need not decide whether the POA provided such authority to Claimant because, after Claimant attempted to exercise the POA, Respondent purported to revoke the POA and notified Verve that it should ignore Claimant and continue to make payments to Respondent, causing Verve to commence the interpleader action. Respondent's attempted revocation and notice to Verve created such uncertainty about Claimant's authority under the POA that it was reasonable for Claimant to not attempt the make the assignments unilaterally, but to seek specific performance in this arbitration. Further, it is contradictory for Respondent to argue on the one hand that Claimant could have affected the assignment by use of the POA while, on the other hand, declining to make the assignment itself. Under these circumstances, there would be no basis to make any deduction from Claimant's damages for alleged failure to mitigate.

D. Claimant may recover Attorneys' fees and costs

Under Section 9.13 of the MPA, Claimant is entitled to also recover "all enforcement-related costs, expenses, and reasonable attorneys' fees" from Respondent. This Award invites Claimant to make a fee application, and Respondent to provide any opposition. The Award also recognizes that the administrative fees and arbitrator fees paid by Claimant will be reimbursed by Respondent.

E. The dismissal of Respondent's counterclaims is not without prejudice

Respondent's notice of dismissal of its counterclaims purports to make that dismissal without prejudice. But Respondent's unilateral characterization has no legal significance. All of Respondent's counterclaims involve issues or rights created by the MPA and therefore must be asserted in binding arbitration, under MPA Section 7.1(a). As such, they are in the nature of compulsory counterclaims arising out of the same facts and circumstances as the claims asserted by Claimant. Respondent did not request leave to dismiss its counterclaims, and the unilateral withdrawal of them on the eve of the hearing, after months of expensive litigation, precludes Respondent from pursuing them in any further arbitration or civil action. The counterclaims have been abandoned, largely because, as Respondent has acknowledged, Respondent would not have been able to prove them at the Phase II hearing. Having asserted its counterclaims in this irrevocable and binding arbitration, Respondent is not at liberty to unilaterally withdraw them in an attempt to preserve and potentially resurrecting them in some future arbitration.

Respondent argues that this Panel does not have jurisdiction to determine that the dismissal is with prejudice, arguing that all of the cases on the issue were decisions made by courts after arbitration. But, while that might be true of those cases, there are no cases that hold that such a determination may not be made by the arbitrators. While we of course give deference to any court enforcing this award, we are clear that the law requires finality in this situation and that means, in our view, that the dismissal of the counterclaims must be with prejudice.

Without dissent:

Hon. Richard Solum (Ret.)

*Richard Solum* Dated:_June 16, 2025

Phillip Baker

Phillip Baker

________________________ Dated: 6/16/2025

Hon. Sam Hanson (Ret.)

________________________ Dated: 6/16/2025

# Exhibit A

# ASSIGNMENT AND LIMITED ASSUMPTION AGREEMENT

This Assignment and Limited Assumption Agreement (this "**Agreement**") dated July 28, 2021 (the "**Effective Date**"), is entered into by and among Corporate America Lending, Inc., a California corporation ("**Assignor**"), Conterra Agricultural Capital, LLC, an Iowa limited liability company ("**Assignee**"), and Agri-Access®, a division and trademark of Compeer Financial, ACA, and its wholly owned subsidiary entities, Compeer Financial, PCA, and Compeer Financial, FLCA (collectively, "**Participant**"). Assignor, Assignee, and Participant are referred to herein, collectively, as the "**Parties.**"

## RECITALS

A. On or around August 16, 2018, Assignor made a loan (the "**Loan**") to York Pistachio Ranch, LLC, a California limited liability company now known as Prosperity Farms, LLC, Michael S. Graham, and Cynthia Graham (collectively, "**Borrowers**") in the original principal amount of $32,823,750.00, which is evidenced by Borrowers' promissory note dated August 16, 2018 (the "**Note**"), payable to Assignor in the amount of the Loan, plus interest.

