UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Compeer Financial, ACA; Compeer Financial, PCA; and Compeer Financial FLCA,<br><br>               Plaintiffs,<br>v.<br><br>Corporate America Lending, Inc.,<br><br>               Defendant. | Civ. No. 24-1896 (JWB/ECW)<br><br>**RECEIVER'S FIFTH WRITTEN REPORT** |

_____

T. Scott Avila, the Receiver appointed pursuant to the *Order Appointing Receiver*, dated March 27, 2025 (Docket No. 118) (the "Receivership Order"), hereby files this *Receiver's Fifth Written Report* (the "Fifth Report") in accordance with Paragraph 11 of the Receivership Order and the Court's *Order on the Receiver's Motion Regarding Continued Sealing of Receiver's First Written Report and for Instructions on Sharing of Documents with Plaintiffs* entered on June 20, 2025 (Docket No. 206) (the "June 20 Order").

**PRELIMINARY STATEMENT**

1. The Receiver filed the Receiver's First Written Report (the "First Report") on April 28, 2025, the Receiver's Second Written Report (the "Second Report")[1] on June 27, 2025, the Receiver's Third Written Report (the "Third Report") on August 26, 2025,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Report, Second Report, Third Report, and Fourth Report, as applicable.

304288869v2

and the Receiver's Fourth Written Report (the "Fourth Report," and collectively with the First Report, Secord Report, and Third Report, the "Written Reports") on October 30, 2025.

2. As set forth in the Written Reports, by the time of the Third Report the Receiver had substantially completed the tracing of the Payoff Proceeds and identified the principal categories of transferees of those funds. Since then, the Receiver's efforts have focused on implementing the discovery protocol authorized by the June 20 Order and coordinating document production among Agri-Access, CAL, and iDS.

3. As of the Third Report, the principal question was whether, and if so how, recovery should be pursued following the substantial completion of the Receiver's investigation. Agri-Access presented that question through its *Motion to Amend Receiver Order* (Docket No. 273), filed on November 20, 2025, seeking to (i) ensure that the Merit Panel's Phase II award and the Grant Deed Order can be enforced, and (ii) authorize the Receiver to pursue targeted litigation to recover Payoff Proceeds from certain transferees, as described in *Plaintiffs' Supplemental Memorandum of Law in Support of Motion to Amend Receiver Order* (Docket No. 295), filed on December 12, 2025.

4. On December 12, 2025, the Court issued the *Order on Motion to Confirm Arbitration Awards* (Docket No. 294), granting the April 23, 2025 Order on Grant Deed, June 16, 2025 Interim Phase II Award, and August 12, 2025 Final Phase II Award.

5. As of the date hereof, the Court has not ruled on Agri-Access's Motion to Amend Receiver Order.

**REPORT**

I.   **The Performance of the Receiver's Duties**

   a. *Discovery*

6.   Since the Fourth Report, the Receiver has been working extensively with iDS, Agri-Access and CAL to coordinate the production of documents requested by Agri-Access pursuant to an agreed-to discovery protocol. As of the date hereof, all documents deemed "presumptively not privileged" (by agreement of the parties) have been reviewed by CAL and those not tagged as privileged have been produced to Agri-Access. There are a substantial number of documents deemed "presumptively privileged" that remain to be reviewed by CAL for privilege. The parties (CAL, Agri-Access and the Receiver) have agreed to hold review and production pending further agreement of the parties. All privilege issues will be addressed in accordance with the Court's June 20 Order.

   b. *Additional Activity of CAL Identified*

7.   In prior meetings with CAL, and specifically CAL's principal, Ron Cook, the Receiver was informed that all lending operations of CAL had ceased. Indeed, the Receiver's personal investigation and control of CAL's bank accounts confirmed the cessation of any lending or loan servicing operations shortly after the Receiver's appointment and that belief continued throughout the remainder or the calendar year 2025.

8.   Recently, however, the Receiver learned of a purported loan made by CAL to an entity called Prosperity Farms Ranch 20, LLC ("Prosperity 20"). Specifically, on July 25, 2025, and unbeknownst to the Receiver, CAL recorded a Commercial Deed of

Trust, Assignment of Leases and Rents, Fixture Filing, Security Agreement, and Request for Notice (the "Deed of Trust"), as Lender, in the County of Tulare, California, securing a Note payable by Prosperity 20 to CAL in the amount of $2,500,000.00. As the Receiver has complete access to CAL accounts, he had no knowledge of a loan being funded, nor where the funding for the loan may have been sourced.

9. On or about August 22, 2025, CAL filed a Corporation Assignment Deed of Trust (the "Assignment") assigning the Deed of Trust to an entity called SA9 Properties, LLC ("SA9").

10. The Receiver investigated the transaction with CAL. CAL's explanation for the filing of the Deed of Trust and the Assignment was as follows:

    a. CAL is a "licensed threshold lender" in the State of California, which permits CAL to make real estate backed loans between an investor (in this case SA9) and a borrower. CAL claimed that Farmer Mac contacted CAL regarding a dispute between one of Famer Mac's borrowers that CAL serviced (CAL would not disclose who) which needed to be immediately resolved. CAL claims that an accommodation was made to resolve the Farmer Mac / "Borrower" / CAL dispute. SA9 allegedly provided a $2,500,000.00 loan to Prosperity 20 to resolve this dispute.

    b. According to CAL, because Farmer Mac knew of certain litigation pending in California related to Prosperity Farms (an entity affiliated with CAL, Ron Cook and the Grant Deed issue), Farmer Mac required that any funds used to resolve the dispute not be associated with, or flow from CAL.

4

304288869v2

    c. CAL allegedly prepared all the loan documents and made accommodations to record all the necessary documents to memorialize the obligation between SA9 and Prosperity 20. CAL claims to have received no monies from SA9 or Prosperity 20. CAL also claims to have received no monetary benefit from the loan between SA9 and Prosperity 20. SA9 allegedly funded the loan to the title company which was then advanced to Farmer Mac to resolve and close out the borrower / Farmer Mac matter. The SA9 loan remains recorded and Prosperity 20 is obligated pursuant to the recorded loan documents which were assigned to SA9 after the funding of the loan.

    11. The Receiver spoke to Farmer Mac. Farmer Mac was not aware of a "loan dispute." It claimed to be owed an amount less than $2,500,000.00 on the balance of a particular loan and had demanded payment thereof. Farmer Mac does not know of SA9 or Prosperity 20, or why they are involved in any owed payment. Farmer Mac did not make any demands with respect to payment of amounts owed due to the existence of the "Conterra litigation." Farmer Mac has been paid.

    12. CAL and Ron Cook refused to identify the principals of SA9 or whether there is any relationship between SA9, Ron Cook and CAL.

    13. CAL and Ron Cook made no explanation why the assignment from CAL to SA9 occurred almost thirty (30) days following the making of the original loan to Prosperity 20.

**II.**    **Next Steps**

14. Subject to the Court's ruling on the Motion to Amend Receiver Order, the Receiver is prepared to commence targeted litigation and related recovery efforts consistent with the authority sought in the Motion to Amend Receiver Order.

Dated: December 30, 2025                Respectfully submitted,

                                                 /s/ T. Scott Avila
                                                 T. Scott Avila, Court-Appointed Receiver

304288869v2