B. The Loan is secured by, among other things, a Deed of Trust Security Agreement Assignment of Rents and Fixture Filing dated August 16, 2018 (the "**Deed of Trust**"), granted by York Pistachio Ranch, LLC, a California limited liability company having charter # 20143491005 ("**Grantor**"), as trustor, to Assignor, as trustee, for the benefit of Assignor, as beneficiary, and recorded on August 24, 2018, in the official records of Tulare County, California, as Instrument No. 2018-0046837. The Note, the Deed of Trust, and all security agreements, UCC financing statements, affidavits, notices of final agreement, loan agreements, notices to any guarantors or any cosigners, loan policies of title insurance, disclaimers of oral agreement, borrowing resolutions, and other loan documents by, from, including, or related to any Borrower or Grantor, including without limitation any amendments thereto or modifications thereof (but specifically *excluding* the Assignor-Participant Agreement and Assignor-Participant Certificate), are referred to herein, collectively, as the "**Loan Documents.**"

C. Pursuant to a Master Program, Servicing and Participation Agreement dated April 15, 2015, between Assignor and Participant (the "**Assignor-Participant Agreement**"), Assignor issued to Participant a 100% pro rata participation with respect to the Loan (the "**Participation**"), which is evidenced by an Offer and Certificate of Participation dated August 23, 2018, between Assignor and Participant (the "**Assignor-Participant Certificate**").

D. Subject to the terms and provisions of this Agreement, the Parties intend as follows: (i) Assignor to assign all of its right, title, and interest in the Loan Documents to Assignee; (ii) Assignee to accept and assume Assignor's duties and obligations with respect to the Loan Documents from the Effective Date of this Agreement; (iii) Assignor and Participant to terminate the Participation and the Assignor-Participant Certificate; and (iv) Assignee to issue to Participant a 100% pro rata participation with respect to the Loan, expressly subject to the terms and provisions of an Origination, Field Servicing & Master Participation Agreement dated May 28, 2021, between Assignee and Participant (the "**Assignee-Participant Agreement**"), and to be evidenced by an Offer and Certificate of Participation between Assignee and Participant ("**Assignee-Participant Certificate**") in the form attached hereto as Exhibit A.

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Incorporation by Reference.** The foregoing recitals and all exhibits attached hereto are true and correct and are incorporated herein as if set forth in full in the body of this Agreement.

2. **Assignment and Limited Assumption; Acknowledgment and Consent.** Subject to the terms and provisions of this Agreement, Assignor hereby agrees to sell, assign, grant, convey, and transfer to Assignee, and Assignee hereby agrees to accept and assume from Assignor all of Assignor's right, title, and interest in and to the Loan and Loan Documents as of the Effective Date including, without limitation, all servicing rights and interests therein. Subject to the terms and provisions of this Agreement, Participant hereby acknowledges and consents to the foregoing assignment and assumption.

3. **Transfer of Loan.** On the Effective Date, all of the following shall occur, all of which shall be deemed concurrent conditions precedent:

(a) Assignor shall deliver or cause to be delivered to Assignee the following:

(i) The original Note, together with any allonges or prior indorsements thereto, which shall be signed by an authorized representative of Assignor and indorsed "Pay to the order of Conterra Agricultural Capital, LLC, an Iowa limited liability company" in the form attached hereto as <u>Exhibit B.</u>

(ii) The original recorded Deed of Trust, together with any amendments thereto or modifications thereof.

(iii) An executed and acknowledged transfer of the Deed of Trust in the form attached hereto as <u>Exhibit C.</u>

(iv) The original loan policy of title insurance with respect to the Loan, together with all supplemental title reports and/or opinions.

(v) The originals of all other Loan Documents.

(vi) The originals or true and correct copies of all of the following records:

(A) all payment and disbursement histories; and

(B) all prior notifications given by Assignor (or on behalf of Assignor) to any Borrower or Grantor.

(vii) Written notice to Borrowers regarding assignment of the Loan to Assignee, in form reasonably acceptable to Assignee.

(b) After the Effective Date, Assignor shall take all appropriate action and execute any documents, instruments, or conveyances of any kind that may be reasonably requested and provided by Assignee or Participant to carry out any of the provisions of this Agreement. Assignor shall keep and preserve all other information regarding the Loan for a period of time that is at least 365 days after the Effective Date.

(c) From and after the Effective Date, each of Assignee and Participant is authorized by Assignor to file any and all UCC-3 financing statement amendments reasonably necessary to transfer any UCC financing statement on any Borrower or Grantor.

(d) Assignee shall issue to Participant a 100% pro rata participation with respect to the Loan, expressly subject to and in accordance with the Assignee-Participant Agreement, and to be evidenced by the Assignee-Participant Certificate. The Assignee-Participant Certificate shall amend and restate, effective as of the Effective Date, the Assignor-Participant Certificate.

4. **Representations and Warranties.**

(a) Assignor hereby represents and warrants to Assignee and Participant that each of the following statements are true and correct in all material respects as of the Effective Date, all of which shall survive the transactions contemplated hereunder:

(i) Assignor has the power and authority to execute, deliver, and perform all of its obligations under this Agreement and all instruments and other documents executed and delivered by Assignor in connection therewith.

(ii) Assignor is the legal owner and holder of the Loan Documents.

(iii) The Loan Documents are free and clear of any lien, encumbrance, or other adverse claim.

(iv) Assignor has not released, modified, waived, discharged, or impaired any lien or security interest in any property securing payment of the Note.

(v) The Loan Documents are in full force and effect.

(vi) Assignor has not released or discharged any person obligated to pay or obligated to perform all or any part of the obligations described in the Note or any other Loan Document.

(vii) Assignor has performed any and all of its duties or obligations to Borrowers and Grantor.

(viii) The Loan Documents are not the subject of any state, federal, or administrative proceeding.

(ix) The execution and delivery of this Agreement and Assignor's performance of its obligations hereunder will not conflict with or be in a breach of any provisions of any law, regulation, judgment, order, decree, writ, injunction, contract, agreement, or instrument to which Assignor is subject; and Assignor has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery, and performance of this Agreement and the obligations hereunder.

(x) In entering into this Agreement, Assignor has not relied upon any oral or written information from Assignee or Participant, or any of their respective employees, agents, attorneys, or representatives, other than the limited representations and warranties of Assignee and Participant contained herein. Assignor acknowledges that no employee, agent, attorney, or representative of Assignee or Participant has been authorized to make, and that Assignor has not relied upon, any statements, representations or warranties other than those specifically contained in this Agreement.

(b) Assignee hereby represents and warrants to Assignor and Participant that each of the following statements are true and correct in all material respects as of the Effective Date, all of which shall survive the transactions contemplated hereunder:

(i) Assignee has the power and authority to execute, deliver, and perform all of its obligations under this Agreement and all instruments and other documents executed and delivered by Assignee in connection therewith.

(ii) The execution and delivery of this Agreement and Assignee's performance of its obligations hereunder will not conflict with or be in a breach of any provisions of any law, regulation, judgment, order, decree, writ, injunction, contract, agreement, or instrument to which Assignee is subject; and Assignee has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery, and performance of this Agreement and the obligations hereunder.

(c) Participant hereby represents and warrants to Assignor and Assignee that each of the following statements are true and correct in all material respects as of the Effective Date, all of which shall survive the transactions contemplated hereunder:

(i) Participant has the power and authority to execute, deliver, and perform all of its obligations under this Agreement and all instruments and other documents executed and delivered by Participant in connection therewith.

(ii) The execution and delivery of this Agreement and Participant's performance of its obligations hereunder will not conflict with or be in a breach of any provisions of any law, regulation, judgment, order, decree, writ, injunction, contract, agreement, or instrument to which Participant is subject; and Participant has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery, and performance of this Agreement and the obligations hereunder.

5. **Limitation of Liability; Indemnification.** The Parties acknowledge and agree that Assignee's acceptance and assumption of the Loan and Loan Documents, as contemplated hereunder, is expressly conditioned on, among other things, the following:

(a) Assignor and Participant, on behalf of themselves and their successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, attorneys, agents, and representatives hereby forever, fully, unconditionally, and irrevocably waive and release Assignee and its successors, assigns, parents, subsidiaries, affiliates, officer, directors, employees, attorneys, agents, and representatives from any and all claims, liabilities, obligations, debts, causes of action (whether at law or in equity or otherwise), defenses, counterclaims, setoffs, of any kind, whether known or unknown, whether liquidated or unliquidated, matured or unmatured, fixed or contingent, directly or indirectly arising out of, connected with, resulting from, or related to any act or omission by Assignor and/or Participant and their successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, attorneys, agents, and representatives with respect to the Loan, the Loan Documents, the Assignor-Participant Agreement, the Assignor-Participant Certificate, and any related document, accruing on or prior to the Effective Date (collectively, the "**Claims**"). Assignor and Participant hereby further agree that neither Assignor nor Participant shall commence, institute, or prosecute any lawsuit, action, or other proceeding, whether judicial, administrative, or otherwise, to collect or enforce any Claim against Assignee.

(b) Assignor and Participant hereby agree to perform all of the terms, covenants, conditions, and obligations under or with respect to the Loan, the Loan Documents, the Assignor-Participant Agreement, the Assignor-Participant Certificate, and any related document, accruing on or prior to the Effective Date, and hereby agree to indemnify and hold Assignee harmless from and against any Claims in connection with the Loan, the Loan Documents, the Assignor-Participant Agreement, the Assignor-Participant Certificate, and any related document, accruing on or prior to the Effective Date. For avoidance of doubt, Assignor remains obligated to Participant with respect to all matters accruing on or prior to the Effective Date, including without limitation any indemnification obligation arising under Section 5(a) above.

6. **Notice.** Any notice or other communication required or permitted under or given in connection with this Agreement shall be in writing and shall be addressed as follows:

If to Assignor:
Corporate America Lending, Inc.
5610 N. Palm, Suite 110
Fresno, CA 93704
Attention: Ron J. Cook
Email: rcook@calending.us

If to Assignee:
Conterra Agricultural Capital, LLC
5465 Mills Civic Parkway, Suite 201
West Des Moines, IA 50266
Attention: Mark A. Smith
Email: mark.smith@conterraag.com

With an email copy to: legal@conterraag.com

If to Participant:
Agri-Access®
5414 NW 88th Street, Suite 110
Johnston, IA 50131
Attention: Agri-Access Enrollment Coordinator
Fax No.: 515-727-4365

7. **Governing Law.** The terms and provisions of this Agreement shall be governed by, and construed in accordance with, the substantive laws of the state of Iowa, without regard to its conflict of law principles.

8. **Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

9. **Integration; Modification.** This Agreement embodies the entire understanding among the Parties and supersedes all prior agreements and understandings (whether written or oral) related to the subject matter hereof and thereof. The terms of this Agreement may not be waived, modified, altered, or amended except by agreement in writing signed by all Parties. This Agreement shall not be construed against the drafter thereof.

10. **Successor and Assigns.** This Agreement is binding upon and shall inure to the benefit of the Parties and their respective legal representatives, successors, and assigns.

11. **Headings.** The section headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

12. **Counterparts; Electronic Execution.** This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

13. **Mutual Cooperation.** With respect to all transactions contemplated under this Agreement, the Parties shall cooperate reasonably with each other in communicating, providing requested information, and assisting each other generally in fulfilling the purposes of this Agreement.

14. **Waiver of Jury Trial.** EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR ANY LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY. EACH PARTY: (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE, OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION, AND (B) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO THIS AGREEMENT.

***[remainder of page intentionally blank – signature page follow]***

IN WITNESS WHEREOF, each of the Parties has executed this Agreement as of the Effective Date.

**ASSIGNOR:**

**CORPORATE AMERICA LENDING, INC.,**
a California corporation

By: ______________________________
Ron J. Cook
Its: Chief Executive Officer

**ASSIGNEE:**

**CONTERRA AGRICULTURAL CAPITAL, LLC,**
an Iowa limited liability company

By: ______________________________
Mark A. Smith
Its: COO & General Counsel

**PARTICIPANT:**

**AGRI-ACCESS®, A DIVISION AND TRADEMARK OF:**
**COMPEER FINANCIAL, ACA**
**COMPEER FINANCIAL, PCA**
**COMPEER FINANCIAL, FLCA**

By: ______________________________
______________________________
Its: ______________________________

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of FRESNO )

On JULY 28, 2021 before me, Michael Maxwell, Notary Public,
Date Here Insert Name and Title of the Officer

personally appeared Ron J. Cook
*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

MICHAEL MAXWELL
Notary Public - California
Fresno County
Commission # 2307413
My Comm. Expires Oct 7, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature [signature]
*Signature of Notary Public*

*Place Notary Seal Above*

**OPTIONAL**

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ____________ Document Date: ____________
Number of Pages: ______ Signer(s) Other Than Named Above: ____________

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: ____________
☐ Corporate Officer — Title(s): ____________
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ____________
Signer Is Representing: ____________

Signer's Name: ____________
☐ Corporate Officer — Title(s): ____________
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ____________
Signer Is Representing: ____________

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

IN WITNESS WHEREOF, each of the Parties has executed this Agreement as of the Effective Date.

**ASSIGNOR:**

**CORPORATE AMERICA LENDING, INC.,**
a California corporation

By: ______________________________
Ron J. Cook
Its: Chief Executive Officer

**ASSIGNEE:**

**CONTERRA AGRICULTURAL CAPITAL, LLC,**
an Iowa limited liability company

By: ______________________________
Mark A. Smith
Its: COO & General Counsel

**PARTICIPANT:**

**AGRI-ACCESS®, A DIVISION AND TRADEMARK OF:**
**COMPEER FINANCIAL, ACA**
**COMPEER FINANCIAL, PCA**
**COMPEER FINANCIAL, FLCA**

By: ______________________________
______________________________
Its: ______________________________

IN WITNESS WHEREOF, each of the Parties has executed this Agreement as of the Effective Date.

**ASSIGNOR:**

**CORPORATE AMERICA LENDING, INC.,**
a California corporation

By: ______________________________
Ron J. Cook
Its: Chief Executive Officer

**ASSIGNEE:**

**CONTERRA AGRICULTURAL CAPITAL, LLC,**
an Iowa limited liability company

By: ______________________________
Mark A. Smith
Its: COO & General Counsel

**PARTICIPANT:**

**AGRI-ACCESS®, A DIVISION AND TRADEMARK OF:**
**COMPEER FINANCIAL, ACA**
**COMPEER FINANCIAL, PCA**
**COMPEER FINANCIAL, FLCA**

By: ______________________________
Chad Steele
Its: Managing Director Agri-Access

## EXHIBIT A

**FORM OF ASSIGNEE-PARTICIPANT CERTIFICATE**

**(Attached)**

# EXHIBIT C

## FORM OF ASSIGNMENT OF DEED OF TRUST

**(Attached)**

**EXHIBIT B**

**FORM OF ALLONGE**

**(Attached)**

# Exhibit B

**ALLONGE**

This Allonge is attached to and made a part of a promissory note dated August 16, 2018 (the "Note"), made by York Pistachio Ranch, LLC, a California limited liability company now known as Prosperity Farms, LLC, Michael S. Graham, and Cynthia Graham, in the original principal amount of $32,823,750.00, plus interest, payable to the order of Corporate America Lending, Inc., ISAO.

For value received, the undersigned hereby indorses the Note as follows: Pay to the order of Conterra Agricultural Capital, LLC, an Iowa limited liability company.

IN WITNESS WHEREOF, the undersigned has executed this Allonge as of July 28, 2021.

**CORPORATE AMERICA LENDING, INC., ISAO**

By: ______________________________
Ron J. Cook
Its: Chief Executive Officer

# Exhibit C

2021-0063300

Recorded Official Records County of Tulare TARA FREITAS, CPA CLERK RECORDER | REC FEE 36.00
| AFF SB2 HOUSE 75.00
| NB
09:57AM 30-Aug-2021 | Page 1 of 6

RECORDING REQUESTED BY:
Conterra Agricultural Capital, LLC

Requested by CSC

WHEN RECORDED RETURN TO:
Conterra Agricultural Capital, LLC
5465 Mills Civic Parkway, Suite 201
West Des Moines, IA 50266
Attn: Mark A. Smith

Assessor's Parcel Numbers:
333-010-004
333-170-001
333-170-003
333-170-017
333-170-019
333-270-001

[Space Above for Recorder's Use Only]

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Corporate America Lending, Inc., a California corporation, whose address is 5610 N. Palm, Suite 110, Fresno, California 93704 ("**Assignor**), hereby grants, assigns, and transfers to Conterra Agricultural Capital, LLC, an Iowa limited liability company, whose address is 5465 Mills Civic Parkway, Suite 201, West Des Moines, Iowa 50266 ("**Assignee**"), and to Assignee's heirs, successors, legal representatives, and assigns, all beneficial interest under a Deed of Trust Security Agreement, Assignment of Rents and Fixture Filing dated August 16, 2018 (the "**Deed of Trust**"), granted by York Pistachio Ranch, LLC, a California limited liability company now known as Prosperity Farms, LLC having charter # 20143491005, and recorded on August 24, 2018, in the official records of Tulare County, California, as Instrument No. 2018-0046837. The Deed of Trust secures, among other things, payment and performance obligations under a promissory note dated August 16, 2018 (the "**Note**"), in the original principal amount of $32,823,750.00. The Deed of Trust encumbers, among other things, real property situated in Tulare County, California, described in Exhibit A attached hereto and by this reference incorporated herein.

Assignor further assigns and transfers to Assignee the Note, including without limitation all money due or to become due under the Note or the Deed of Trust with interest and any amounts that may be or become due thereunder.

IN WITNESS WHEREOF, Assignor has executed this Assignment of Deed of Trust as of July 28, 2021.

**CORPORATE AMERICA LENDING, INC.,**
a California corporation

By: ______________________
Ron J. Cook
Its: Chief Executive Officer

{35732: 007: 03131794.DOCX :2 }

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF FRESNO )

On this 28 day of JULY, 2021, before me, Michael Maxwell, Notary Public, personally appeared Ron J. Cook, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

MICHAEL MAXWELL
Notary Public - California
Fresno County
Commission # 2307413
My Comm. Expires Oct 7, 2023

WITNESS my hand and official seal.

Signature

(Seal)

**EXHIBIT A**

**LEGAL DESCRIPTION**

**For APN/Parcel ID(s): 333-010-004, 333-170-001, 003, 017 & 019 and 333-270-001**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF TULARE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1: APN 333-010-004 (PORTION)

ALL THAT PORTION OF THE SOUTH HALF OF SECTION 22, TOWNSHIP 24 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EAST OF THE HIGHWAY WHICH WAS CONVEYED TO THE COUNTY OF TULARE IN DEED RECORDED JUNE 7, 1932, IN BOOK 474, PAGE 235 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES UNDERLYING SAID REAL PROPERTY, TOGETHER WITH THE RIGHT JOINTLY WITH THE OWNERS OF THE REMAINING OIL, GAS AND HYDROCARBON SUBSTANCES, UPON PAYING TO THE OWNERS OF SAID REAL PROPERTY ONE-HALF OF ACTUAL DAMAGES TO SAID REAL PROPERTY RESULTING FROM SAID OPERATIONS, AS RESERVED BY BERNICE W. TAYLOR, ET AL, IN DEED DATED SEPTEMBER 25, 1952 RECORDED OCTOBER 17, 1952, IN BOOK 1626, PAGE 454 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ONE-HALF OF ALL MINERALS AND URANIUM AND ONE-FOURTH OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, IN, UPON AND UNDER SAID PREMISES OR ANY PORTION THEREOF AND THE RIGHT TO PROSPECT FOR THE SAME AND TO DRILL FOR AND TO PRODUCE AND TAKE AWAY THE SAME AND LIKEWISE RESERVING THE RIGHT TO ENTER UPON SAID PREMISES FOR THE ABOVE MENTIONED PURPOSES FOR TIME TO TIME WITH DUE REGARD TO THE USE OF THE SAME BY THE GRANTEES, AS RESERVED IN THE DEED FROM EDWIN L. HARTWELL, JR. AND CHARLSIE R. HARTWELL, HUSBAND AND WIFE, TO J. LEROY CHASE AND MARGARET CHASE, WIFE AND HUSBAND, AS JOINT TENANTS, DATED JANUARY 3, 1958, AND RECORDED JANUARY 24, 1958 IN BOOK 2034, PAGE 115 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM 100 PERCENT MINERAL RIGHTS IN OTHER THAN OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN SAID LAND, AS CONVEYED TO DAN E. WEITZ AND GERTRUDE P. WEITZ, HUSBAND AND WIFE, AS JOINT TENANTS, IN DEED RECORDED JUNE 11, 1975 IN BOOK 3246, PAGE 882 OF OFFICIAL RECORDS.

PARCEL 2: APN 333-010-004 (PORTION)

ALL THAT PORTION OF THE NORTH HALF OF SECTION 22, TOWNSHIP 24 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF LYING EAST OF THE HIGHWAY WHICH WAS CONVEYED TO THE COUNTY OF TULARE IN DEED RECORDED JUNE 7, 1932 IN BOOK 474 PAGE 235 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES UNDERLYING SAID REALLY PROPERTY, TOGETHER WITH THE RIGHT JOINTLY WITH OWNERS OF THE REMAINING OIL, GAS AND HYDROCARBON RIGHTS, TO DRILL FOR, PRODUCE, EXTRACT, TAKE AND REMOVE SAID OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, UPON PAYING TO THE OWNERS OF SAID REAL PROPERTY ONE-HALF OF ACTUAL DAMAGES TO SAID REAL PROPERTY RESULTING FROM SAID OPERATIONS AS RESERVED BY ARTHUR C. HURT, JR. ET AL, IN DEED DATED FEBRUARY 28, 1955, RECORDED APRIL 7, 1955 IN BOOK 1825, PAGE 660, OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ONE-FOURTH OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES UNDERLYING SAID PROPERTY, TOGETHER WITH THE RIGHT, JOINTLY WITH THE OWNERS OF THE REMAINING OIL, GAS AND HYDROCARBON RIGHTS, TO DRILL FOR, PRODUCE,

EXTRACT, TAKE AND REMOVE SAID OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, UPON PAYING TO THE OWNERS OF SAID REAL PROPERTY ONE-FOURTH OF ACTUAL DAMAGES TO SAID REAL PROPERTY RESULTING FROM SAID OPERATIONS, AS RESERVED BY JAMES HENRY BURUM AND WINIFRED BURUM, IN DEED DATED JULY 17, 1958, AND RECORDED JULY 25, 1958 IN BOOK 2067, PAGE 501 OF OFFICIAL RECORDS.

PARCEL 3: APN 333-170-019

THE SOUTH HALF OF SECTION 14, TOWNSHIP 24 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS, MINERALS, AND OTHER HYDROCARBONS, INCLUDING URANIUM, AS EXCEPTED IN THE DEED FROM BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, A NATIONAL BANKING ASSOCIATION, TO EDNA B. RICHARDS, DATED JUNE 10, 1955 AND RECORDED JUNE 16, 1955 IN BOOK 1841 PAGE 531 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, AN UNDIVIDED ONE-FOURTH OF ALL OIL, GAS, MINERALS, AND OTHER HYDROCARBONS, INCLUDING URANIUM, AS RESERVED IN THE DEED FROM EDNA B. RICHARDS, A MARRIED WOMAN, TO FRANK GALLO, ET AL, DATED JULY 9, 1958 AND RECORDED AUGUST 21, 1958 IN BOOK 2071 PAGE 552 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, AND UNDIVIDED ONE-EIGHT INTEREST OF ALL OIL, GAS, MINERALS AND OTHER HYDROCARBONS, INCLUDING URANIUM AS RESERVED IN A DEED RECORDED MAY 31, 1960 IN BOOK 2198 PAGE 22 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, SUCH INTEREST IN ALL OIL, GAS, MINERALS AND OTHER HYDROCARBONS INCLUDING URANIUM, AS CONVEYED BY BANK OF AMERICA, NATIONAL TRUST AND SAVINGS ASSOCIATION, AS TRUSTEE UNDER THE TRUST OF A. K. DETWILER, TRUSTOR, DATED JUNE 3, 1927 TO AMAMDA MARY WHIZIN, ET AL, IN DEED DATED MAY 6, 1986, AND RECORDED JUNE 9, 1986 IN BOOK 4433 PAGE 365 TULARE COUNTY RECORDS, FILE NO. 29860.

PARCEL 4: APN 333-170-003

THAT PORTION OF THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 15, TOWNSHIP 24 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING EASTERLY OF THE EASTERLY LINE OF THE AT&SF RAILROAD RIGHT OF WAY.

EXCEPTING THEREFROM THE NORTH 100 FEET THEREOF.

ALSO EXCEPTING THEREFROM A RIGHT OF WAY FOR A RAILROAD 100 FEET WIDE AS CONVEYED TO THE SAN FRANCISCO AND SAN JOAQUIN VALLEY RAILROAD COMPANY.

ALSO EXCEPTING AND RESERVING TO CHARLES B. STANFORD AND GLADYS A. STANFORD, HUSBAND AND WIFE, AS JOINT TENANTS, 50% OF THE MINERAL RIGHTS IN AN UNDIVIDED THREE-FOURTHS INTEREST IN SAID LAND; RESERVING TO JAMES H. MOSHIER AND ANNA GERTRUDE MOSHIER, HUSBAND AND WIFE, AS JOINT TENANTS, 50% OF THE MINERAL RIGHTS IN AN UNDIVIDED ONE-FOURTH INTEREST IN SAID LAND, TOGETHER WITH INCIDENTAL RIGHTS, AS EXCEPTED AND RESERVED IN THE DEED TO EDWIN E. PRICE AND DONNA H. PRICE, ET AL, DATED JULY 25, 1952, AND RECORDED OCTOBER 29, 1952, AS FILE NO. 29300, OFFICIAL RECORDS.

ALSO EXCEPTING AND RESERVING AN UNDIVIDED 33-1/3RD PER CENT OF ALL MINERAL RIGHTS, AS EXCEPTED AND RESERVED BY EDWIN E. PRICE AND DONNA H. PRICE, HUSBAND AND WIFE, AND IVAN W. BAYS AND LOIS B. BAYS, HUSBAND AND WIFE, IN DEED DATED SEPTEMBER 10, 1952, AND RECORDED OCTOBER 29, 1952, AS FILE NO. 29301, OFFICIAL RECORDS.

**PARCEL 5: APN 333-170-001**

THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 24 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ONE-HALF OF ALL OIL, MINERALS, ORES, PRECIOUS AND USEFUL METALS, SUBSTANCES AND HYDROCARBON SUBSTANCES OF EVERY KIND AND CHARACTER INCLUDING PETROLEUM, OIL, GAS, ASPHALTUM AND TAR IN AND UNDER SAID LAND, AS RESERVED IN DEED FROM MILDRED STANFORD, ROBERT L. STANFORD AND SAMUEL P. STANFORD, RECORDED JUNE 6, 1961 IN BOOK 2269, PAGE 38 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS, MINERALS AND HYDROCARBON SUBSTANCES OF EVERY KIND AND CHARACTER WITHIN OR UNDERLYING SAID LAND, AS RESERVED IN DEED FROM JOHN R. MONTGOMERY AND ERMINE C. MONTGOMERY, RECORDED JUNE 6, 1973 IN BOOK 3112, PAGE 783 OF OFFICIAL RECORDS.

**PARCEL 6: APN 333-170-017 (PORTION)**

THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 24 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN AND TO ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN, ON OR UNDER SAID LAND, AS RESERVED IN DEED DATED FEBRUARY 4, 1958 AND RECORDED MARCH 12, 1958 IN BOOK 2044, PAGE 205 OF OFFICIAL RECORDS.

**PARCEL 7: APN 333-170-017 (PORTION)**

THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 24 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF TULARE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ONE-HALF OF ALL MINERALS, ORES, PRECIOUS AND USEFUL METALS, SUBSTANCES AND HYDROCARBONS OF EVERY KIND AND CHARACTER, INCLUDING PETROLEUM, OIL, GAS, ASPHALTUM AND TAR, IN AND UNDER SAID LAND, BUT WITHOUT THE RIGHT TO USE THE SURFACE OF SAID LAND IN CONNECTION WITH THE DEVELOPMENT THEREOF, PROVIDED, HOWEVER THE SAME SHALL NOT BE CONSTRUED TO PROHIBIT SLANT DRILLING OPERATIONS OR SUCH OTHER OPERATIONS WHICH IN NO WAY USE OR IN ANY WAY AFFECT THE SURFACE RIGHTS OF SAID LAND AND WHICH DO NOT ENTER SAID LAND AT A POINT LESS THAN 500 FEET TO SAID SURFACE, AS RESERVED BY LELA S. BALZARI, ETAL, IN DEED RECORDED NOVEMBER 17, 1959, BOOK 2156 PAGE 635, FILE NO. 34705, OFFICIAL RECORDS.

**PARCEL 8: APN 333-270-001**

SECTION 23 OF TOWNSHIP 24 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ANY PORTION THEREOF INCLUDED IN PUBLIC ROAD HIGHWAYS.

ALSO EXCEPTING THEREFROM AN UNDIVIDED ONE-FOURTH INTEREST IN AND TO ALL MINERALS, ALL OIL, GAS AND KINDRED SUBSTANCES LYING IN, UPON AND UNDER THE PREMISES DESCRIBED ABOVE, AS RESERVED BY POMONA COLLEGE, A CORPORATION, IN DEED DATED NOVEMBER 9, 1942, RECORDED DECEMBER 28, 1942 IN BOOK 1009 PAGE 337 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM 37-1/2% OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND MINERALS IN AND UNDER SAID LAND AS RESERVED BY JOSEPH PANERO, A SINGLE MAN, AND FRANK D. PANERO, A SINGLE MAN, IN DEED NO. 21678 RECORDED JUNE19, 1964.

ALSO EXCEPTING THEREFROM AN UNDIVIDED 18.75% OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN OR UNDER SAID LAND AS RESERVED BY WAYNES DAIRY IN THAT CERTAIN DEED RECORDED SEPTEMBER 7, 1973 AS FILE NO. 36696.

ALSO EXCEPTING THEREFROM THE REMAINING OIL, GAS AND OTHER HYDROCARBONS AND MINERALS IN AND UNDER SAID LAND, AS RESERVED BY W. A. GRIFFIN, JR. AND JOAN L. GRIFFIN, HUSBAND AND WIFE AND DAVID L. FRAYSHER AND BERNICE FRAYSHER, HUSBAND AND WIFE, IN DEED RECORDED NOVEMBER 22, 1977 AS FILE NO. 65587.